IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MAY 2 0 2003
DAVID J. MALAND, CLERK
BY
DEPUTY

| | |
|---|---|
| JUNE BELT, on behalf of herself and on behalf of all other similarly situated, § § § | |
| Plaintiff, § § | |
| vs. § | CIVIL ACTION NO. 6:03-CV-73 |
| (1) EmCare, Inc., § (2) Texas EM-I Medical Services, P.A., § and § (3) St. Paul ERDocs, P.A. § § | |
| Defendants. § | |

### DEFENDANT EMCARE, INC.'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

Defendant EmCare, Inc. requests the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c)(2) and the Court's inherent power. Specifically, EmCare requests an order limiting the discovery Plaintiff may pursue prior to a determination of whether class notice should be issued in this collective action filed under the Fair Labor Standards Act. This relief is appropriate in light of the arguments set forth below.

#### ARGUMENT AND AUTHORITIES

A.  **Standard for Protective Order**

Federal Rule of Civil Procedure 26(c) authorizes the Court, upon a party's showing of good cause, to "make any order which justice so requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Subsection (c)(2) of Rule 26 specifically permits an order "that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place . . . ." A court's decision to

deny or limit discovery under Rule 26(c) rests on a balancing of several factors, such as the requester's need for the information from this particular source, the relevance of the requested information, and the burden on the responding party. *See Burka v. United States Dep't of Health & Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996). Here, the balancing of these factors weighs in favor of granting EmCare's motion, as EmCare has shown good cause for the requested protective order, and the discovery sought by Plaintiff is overly broad, premature, and sought for an improper purpose.

### B.    Case Background

Plaintiff June Belt brought this action on February 25, 2003, alleging that she and other nurse practitioners ("N.P.'s"), as well as physicians assistants ("P.A.'s"), have been unlawfully denied overtime pay in violation of the Fair Labor Standards Act. Plaintiff Belt attempts to bring this action as a collective action pursuant to 29 U.S.C. section 216(b) and seeks to have other N.P.'s and P.A.'s join her suit as plaintiffs.

At the case status conference on April 28, 2003, Plaintiff and Defendants presented their respective positions to the Court regarding the proposed scope of this case and Plaintiff's plan to seek certification of a class so that a court-authorized notice could be sent out to other potential plaintiffs, thereby giving them notice that the suit has been filed and that they may opt in. Plaintiff's counsel represented that he needed discovery of certain information, including the names and addresses of other nurse practitioners and physicians assistants employed by the party defendants, in order to make the required showing that the Court should issue notice to the putative opt-in class. The Court did not enter a formal order but indicated that Plaintiff's counsel should send counsel for EmCare a written request for the information he sought.

In response to Plaintiff's letter request of April 29, 2003, Defendant EmCare, Inc. has a number of objections to producing the information requested and seeks to have the Court enter an order protecting EmCare from producing that information at this juncture in the case. Plaintiff seeks the full name, last known address and telephone number, dates of employment, state of employment, and position title of five (5) current and five (5) former Nurse Practitioners ("NP") and Physician Assistants ("PA") "employed by or through EmCare, Inc. and/or any of its direct or indirect subsidiaries at any time during the time period February 25, 2000 to present in each of the states in which NP/PA's are employed by or through EmCare and/or any of its direct or indirect subsidiaries." *See Exh. A, Letter from J. Jones to K. Lucas.* Plaintiff further defines "employed by or through EmCare and/or any of its direct or indirect subsidiaries" to include "any and all NP/PA's for whom EmCare has been 'engaged' to perform any 'of the activities with respect to the employment arrangement' as stated at page 2 of EmCare's 6/01 revision of the Employment Handbook provided to NP/PA's." *Id.* EmCare objects to this request for several reasons as set forth in detail below.

C.  **Standards for Class Notice in a Collective Action Under the FLSA**

Plaintiff seeks to have the Court approve a notice to alert potential class members of the ongoing suit pursuant to 29 U.S.C. section 216(b). Unlike the standard procedure of bringing a class action, namely Federal Rule of Civil Procedure 23(c), section 216(b) provides parties bringing a claim under the FLSA with an opt-in, rather than opt-out, procedure. Thus, no person may become a party plaintiff and be bound by or benefit from a judgment unless he has affirmatively opted into the class. *LaChappelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1985).

District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to section 216(b) of the FLSA. *See Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 1989 (an ADEA class action). The power to authorize notice must be exercised with discretion and only in appropriate cases. *See Haynes v. Singer Company*, 696 F.2d 884, 886 (11th Cir. 1983). The district court "should satisfy itself that there are other employees of the . . . employer who desire to opt in and who are similarly-situated with respect to their job requirements and with regard to their pay provisions." *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). Having the court supervise the notice process ensures that the notification procedure will be accomplished in an efficient, accurate manner. *Sperling*, 493 U.S. at 169-73.

In order for notice to issue, the plaintiff has the burden to establish that potential class members are similarly situated. *See Haynes*, 696 F.2d at 887; *Grayson v. Kmart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309 (M.D. Ala. 2002). This burden is not as stringent as in a Rule 23 opt-out class and may be met in a variety of ways. *See Grayson*, 79 F.3d at 1097-99 (relying on deposition testimony of employer management representatives, statistical analysis, and third-party affidavits). Other ways to establish such allegations include evidence of a centralized or widespread practice or policy, which may be gleaned through the employer's documents or corporate representative depositions. For example, in *Barron v. Henry County School System*, 2003 WL 136193 (M.D. Ala. Jan. 14, 2003), the plaintiff presented expert testimony that the alleged FLSA violations were systematic, not individual, to show entitlement to class notice.

Ultimately, the Court must consider whether the goals of judicial efficiency and fundamental fairness will be served in this case by issuing notice.[1]

### D. EmCare's Objections to Plaintiff's Request

1. **The Request is Premature As Plaintiff Has Not Established That a Class of Similarly-Situated Individuals Exists and Seeks Access Beyond What Would Be Allowed if Notice Were to Issue.**

Plaintiff's counsel indicated at the case management conference that Plaintiff seeks these names for the purpose of finding other individuals who are similarly-situated and to obtain affidavits from them in support of class certification and notice. EmCare contends that requiring it to produce the information requested by Plaintiff at this stage is putting the cart before the horse. Moreover, allowing unsupervised contact and possible solicitation of persons who have so far expressed no concerns about their compensation is harmful to the litigation and the Court's obligation to supervise the contact with prospective opt-ins.

The issuance of court-supervised notice in FLSA collective actions is not a matter of right. *See Sperling*, 493 U.S. at 171-72; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). In short, the Court must conclude that providing notice to bring individuals into one case is an efficient and fair way to litigate a multitude of claims. *See Sperling*, 493 U.S. at 170; *Osmose*, 204 F.Supp.2d at 1314; *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995); *Bayles v. American Medical Response of Colorado, Inc*, 950 F. Supp. 1053, 1066-67 (D. Colo. 1996).

---

[1] *See, e.g., Osmose*, 204 F. Supp.2d at 1313-16; *Whitworth v. Chiles Offshore Corp.*, 1992 WL 235907, at *1 (E.D. La. 1992) (a collective action cannot be maintained if the action arises from circumstances purely personal to the plaintiff)from circumstances purely personal to the plaintiff).

Underlying this requirement is the courts' obligation, as well as that of attorneys, to avoid stirring up litigation through unjustifiable solicitation. *See Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991). In *Severtson*, the district court reversed a magistrate judge's order authorizing notice, finding that the plaintiffs had not established a sufficient factual basis to justify judicial approval of notice. *Id.* Likewise, the court found that the magistrate's order granting plaintiff the right to discover the names and addresses of all persons who fell within plaintiff's proposed class definition should be denied, reasoning that if notice was not appropriate, then neither was discovery directed toward facilitating such notice. *Id.*; *see also Hall v. Burk*, 2002 WL 413901 (March 11, 2002). In the case at bar, unlike the plaintiff in *Severtson*, Plaintiff Belt has not yet even moved for notice. Thus, applying the logic of *Severtson* to this case, it certainly would not be appropriate to allow discovery of the names of individuals to whom notice might be sent before notice has even been requested, much less issued.

Where FLSA plaintiffs have failed to make a sufficient factual showing that other potential plaintiffs exist who are similarly situated to the Plaintiff with respect to their pay and job duties, federal courts, including the Beaumont Division of this Court, have denied discovery of names related to the notice issue, as well as notice itself, on the grounds that the defendant-employer should "not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expense" and that courts have a responsibility to avoid the "stirring up" of litigation through "unwarranted solicitation." *H & R Block Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999) (citing *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995)); *see also Severtson*, 137 F.R.D. at 267; *Brooks*, 164 F.R.D. at 567.

EmCare's position is that it is inappropriate, in the absence of any showing that there are other class members with similar claims, to conduct discovery that would enable Plaintiff's counsel to contact current and former employees of entities for whom EmCare provides services through a series of contracts, when the standards for court-authorized notice have not been met. In addition, even if Plaintiff were able to meet the standards for issuance of notice and the Court were then to require EmCare to produce the names and addresses of current and former employees of entities who have indirect contractual relationships with EmCare, Plaintiff's counsel would not have the full and unfettered access to the individuals that he seeks before <u>any</u> showing has been made that Plaintiff is entitled to notice in the first place. At best, <u>after</u> proof of this need and justification for notice, Plaintiff would send out court-approved notice. Here, Plaintiff seeks unfettered contact without a hearing on the need for notice.

The case of *Belcher v. Shoney's, Inc.* is illustrative of the usual approach taken by district courts with respect to releasing the names of putative class members. 927 F. Supp. 249, 252 (M.D. Tenn. 1996). In *Belcher*, the plaintiffs presented evidence indicating that they and other hourly employees had worked off the clock in violation of the FLSA. *Id.* The court found that evidence sufficient to provisionally grant the plaintiffs' request for court-supervised notice. *Id.* Nevertheless, the court refused to allow plaintiffs to send notice to employees who had worked at other concept chain restaurants owned and operated by Shoney's, such as Captain D's, Pargo's, and Barbwire. *Id.* Only <u>after</u> making these determinations regarding the scope of the class did the court order the defendant to disclose to the plaintiffs the names and addresses of putative plaintiffs so that notice could be issued. *Id.*

As set forth in the cases cited herein, any notice issued in this case would be court-supervised, and there would be court approval of the language in the notice to ensure that no

misrepresentations or improper solicitation would occur. If Plaintiff obtains access to those names now, she would gain unlimited access to those individuals, without court supervision or input into the process. Quite simply, production of this information at this stage will enable Plaintiff's counsel to solicit clients, not through his own efforts, but through the civil discovery process, to an even greater extent than if Plaintiff had properly proven her entitlement to class notice. This is the very situation the federal courts have been mindful of avoiding when making a determination whether to issue class notice in 216(b) cases. *See Housden*, 186 F.R.D. at 401; *D'Anna*, 903 F. Supp. at 894; *Severtson*, 137 F.R.D. at 267; *Brooks*, 164 F.R.D. at 567. This Court should not allow pre-notice discovery to eviscerate the very protection and supervision that court authorization of notice is intended to provide.

2. **Discovery of the Names and Addresses is Unnecessary, As Other Methods of Discovery are Available to Plaintiff.**

To force EmCare to release the names of individuals employed by entities who have indirect contractual relationships with EmCare solely to enable Plaintiff to seek out additional plaintiffs is to sanction an unwarranted fishing expedition that is unnecessary based on the allegations currently before the Court. Plaintiff is not prohibited from obtaining in the discovery process the information she will need to support her motion for certification and notice. EmCare will produce additional information and documentation about EmCare's structure and its contracts with other entities in the initial disclosures process. In addition, EmCare has no objection to allowing Plaintiff to notice a 30(b)(6) deposition of EmCare's corporate representative to explore EmCare's contractual business relationships. Further, in response to Plaintiff's counsel's letter request, EmCare will produce randomly selected, redacted personnel files and payroll data of five (5) current and five (5) former nurse practitioners employed by co-

defendant Texas EM-I and the redacted files of five (5) current and five (5) former nurse practitioner employees/contractors of co-defendant St. Paul ER Docs during the week of May 19, 2003. Production of the redacted files will alleviate EmCare's concerns regarding the use of such discovery to enable Plaintiff's unsupervised contacts with putative class members as well as protect the individual's privacy interests while still allowing Plaintiff's counsel to assess whether there are other individuals who are similarly-situated to Plaintiff. EmCare submits that, until Plaintiff has engaged in these other types of legitimate discovery, Plaintiff cannot present a supportable argument that releasing the names of putative plaintiffs (so that she can freely shop for additional plaintiffs to join her case) is either justified or within the scope of discovery authorized by the federal rules or case law. Therefore, EmCare objects to Plaintiff's request as improper, especially at this stage of the litigation.

3. **From a Discovery Standpoint, the Request is Overly Broad and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

Plaintiff defines the employees of EmCare's "direct and indirect subsidiaries" to encompass a much broader group than the term "subsidiaries" represents in common usage. By defining this term to include employees of separate entities that are not a part of this suit and with whom EmCare has no relationship other than through a series of contracts, Plaintiff impermissibly broadens the scope of discovery beyond that allowed by the Federal Rules of Civil Procedure and the local rules of this Court. For example, under the local rule, Rule 26(a)(1) disclosures of persons with knowledge relevant to the claim or defense of any party "includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties." L.R. CV-26(d)(2). At this point in the proceedings, there is no reason to believe that current and former employees of entities for whom

EmCare provides service through a series of contracts would be deposed or called as witnesses to support the claims and defenses in this case. There has been no showing that such individuals would have any knowledge regarding the circumstances of June Belt's employment, how she was compensated, or whether she was entitled to overtime pay. As set forth above, Plaintiff seeks these names for one reason: to solicit additional plaintiffs who are employed by non-defendant employers in other states to join her case. EmCare contends that this is an impermissible purpose for requesting this information at this stage of the case.

4. **EmCare Does Not Employ Any of the Proposed Class Members; Plaintiff Must be Put to Some Semblance of Proof on This Issue.**

EmCare further contends that it is inappropriate and premature to seek discovery from EmCare regarding the names of employees of entities who have indirect contractual relationships with EmCare, when it has not even been established that EmCare is a proper party to this suit. EmCare does not employ any NP's or PA's; neither does EmCare have subsidiaries who employ NP's or PA's. Nevertheless, even if the Court finds that EmCare has a direct or indirect relationship with such entities, EmCare objects to the assumption that EmCare was the employer of those individuals – a significant, potentially case-dispositive issue that EmCare disputes. Plaintiff has not satisfied her burden to show that EmCare and the other named defendants acted as a single or joint employer, between one another or amongst other entities, under the FLSA. As the court stated in *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674, 677 (S.D.N.Y. 1981), "[t]he nature of the employer-employee relationship lies at the heart of the [notice] dissemination issue." If it determined that EmCare is not a proper party, then discovery of the identity of the requested individuals would be in appropriate.

5.  **June Belt Cannot Represent Physicians' Assistants**

Even if the stated request were otherwise proper, EmCare would also object to Plaintiff seeking identification of physician assistants employed by entities who have indirect contractual relationships with EmCare. The standards of licensing and practice scope differs substantially between nurse practitioners and physician assistants in the State of Texas. Belt has not alleged that she ever worked as a physician assistant. Therefore, there is absolutely no basis for Plaintiff Belt to demand discovery of the names of physician assistants, who could not possibly be similarly-situated even if class notice were to issue and even if Plaintiff identifies physicians assistants who allege they are owed overtime pay. *See Morisky v. Public Svc. Elec. and Gas Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000) (plaintiffs must have more in common than possible FLSA claims to be similarly situated); *see also Tumminello v. United States*, 14 Cl. Ct. 693 (1988) (same). Accordingly, EmCare objects on this basis, as well.

6.  **The Request Implicates the Rights of Non-Parties**

Finally, EmCare objects to Plaintiff's request because it involves producing information regarding non-parties to this lawsuit, some of whom will object to being dragged into this lawsuit when they have never had any employment or contract relationship with June Belt, the sole plaintiff, or with other putative class members. *See Frank*, 88 F.R.D. at 678. EmCare, through a series of management services contracts, provides administrative and management services to support physician practice groups. These practice groups are separately incorporated and have no common ownership or management with EmCare, Inc., nor do they have any subsidiary relationship, direct or otherwise, with EmCare. To require EmCare to use its access to those businesses' personnel data, obtained by virtue of its contractual relationship, without the permission of those businesses, would interfere with EmCare's business relationships and would

put an unfair burden on those entities by embroiling them in a lawsuit to which they have no relationship or liability.

WHEREFORE, EmCare respectfully requests that the Court enter an order protecting EmCare from Plaintiff's request for identification of the names and addresses of current and former NP's and PA's employed by other, non-EmCare entities.

Respectfully submitted,

Kimberly A. Lucas
State Bar No. 14991480

KYLE & MATHIS, L.L.P.
8300 Douglas, Suite 700
Dallas, TX 75225
(214)706-7600
(214)706-7622

ATTORNEYS FOR DEFENDANT
EMCARE, INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of Defendant EmCare Inc.'s Motion for Protective Order and Brief in Support has been sent via hand delivery, facsimile, Federal Express and/or certified mail, return receipt requested on this 19th day of May 2003 to:

James A. Jones
Jones & Associates, P.C.
5015 Tracy, Suite 100
Dallas, TX 75205

Ronald E. Manthey
Littler Mendelson, P.C.
Suite 2600, LB 116
2001 Ross Avenue
Dallas, TX 75201

John T. Cox
Lynn Tillotson & Pinker, L.L.P.
750 N. St. Paul St., suite 1400
Dallas, TX 75202

_____

## CERTIFICATE OF CONFERENCE

Counsel has attempted to contact counsel for Plaintiff by telephone unsuccessfully. It is assumed counsel for Plaintiff is opposed to Defendant's Motion for Protective Order.

_____

JONES & ASSOCIATES, P.C.
*Attorneys at Law*

5015 TRACY, SUITE 100
DALLAS, TEXAS 75205

April 29, 2003

**<u>VIA FACSIMILE and U.S. MAIL</u>**

Ms. Kimberly A. Lucas
KYLE & MATHIS, L.L.P.
8300 Douglas, Suite 700
Dallas, TX 75225

    Re:    *Belt v. EmCare, Inc., et al.*

Dear Ms. Lucas:

    Pursuant to the Court's directive at the hearing yesterday afternoon, I am providing you this letter to specify the information Plaintiff seeks regarding the identity of putative collective action members. Plaintiffs seek the following information for five current and five former Nurse Practitioners ("NP") and/or Physician Assistants ("PA") employed by or through EmCare, Inc. ("EmCare") and/or any of its direct or indirect subsidiaries at any time during the time period February 25, 2000 to present in each of the states in which NP/PA's are employed by or through EmCare and/or any of its direct or indirect subsidiaries:

1. Full name;
2. Last known address;
3. Last know telephone number(s);
4. Dates of employment;
5. State in which employed;
6. Position held (NP or PA).

    So that there is no misunderstanding, as used herein the term "employed by or through EmCare and/or any of its direct or indirect subsidiaries" includes (but is not

(214) 219-3456    (214) 219-9309/FAX

**EXHIBIT A**

limited to) any and all NP/PA's for whom EmCare has been "engaged" to perform any "of the activities with respect to the employment arrangement" as stated at page 2 of EmCare's 06/01 revision of the Employment Handbook provided to NP/PA's. And, of course, the term "former" when used in relation to NP and PA's refers to their employment status with EmCare and/or any of its direct or indirect subsidiaries and not to their general status as NP's or PA's.

The selection of names should be completely random and should contain an equal number of NP's and PA's. When providing the names, please also provide a description of the methodology used to randomly select the names. If need be, you can for each state create a listing of all current NP's, all former NP's within the relevant time frame, all current PA's and all former PA's withing the relevant time frame, then let me know how many names are on each list and I will then be happy to provide you with random numbers to be utilized to select names off each list (e.g., the 5th, 26th, 54th, 82nd and 93rd names off of an alphabetically sorted list of 100 names).

Should you have any questions, please do not hesitate to call. With kindest regards, I am

Very truly yours,

James A. Jones

cc:   Judge Leonard Davis (*via U.S. Mail*)
      June Belt (*via U.S. Mail*)
      Ronald E. Manthey, Esq. (*via facsimile and U.S. Mail*)
      Ann Marie Painter, Esq. (*via facsimile and U.S. Mail*)
      John T. Cox, III, Esq. (*via facsimile and U.S. Mail*)
      Cody L. Towns, Esq. (*via facsimile and U.S. Mail*)