IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 2 0 2003

DAVID J. MALAND, CLERK
BY
DEPUTY

| | | |
|---|---|---|
| JUNE BELT, on behalf of herself and on behalf of all other similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 6:03-CV-73 |
| (1) EmCare, Inc., (2) Texas EM-I Medical Services, P.A., and (3) St. Paul ERDocs, P.A. | § § § § | JUDGE DAVIS |
| Defendants. | § § | |

## DEFENDANTS' JOINT RESPONSE OPPOSING PLAINTIFF'S MOTION TO APPROVE FORM OF NOTICE

Defendants EmCare, Inc. ("EmCare"), Texas EM-I Medical Services, P.A. ("Texas EM-I") and St. Paul ERDocs, P.A. ("ERDocs") jointly file this Response in Opposition to Plaintiff's Motion to Approve Form of Notice, and would respectfully show the following:

### A. DEFENDANTS ARE RESPONDING WELL WITHIN THE TIME SET FOR THE ISSUANCE OF NOTICE

As noted in Plaintiff's Motion to Approve Form of Notice, the parties have stipulated that court-supervised notice should issue to a specified group of nurse practitioners and physician assistants[1] who have worked during a defined time period for entities for whom EmCare, Inc. or its subsidiaries or related entities has been engaged to perform administrative services. *See* Pl.'s Mot. to Approve Notice, Exh. 1. The stipulation was filed with the Court on July 15, 2003. Further, Defendants requested in the stipulation that the Court set a conference with all parties to

---

[1] The stipulation contemplates the issuance of notice to "all nurse practitioners and physician assistants who have performed services for Texas EM-I Medical Services, P.A., St. Paul ERDocs, P.A., and all other entities for whom EmCare, Inc. has been engaged to perform activities with respect to the employment arrangement, directly or indirectly, from February 25, 2000 to the present." *See* Pl.'s Mot. to Approve Notice, Exh. 1.



DALLAS:114961.2 037186.1011

set deadlines for the submission of notice to the Court for approval and the issuance thereof. *Id.*

At the hearing on July 3, 2003, the Court set the date for a hearing on the issuance of notice on October 1, 2003. *See* Order dated July 3, 2003. Thus, October 1, 2003 was contemplated by the Court as the *earliest* possible date that notice might be issued in this case. Plaintiff's complaints that Defendants have caused a delay by refusing to immediately agree to Plaintiff's proposed form of notice are therefore unfounded.

## B. PLAINTIFF'S PROPOSED NOTICE IS MISLEADING

As noted by the Supreme Court in *Hoffmann-La Roche v. Sperling*, any notice issued by the Court in a 216(b) collective action must be "timely, accurate, and informative." 493 U.S. 165, 172 (1989). The purpose of the notice is to inform interested individuals of the existence of the lawsuit and give them an opportunity to participate. *Id.* The notice is not to encourage or discourage individuals from joining Plaintiff's collective action, as opposed to filing their own actions if they are so inclined. Because the notice is issued by the Court, there should be no ambiguity as to the purpose of the notice. Contrary to this goal, Plaintiff's proposed notice to potential opt-ins contains misleading language and is inappropriate, especially for its intended audience of well-educated medical professionals.

Specifically, by way of example, Plaintiff's proposed form of notice uses the words, "you can claim overtime wages," "you may claim overtime wages," "if you wish to claim overtime," and similar phrases. *See* Pl.'s Mot. to Approve Notice, Exh. 2. This wording is misleading, as it suggests that, by merely sending a notice of consent to opt in, the individual is actually claiming rights to a pre-determined pool of money. Defendants contend that the notice should make potential opt-ins aware of their right to participate or join in the lawsuit, not to stake a "claim" to something. The recipients of the notice may join the ongoing litigation over the issue of entitlement to overtime compensation; however, there is no established overtime liability nor

2

money to "claim."

Plaintiff's proposed notice also states "the United States District Court in Tyler, Texas has approved this Notice" but contains no language informing recipients of the notice that the Court has taken no position on the merits of the case. This key omission further undermines the neutral intent of the notice. In other words, Plaintiff's proposed form of notice attempts to turn the notice into a marketing tool for Plaintiff's counsel, rather than a source of accurate and balanced information that allows potential opt-ins to decide for themselves what action to take. *See Hoffmann-La Roche*, 493 U.S. at 170 (benefits of the class action provisions of § 216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate"). Other courts dealing with similar notice issues in FLSA collective actions have noted the importance of "ensur[ing] the integrity of a judicially controlled communication directed to the intended audience." *See Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) (Exh. B).

Defendants propose that the attached form of notice be adopted by the Court instead. *See* Exhibit A. This form is substantially similar to those approved in several federal cases, including cases cited by Plaintiff, as follows: *Reab*, 214 F.R.D. at 630 (*See* Exh. B); *Barnett v. Countrywide Credit Indus., Inc.*, 2002 U.S. Dist. LEXIS 9099, No. 3:01-CV-1182-M, at *6 (N.D. Tex. May 21, 2002) (*See* Exh. C); *Bontempo v. Westwood One Broadcasting Servs., Inc.*, 2002 WL 1925911, No. 01C8969, at *2 (N.D. Ill. May 3, 2002) (*See* Exh. D); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (*See* Exh. E); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 415 (D.N.J. 1988) (*See* Exh. F).

When compared to the notice approved in these cases, the overly-simplistic language used in Plaintiff's proposed form, while perhaps desirable in other litigation contexts, does not provide sufficient detail regarding the particulars of the lawsuit for its intended audience in this

3

context: degreed and licensed medical professionals. Defendants' proposed notice, besides containing greater detail, includes the names and addresses of all counsel and provides the recipients with a choice of whom to contact should they have questions about the notice.[2] Accordingly, Defendants contend that their proposed notice is more appropriate under the circumstances, as it better enables these individuals to make an informed decision about whether to participate in the suit. *See Hoffmann-La Roche*, 493 U.S. at 170.

Defendants also object to Plaintiff's request to set a 120-day opt-in period. Although a few courts have authorized this extended length of time for allowing plaintiffs to opt in to a collective action, opt-in periods of sixty (60) days or less are far more common.[3] *See, e.g., Barron v. Henry Cty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1106 (M.D. Ala. 2003) (allowing 30-day deadline for filing consents); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) (60 days); *Harrington v. Education Mgmt. Corp.*, 2002 WL 1343753, No. 02CIV.0787HB, at *3 (S.D.N.Y. June 19, 2002) (8 weeks); *Bontempo v. Westwood One Broadcasting Servs., Inc.*, 2002 WL 1925911, No. 01C8969, at *2 (N.D. Ill. May 3, 2002) (less than 60 days); *Scott v. Aetna Servs., Inc.*, 2000 WL 436599, No. 3:99CV46CFD, at *1 (D. Conn. Feb. 18, 2000) (45-day opt-in period); *Harper v. Lovett's Buffet, Inc.* 185 F.R.D. 358, 365 (M.D. Ala. 1999) (45 days); *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 415 (D.N.J. 1988) (45 days). And, in reference to Plaintiff's stated concerns about delays, a shorter opt-in period is more likely to expedite resolution of this action than the suggested 120-day period. Accordingly, Defendant requests that the Court set the opt-in deadline for sixty (60) days after notice is issued.

---

[2] As all counsel have the duty to give accurate information in answering questions about the notice, there is no reason that potential opt-in plaintiffs should be given only Plaintiff's counsel's contact information.
[3] Notably, in the *Marchan v. Taqmex* notice in the Southern District of Texas Plaintiff cites in her Motion, the Court ordered a 30-day period for potential plaintiffs to opt in. *See* Exhibit G, attached.

## C. DEFENDANTS OBJECT TO PLAINTIFF'S REQUEST FOR UNNECESSARY DISCOVERY

Defendants are fully prepared to take on the full cost and burden of providing notice to the potential opt-ins. Once the form of the notice is agreed upon, Defendants propose to mail out the notices via first-class mail[4] at a date to be decided by the Court. Should there be any difficulties with returned mail, Defendants will attempt to find updated address information to deliver the notices in a timely fashion. Accordingly, for purposes of issuing notice, there is no need for any pre-notice discovery to take place as requested by Plaintiff. In fact, the parties' stipulation regarding the issuance of notice was intended to avoid the necessity of conducting any notice-related discovery.

Alternatively, should the Court decide that notice is to be issued by Plaintiff at her expense, Defendants will not object to providing Plaintiff with the names and last known addresses of the potential opt-in plaintiffs for purposes of issuing notice. However, Defendants strongly object to Plaintiff's unsupported (and apparently unprecedented) request for the telephone numbers, dates of birth, and Social Security numbers of the potential opt-ins. Tellingly, Plaintiff cites to no case law in support of such an overreaching and unnecessary request for highly private information that is protected by a variety of laws.[5] In fact, Defendants have found no cases (including the cases cited by Plaintiff in her Motion) in which a court authorized the disclosure of such information for the purpose of mailing notice. *See, e.g., Barron*, 242 F. Supp. 2d at 1106 (requiring defendant to provide name and last known address only for purposes of issuing notice in collective action); *Reab*, 214 F.R.D. at 631 (same);

---

[4] For N.P.'s and P.A.'s currently providing services to any of the Defendants or related entities as defined in the parties' stipulation, notices will be mailed with those individuals' paychecks for a specified pay period.

[5] To the extent Plaintiff maintains this information is required to locate individuals whose notices are undeliverable by mail, Defendants do not object to assisting with locating those individuals on an as-

*Harrington*, 2002 WL 1343753, at *3 (same); *Barnett v. Countrywide Credit Indus., Inc.*, 2002 U.S. Dist. LEXIS 9099, No. 3:01-CV-1182-M, at *6 (N.D. Tex. May 21, 2002) (same); *Bontempo v. Westwood One Broadcasting Servs., Inc.*, 2002 WL 1925911, at *2 (same); *Garza v. Chicago Transit Authority*, 2001 WL 503036, No. 00C0438, at *4 (N.D. Ill. May 8, 2001) (same); *Brzychnalski v. UNESCO*, 35 F. Supp. 2d 351, 354 (S.D.N.Y. 1999) (same); *Harper v. Lovett's Buffet, Inc.* 185 F.R.D. at 365 (same); *McNeil v. District of Columbia*, 1999 WL 571004, No. 98-3142HHKJM, at *3 (D.D.C. Aug. 5, 1999) (same); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996) (same); *Sperling*, 118 F.R.D. at 415 (same).

Providing Plaintiff with the additional information requested merely encourages Plaintiff to use the notice process, not for its intended purpose of notifying potential claimants of the litigation, but to gain unrestricted access to potential plaintiffs and possibly influence their decisions whether to join this suit. In accordance with well-established practices of the federal district courts in issuing notice, Defendants respectfully request that the Court deny Plaintiff's request for this additional and unnecessary information.

WHEREFORE, Defendants respectfully request that the Court deny Plaintiff's Motion to Approve Form of Notice, adopt Defendants' attached form of notice, limit the opt-in period to sixty (60) days from the date notice is issued, allow Defendants to issue notice via first-class mail on a designated date, and deny Plaintiff's request for identifying information above and beyond the names and last known mailing addresses of the agreed potential class members.

---

needed basis and do not object to providing that assistance within a specified timeframe, e.g., 5 days.

Respectfully submitted,

_Kimberly A. Lucas_ /s/

Kimberly A. Lucas

KYLE & MATHIS, L.L.P.
8300 Douglas, Suite 700
Dallas, TX 75225
(214)706-7600 – voice
(214)706-7622 - facsimile

ATTORNEYS FOR DEFENDANT
EMCARE, INC.

_Ronald E. Manthey_

Ronald E. Manthey
Texas State Bar No. 12927400
Ann Marie Painter
Texas State Bar No. 00784715
Stacey S. Calvert
Texas State Bar No. 24006946

LITTLER MENDELSON
A Professional Corporation
2001 Ross Avenue
Suite 2600, Lock Box 116
Dallas, Texas 75201.2931
Telephone: 214.880.8100
Facsimile: 214.880.0181

ATTORNEYS FOR DEFENDANT
TEXAS EM-I MEDICAL SERVICES, P.A.

7

_____

John T. Cox III
State Bar No. 24003722
Cody T. Towns
State Bar No. 24034713

Lynn Tillotson & Pinker, L.L.P.
750 N. St. Paul Street
Suite 1400
Dallas, Texas 75201
(214) 981-3800 – voice
(214) 981-3839 – facsimile

ATTORNEYS FOR DEFENDANT
ST. PAUL ERDOCS, P.A.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served upon counsel of record by U.S. Mail, first class postage prepaid, on this 19th day of August, 2003, as shown below:

James A. Jones
Jones & Associates, P.C.
5015 Tracy, Suite 100
Dallas, TX 75205

Richard J. Burch
Bruckner & Burch, P.L.L.C.
5847 San Felipe #3900
Houston, Texas 77057

Ronald E. Manthey

## NOTICE OF FLSA WAGE AND HOUR SUIT AGAINST EMCARE, INC., ST. PAUL ERDOCS, P.A., AND TEXAS EM-I MEDICAL SERVICES, P.A.

### INTRODUCTION

The purpose of this Notice is to inform you of the existence of a collective action lawsuit which you may elect to join against EmCare, Inc., St. Paul ERDocs, P.A., and Texas EM-I Medical Services, P.A. This notice is being sent to advise you of how your rights may be affected by this lawsuit and to advise you of the procedure for participating in this lawsuit if you choose.

### DESCRIPTION OF THE PROCEEDING

On February 25, 2003, a nurse practitioner filed this lawsuit against EmCare, Inc., Texas EM-I Medical Services, P.A., and St. Paul ERDocs, P.A. in federal district court in Tyler, Texas, alleging that she was improperly classified as an overtime-exempt employee. In particular, the plaintiff alleges that she was not performing work of an overtime exempt administrative, executive or professional employee and that she should have been paid a salary and not an hourly rate if, in fact, she was properly classified as overtime-exempt. Plaintiff seeks unpaid overtime wages, liquidated damages and her attorneys' fees.

EmCare, Inc., Texas EM-I Medical Services, P.A. and St. Paul ERDocs, P.A. have denied these charges. Specifically, these entities assert that Plaintiff was performing the work of an overtime-exempt professional and that Plaintiff was paid properly. St. Paul ERDocs also asserts that Plaintiff was an independent contractor rather than an employee.

### COMPOSITION OF THE WAGE CLASS

The named plaintiff sues on behalf of herself and on behalf of other individuals with whom she is similarly situated. Specifically, she seeks to sue on behalf of any and all individuals who were, at any time from February 25, 2000 through February 25, 2003:

1. Working as a nurse practitioner or physician assistant;
2. For an EM-I entity or a physician group that contracted for administrative services through EmCare, Inc. or one or more of EmCare, Inc.'s subsidiaries or related entities;
3. Paid on an hourly basis; and
4. Did not receive overtime pay for hours worked over 40 in any one week.

### YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above, you may elect to join this suit (that is, "opt in"). To "opt in," you must file a "Consent to Join" form with the Clerk of the Court, a copy of which is enclosed. Your right to participate may depend, however, upon a later decision by the Court that you and the named plaintiffs are or are not all similarly situated.

It is entirely your own decision whether or not to join this suit. You are not required to file a consent or to take any action unless you want to do so. You will not be retaliated against in any way for electing to file or not file the consent form.



**TIME LIMIT FOR FILING CONSENT TO JOIN**

To be valid, a written consent to join must be filed with the Clerk of Court as described below by _____, 2003.


**EFFECTS OF JOINING THIS SUIT**

If you choose to join this suit, you will be bound by the judgment whether it is favorable or unfavorable. This means you will not have the option of getting out of the lawsuit once the Court makes its final decision. While the suit is ongoing, you may be required to provide information, give a deposition, and testify in court.

If you choose not to join this suit, you will not be affected by the judgment. In other words, if you do not file a consent form and join in this case, you will not receive any damages or other relief if the plaintiff prevails here. If you choose not to join this suit, you are free to bring your own lawsuit. You can seek to bring your own suit only if you begin timely independent legal proceedings as prescribed by the Fair Labor Standards Act.

If, however, you decide to join this case by filing your consent, you will be bound by the judgment of the Court on all issues of the case.


**ATTORNEYS FOR THE PARTIES**

If you chose to join this suit as a party plaintiff, you may select your own attorney or you may choose to be represented by the plaintiff's attorney.


The attorneys for the plaintiff are:

James A. Jones
Jones & Associates, P.C.
5015 Tracy, Suite 100
Dallas, Texas 75205
Telephone: 214.219.3456

And

Richard J. Burch
Bruckner & Burch, P.L.L.C.
5847 San Felipe #3900
Houston, Texas 77057
Telephone: 713.877.8788

The attorneys for Defendants are:

Ronald E. Manthey
Ann Marie Painter
Littler Mendelson, P.C.
2001 Ross Avenue
Suite 2600, Lock Box 116
Dallas, Texas 75201.2931
Telephone: 214.880.8100

**ATTORNEYS FOR TEXAS EM-I
MEDICAL SERVICES, P.A.**

John T. Cox, III
Lynn, Tillotson & Pinker, L.L.P.
750 N. St. Paul Street, Suite 1400
Dallas, Texas 75201
Telephone: 214.981.3800

**ATTORNEYS FOR ST. PAUL
ERDOCS, P.A.**

Kim A. Lucas
Kyle & Mathis, L.L.P.
8300 Douglas, Suite 700
Dallas, Texas 75225
Telephone: 214.706.7600

**ATTORNEYS FOR EMCARE, INC.**

## FILING NOTICE OF CONSENT

Attached to this Notice is a form to be used if you wish to be a party plaintiff in this suit. That form must be filled out, signed, and mailed to the Clerk of the Court **postmarked on or before** _____, **2003.** The form should be mailed to the following address:

Jeanne Henderson
U.S. District Court
211 W. Ferguson
Tyler, Texas 75702

Unless the Clerk receives the Notice of Consent form postmarked on or before _____ _____, 2003, you may not be allowed to join in this case.

## PROTECTION AGAINST RETALIATION

The Fair Labor Standards Act prohibits anyone from discriminating or retaliating against you if you choose to take part in this case.

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, HON. LEONARD DAVIS, DISTRICT JUDGE. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS OF THE PLAINTIFF'S CLAIMS OR OF EMCARE, INC.'S, TEXAS EM-I MEDICAL SERVICES, P.A.'S AND/OR ST. PAUL ERDOCS, P.A.'S DEFENSES. THE ISSUE OF WHO MAY PROPERLY JOIN THIS ACTION HAS NOT YET BEEN DECIDED BY THIS COURT.**

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF TEXAS
TYLER DIVISION

JUNE BELT, on behalf of herself and
on behalf of all other similarly situated,
Plaintiff,
vs.

(1) EmCare, Inc.,
(2) Texas EM-I Medical Services, P.A.,
and (3) St. Paul ERDocs, P.A.
Defendants.

CONSENT TO JOIN CLASS ACTION
CIVIL ACTION NO. 6:03-CV-73

**CONSENT TO JOIN AS A PARTY PLAINTIFF**

I hereby give my consent to be a party plaintiff in this case, and agree to be bound by any settlement or judgment of the court in this action. I affirm that at some time between February 25, 2000 and February 25, 2003, I was:

1.     Working as a nurse practitioner or physician assistant;
2.     For an EM-I entity or a physician group that contracted for administrative services through EmCare, Inc. or one or more of EmCare, Inc.'s subsidiaries or related entities;
3.     Paid on an hourly basis; and
4.     Did not receive overtime pay for hours worked over 40 in any one week.

Name: _____
Address: _____
Telephone No.:_____
Date of Birth:_____
Signature: _____
Date: _____

United States District Court,
D. Colorado.

**Katherine REAB, Gail Lee Graham,
Steven J. Finger, Jr. and Ian Ronalds,
individually and on behalf of others
similarly situated, Plaintiffs,
v.
ELECTRONIC ARTS, INC. and Origin
Systems, Inc., Defendants.**

No. CIV. 00-B-1839 (OES).

Sept. 24, 2002.

In suit asserting claims against sellers of multiplayer on-line fantasy role- playing game for violations of minimum wage and overtime provisions of Fair Labor Standards Act (FLSA) and Colorado Wage Act, plaintiffs moved to certify collective action under FLSA on behalf of themselves and all similarly situated former or current employees. The District Court, Babcock, Chief Judge, held that: (1) seers and shard lead counselors, as independent contractors, were excluded from conditional class; (2) motion would be treated as one for conditional class certification for notice purposes only, not for full certification for trial; (3) plaintiffs met their burden to show that they and putative opt-in class members were similarly situated and alleged victims of single plan to pay employees less than compensation due them pursuant to FLSA and were therefore entitled to conditional certification, for notice purposes, of class defined as counselors, senior counselors and assistant senior counselors during pertinent time period; (4) statement prohibiting retaliation against class members who opted in would be included in notice; and (5) notice would be given by means of first-class mail only.

Motion granted.

West Headnotes

**[1] Labor Relations ⟨⟩ 1493**
232Ak1493 Most Cited Cases

District court would employ two-step approach in determining whether employees and those they sought to represent were similarly situated for purposes of FLSA claim, first determining whether collective action should be certified for notice purposes, then revisiting issue of certification after discovery was completed and case was ready for trial. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[2] Labor Relations ⟨⟩ 1493**
232Ak1493 Most Cited Cases

In FLSA case, district court would utilize stricter standard in making second determination of whether plaintiffs were similarly situated after discovery was completed, addressing factors of (1) disparate factual and employment settings of individual plaintiffs, (2) various defenses available to employer which appeared to be individual to each plaintiff, (3) fairness and procedural considerations, and (4) whether plaintiffs made any requisite statutory filings before instituting suit; court also had to consider whether certification would serve purposes and putative benefits of collective action, balancing putative benefits against any prejudice to employer and any judicial inefficiencies that might result from allowing plaintiffs to proceed collectively. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[3] Labor Relations ⟨⟩ 1378.1**
232Ak1378.1 Most Cited Cases

Based on plain language of statute, independent contractors are not entitled to protection of FLSA. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[4] Labor Relations ⟨⟩ 1493**
232Ak1493 Most Cited Cases

Alleged harm to unpaid counselors and putative class of similarly situated employees seeking relief under FLSA minimum wage and overtime provisions began on date sellers

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




of multiplayer online fantasy role-playing game formally adopted policies and procedures, formalized counselor handbook containing rules and regulations, and required participants to work minimum number of shifts; between date game was released to public and that time, counselor program operated without formal rules, training or written agreements between employer and participants in counselor program. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[5] Labor Relations** ☞ **1493**
232Ak1493 Most Cited Cases

In FLSA action, motion for class certification would be analyzed as one for conditional certification for notice purposes only, rather than motion for full class certification for trial; scheduling order entered in case characterized motion as conditional one, and allowing full certification at that point would prejudice employer, which had not had opportunity to complete discovery on issues that might impact any motion for decertification. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[6] Labor Relations** ☞ **1493**
232Ak1493 Most Cited Cases

Individual questions with respect to damages will not defeat class certification under FLSA unless that issue creates conflict which goes to heart of lawsuit. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[7] Labor Relations** ☞ **1493**
232Ak1493 Most Cited Cases

FLSA plaintiffs' subjective belief as to their status as volunteers rather than employees of defendants was irrelevant to question of whether to conditionally certify class for notice purposes. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[8] Labor Relations** ☞ **1105**
232Ak1105 Most Cited Cases

FLSA should be liberally applied to furthest

reaches consistent with congressional direction. Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq.

**[9] Labor Relations** ☞ **1493**
232Ak1493 Most Cited Cases

District court would not consider number of persons wishing to join FLSA action as factor in deciding whether to conditionally certify class for notice purposes. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[10] Labor Relations** ☞ **1493**
232Ak1493 Most Cited Cases

FLSA plaintiffs met their burden to show that they and putative opt-in class members were similarly situated and alleged victims of single plan to pay employees less than compensation due them pursuant to FLSA and were therefore entitled to conditional certification, for notice purposes, of class composed of counselors, senior counselors or assistant senior counselors for sellers of multiplayer on-line fantasy role playing game for pertinent time period. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[11] Labor Relations** ☞ **1492.1**
232Ak1492.1 Most Cited Cases

Statement prohibiting retaliation against class members who opted in would be included in notice of pendency of collective action lawsuit under FLSA. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[12] Labor Relations** ☞ **1492.1**
232Ak1492.1 Most Cited Cases

Notice of pendency of FLSA collective action lawsuit by counselors employed by sellers of multiplayer online fantasy role-playing game would be given by means of first-class mail only, rather than via electronic mail and over website; electronic communication inherently had potential to be copied and forwarded to other people via internet with commentary that could distort notice approved by court,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



whereas first class mail ensured at outset that appropriately targeted audience received intended notification and maximized integrity of notice process. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**\*625** James W. Schmehl, Schmehl & Yowell, PC, Fort Collins, CO, Matthew Vincent Herron, Meisenheimer, Herron & Steele, San Diego, CA, for plaintiffs.

Victor Schachter, Fenwick & West, LLP, Mountain View, CA, for Electronic Arts, Inc.

Bruce Charles Anderson, Stettner, Miller & Cohn, PC, Denver, CO, Daniel J. McCoy, Victor Schachter, Fenwick & West, LLP, Mountain View, CA, for Origin Systems, Inc.

MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs Katherine Reab, Gail Lee Graham, Steven J. Finger, Jr. and Ian Ronalds (collectively, Plaintiffs) all former or current employees of Defendants Electronic Arts, Inc. (EA) and Origin Systems, Inc. (OSI) (collectively, Defendants) assert claims for violations of the minimum wage and overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, and the Colorado Wage Act, §§ 8-4-101 *et seq.* Plaintiffs move to certify a collective action under 29 U.S.C. § 216(b) on behalf of themselves and all similarly situated former or current employees. After consideration of the motion, briefs and counsel's arguments, I grant the motion to certify an FLSA collective action.

I.
Facts

In September 1997, Defendants released for public sale their product "Ultima Online" (UO), a multiplayer on-line fantasy role-playing game in which thousands of players interact simultaneously with each other. Zinser Decl. ¶ 3. UO is composed of several distinct worlds known as "shards." *Id.* at ¶ 5. The shards are computer servers serving a specific geographical area of users located throughout the real world. *Id.*

When the game was first released to the public, Game Masters (GMs), paid employees of Defendants, responded to customer queries concerning the use of the game. The GMs' duties included helping players overcome programming and/or application errors in the game and dealing with cheating players, harassing players, or those who violated the game's Terms of Service. Pltfs. Ex. 2, pp. 13, 15.

Approximately two months after UO was introduced to the public, Defendants initiated a "counselor program." Defendants actively solicited individuals from among their customer base to work in the counselor program. Ex. 1, p. 20. In response, hundreds of customers volunteered to be counselors. The counselors performed customer-service oriented duties including answering questions from customers concerning operation of the product and dealing with customers having problems playing the game. Pltfs. Ex. 2, p. 19. The counselors, who received no pay for the duties they performed, received compensation in the form of a free game account and occasional free items such as caps.

After formation of the counselor program, the GMs became the paid supervisors of the unpaid counselors. As supervisors, the GMs' job duties included making sure there were counselors actively taking calls on each of twenty-four shards. If not, the GMs' role was to provide counselors to take the calls. Pltfs. Ex. 32, doc. 1499. According to Plaintiffs, because the GMs usually were not available twenty-four hours per day, counselors became the equivalent of GMs during times when GMs were not available. *See* Pltfs. Ex. 4, doc. 877.

Until April 1999, the counselor program operated in a "loose fashion," Wood Decl., **\*626** ¶ 8, with no consistent or mandatory training or signed contracts or agreements between Defendants and the counselors. *Id.* In April 1999, as the number of persons interested in counselor positions grew, Defendants formally adopted policies and



procedures controlling the activities of counselors. Resp. Brief, pp. 4-5. *See* Amended Complaint, Ex. A, Counselor Handbook.

According to the Counselor Handbook, counselor program participants were required to: 1) complete training in order to serve as customer service representatives in connection with Defendants' product; 2) work at least three two-hour shifts per week; 3) sign a Terms of Service Agreement drafted by Defendants, Amended Complaint, Ex. A, p. 39-43; and 4) send Defendants a copy of a picture ID. If counselors missed three of their scheduled shifts without notice or excuse, they were terminated from the counselor program.

The Terms of Service Agreement contained the following:
These Terms of Service for Counselors is an agreement between you, the applicant ("Counselor"), and Origin Systems, Inc. ("OSI"), of the conditions under which you agree to undertake the task of being a Counselor of OSI's on- line game, Ultima Online ("UO" or "the Game")....

. . . . .

The Counselor program is a volunteer service organization; we are here to help others when they run into unusual difficulties during the normal course of play. This takes the form of monitoring the Help Request Queue for calls for assistance from subscribers; responding to those calls; determining if the call should be handled immediately by the Counselor or forwarded to a Game Master and; following up to insure that the subscriber is satisfied that his request has been dealt with.
Ex. 5, p. 36. Defendants reserved and exercised the right to terminate an individual's participation in the counselor program for failure to abide by the Terms of Service Agreement.

After counselor program participants served as counselors for a period of time, they were allowed to apply for other jobs in the counselor program, such as senior counselor, assistant senior counselor, shard lead counselor, and seer or elder.

UO customers relied upon the unpaid counselors as well as the paid GMs to provide customer service. GMs would occasionally transfer calls made to them into the counselor queue. Customers also were encouraged to contact either a GM or a counselor for assistance. According to Plaintiffs, in effect, there was little difference between the duties performed by the paid GMs and the unpaid counselors.

Beginning January 1, 2001, Defendants hired paid personnel to train "shoulder- to-shoulder" with the counselors for approximately five months to learn the duties of the counselor position. These duties were identical to the duties they then performed under the label "advisors" beginning in July, 2001. The paid advisors could not be distinguished by customers from the unpaid counselors. Ex. 2, pp. 50, 61.

On May 7, 2001, the unpaid counselors were "[t]erminated to restructure some of their [Defendants'] support." *See* Ex. 2, p. 36. Thereafter, the paid advisors took over the duties which had initially been performed by paid GMs and then by unpaid participants in the counselor program.

Based on these circumstances, Plaintiffs allege that the counselor program participants were employees of OSI as defined in the FLSA. According to Plaintiffs, Defendants failed to pay and/or paid compensation owed them below the FLSA mandated minimum wage and did not pay overtime to them for the work and labor they performed for Defendants. *See* FLSA §§ 206-07.

## II.
## Law

The Fair Labor Standards Act, 29 U.S.C. § 216(b), provides that:
*627 [a]n action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
*Id.*

[1] Therefore, I must determine whether Plaintiffs and those they seek to represent are "similarly situated" for purposes of the FLSA claim.

The statute does not define "similarly situated" nor has the Tenth Circuit explained its meaning. In *Bayles v. American Medical Response of Colorado, Inc.,* 950 F.Supp. 1053, 1066-67 (D.Colo.1996), I adopted an *ad hoc* method of determining whether plaintiffs were similarly situated under § 216(b). In particular, I employ the two-step approach to § 216(b) certification adopted by several other courts. First, I must determine whether a collective action should be certified for notice purposes. Then, after discovery is completed and the case is ready for trial, I revisit the issue of certification. *Id; See also Thiessen v. GE Capital Corp.* 267 F.3d 1095, 1105 (10th Cir.2001) (no error in utilizing *ad hoc* approach to determine if plaintiffs were "similarly situated" for purposes of § 216(b)). Plaintiffs have the burden of showing that they are similarly situated to other employees. *Bayles,* 950 F.Supp. at 1067.

[2] After discovery has been completed and the case is ready for trial, I make a second determination, utilizing a stricter standard of "similarly situated." *Thiessen,* 267 F.3d at 1102-03 *citing Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D.Colo.1997). In determining whether plaintiffs are similarly situated after discovery is completed, courts address several factors: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made any requisite statutory filings before instituting suit. *Id.*

I must also consider whether certification would serve the purposes and putative benefits of a collective action under § 216.

The Supreme Court has identified the main benefits of a collective action under § 216(b):

A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity.

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). I must balance the putative benefits against any prejudice to the defendant and any judicial inefficiencies that may result from allowing plaintiffs to proceed collectively. *Bayles* at 1067.

A. Proposed conditional class definition

1. Participants

Plaintiffs have not proposed a conditional class definition. Their papers suggest inclusion of all participants in Defendants' counselor program including: 1) counselors; 2) senior counselors; 3) assistant senior counselors; 4) seers; and 5) shard lead counselors. Defendants do not dispute that counselors, senior counselors, and assistant senior counselors should be included in any certified class. *See* Response Brief, p. 8. Defendants assert, however, that shard lead counselors should be excluded from the class based on their status as independent contractors. *See id.* It is uncontested that seers were independent contractors. *See id.*

Plaintiffs state that at some point during the counselor program, some counselors were designated shard lead counselors and were hired by Defendant and paid on a contract basis to supervise the counselors in each shard. Opening Brief, p. 7.

[3] Based on the plain language of § 216(b), employees rather than independent *628 contractors, are entitled to the protection of the FLSA. *See id. See also Baker v. Flint Eng'g & Construc. Co.,* 137 F.3d 1436 (10th Cir.1998). Consequently, as a matter of law, seers and shard lead counselors are excluded from the conditional class. Where some counselors

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



became shard lead counselors on a contract basis, any damages would be limited to the period they served as counselors

### 2. Pertinent Dates

[4] Plaintiffs contend that the harm for which they seek relief began in September, 1997 when Defendants released the game to the public. Until April 1999, however, the counselor program operated without formal rules, training or written agreements between Defendants and participants in the counselor program. In April, 1999, Defendants formally adopted policies and procedures, formalized the counselor handbook containing rules and regulations, and required the participants to work a minimum number of shifts. Under these circumstances underlying Plaintiffs' allegations that they were Defendants' employees, I find that the alleged harm to Plaintiffs and the putative class began on April 1, 1999. The parties agree that any harm ended on May 7, 2001, when the counselor program was terminated.

The conditional class is defined as follows:
All participants in Defendants' Ultima Online Counselor Program who participated as counselors, senior counselors or assistant senior counselors between April 1, 1999 through May 7, 2001 and were not paid wages and overtime pay pursuant to the Fair Labor Standards Act.

### B. Nature of Certification

[5] In their Reply Brief, Plaintiffs argue for the first time that I should certify this action for trial as well as notice purposes. In their motion, Plaintiffs seek certification for notice purposes only. The Scheduling Order entered in this case characterizes the pending motion as a motion for *conditional* class certification. *See* June 11, 2001 Scheduling Order, p. 4, ¶ 6 (emphasis added). To allow full certification at this point would prejudice Defendants who have not had the opportunity to complete discovery on issues which may impact any motion for decertification. Therefore, I analyze the motion as a motion for conditional certification for notice purposes to which the lower standard for certification applies.

### C. Notice

#### 1. Similarly Situated.

Plaintiffs have made "substantial allegations that the putative class members were together the victims of a single ... plan." *See* Amended Comp. ¶¶ 121-123. In particular, Plaintiffs allege that they and the putative class members were Defendants' employees and received compensation below minimum wage or no compensation from Defendants for the work, labor and services they provided to Defendants.

[6] In response, Defendants argue that "fundamental changes occurred within the Counselor positions, such that this Court cannot conclude that all former Counselors are similarly situated without an examination of the specific details of each Counselor's actual dates." Resp. Brief, p. 7, fn. 8. Assuming there were fundamental changes which altered the nature of Plaintiffs' alleged status as employees to which wages were due, Plaintiffs state that all putative class members working in the same positions during the changes were treated the same. Hence, individual analysis of specific details of each putative class member's position and actual dates worked would only be necessary to calculate wages due such persons. Thus, this issue applies to calculation of damages, not certification. Generally, damages should not be considered in issuing notice. "It is well established that individual questions with respect to damages will not defeat class certification ... unless that issue creates a conflict which goes to the heart of the lawsuit." *Ansoumana v. Gristede's Operating Corp.,* 201 *629 F.R.D. 81 (S.D.N.Y.2001); In re AM Int'l, Inc. Securities Litigation,* 108 F.R.D. 190, 196 (S.D.N.Y.1985). Defendants have made no showing that individual damages questions create such a conflict.

[7] Defendants contend also that Plaintiffs "believed they were volunteers and only later felt that counselors had become what they believed were employees." In *Alamo Foundation*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



*v. Secretary of Labor,* 471 U.S. 290, 302, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985) the Court stated:

> the purpose of the [FLSA] requires that it be applied even to those who would decline its protections. If an exception to the Act were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions or to waive their protections under the [FLSA].

*Id.* Plaintiffs' subjective belief as to their status under the FLSA is irrelevant to the question whether to conditionally certify a class.

2. Number of potential opt-in plaintiffs

According to Defendants, when ruling on a collective action conditional certification motion in an FLSA collective action, a court "should satisfy itself that there are other [potential class plaintiffs] who desire to 'opt-in'...." *Dybach v. Florida Dep't. of Corrections,* 942 F.2d 1562, 1567 (11th Cir.1991). Defendants contend, therefore, that as a minimum threshold requirement, Plaintiffs must demonstrate that other potential class members intend to participate before the Court expends its judicial resources.

[8] The cited language in *Dybach* is *dicta.* Research fails to reveal any court that has applied this requirement. Moreover, the instruction appears to conflict with United States Supreme Court's position that the Act should be liberally "applied to the furthest reaches consistent with congressional direction." *Alamo,* at 296, 105 S.Ct. 1953, *citing Mitchell v. Lublin, McGaughy & Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959).

[9] Defendants admit that at least 3,000 putative class members exist. *See* Resp. Brief, p. 4. It is reasonable to assume that some unknown number of these potential class members would opt in to this lawsuit. However, requiring plaintiffs in § 216(b) actions to have some unknown number of persons decide whether to opt in places plaintiffs in the position of communicating with potential litigants without court supervision or guidance, leaving plaintiffs subject to allegations of improper solicitation and "tainting" of the putative class. At this stage of the proceedings, the number of persons who wish to join the action is not a factor I consider in determining whether to grant Plaintiffs' motion to certify.

3. Benefits of Conditional Certification

[10] In this case, discovery is not complete and is presently stayed pending resolution of this motion. Therefore, significant economies can still be achieved by collective discovery and trial preparation. Moreover, the judicial system benefits by efficient resolution in one proceeding of a common issue of law and fact arising from the same alleged activity. *See Hoffmann- La Roche,* 493 U.S. at 170, 110 S.Ct. 482.

Plaintiffs have met their burden to show that they and the putative opt-in class members are similarly situated and the alleged victims of a single plan by Defendants to pay employees less than the compensation due them pursuant to the FLSA. Therefore, Plaintiffs are entitled to conditional certification of the class herein defined for notice purposes only.

D. Form of Notice

Defendants object to Plaintiffs' proposed form of notice on several grounds.

a. Opt-in Period

Plaintiffs' initial proposed form of notice provides recipients 90 days to opt-in. However, *630 the Scheduling Order provides for a 60 day opt-in period. *See* Scheduling Order, p. 8. The parties agree that the opt-in period shall be 60 days.

b. Retaliation Clause

[11] Defendants object to the inclusion of a statement prohibiting retaliation by the Defendants against class members who opt in.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



According to Defendants, the statement is unnecessary because the counselor program no longer exists, and class members have no relationship, volunteer, employee, contractor or otherwise, with the Defendants.

According to Plaintiffs, all counselor program participants were required to be subscribers to Defendants' online product. Given the number of potential putative class members, it is reasonable to assume many of these persons remain customers of Defendants. In addition, Defendants have created a new program for volunteers, the Companion Program, Wood Depo. at 34:5-37:8, the members of which may or may not be former counselors. Also, Defendants promoted persons from the Counselor Program to paid positions with Defendants and hired some as independent contractors. *Id.* at pp. 72-73. Therefore, there may be some potential class members who remain employed or paid by Defendants.

Retaliation could conceivably include closing opt-in plaintiffs' game subscriptions or terminating their employment. These persons are entitled to know that it is a violation of the FLSA for Defendants to retaliate against them for exercising their right to opt in to the litigation. The statement concerning retaliation will be included in the form of notice.

c. Obligations of opt-in Plaintiffs

The proposed form of notice informs potential class members that if they opt in, they may be asked to: 1) appear for a deposition in Denver, Colorado; 2) respond to written discovery; and/or 3) appear at a trial in Denver. Inclusion of this information will inform potential opt-in Plaintiffs not only about the nature of this action and their rights, but about their potential obligations. In addition, the proposed form of notice uses precatory rather than mandatory language. Thus, the statement properly informs the potential opt-in plaintiffs of their obligations.

d. Method of Notice

[12] Plaintiffs seek to notify potential opt-in

plaintiffs by first class mail, electronic mail and internet website posting. Plaintiffs do not cite any legal authority to support the issuance of notice by electronic means or over the internet.

A certified class must receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2). Potential class members are entitled to receive "accurate and timely notice concerning the pendency of the collective action...." *Hoffmann-La Roche,* 493 U.S. at 170, 110 S.Ct. 482.

According to Defendants, notice to potential opt-in plaintiffs via electronic mail and over a website is not the best notice practicable. Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.

Where it is important to ensure that the most accurate notice possible is provided to the proper audience, notification by first class mail is the preferred method in the unique circumstances of class certification notification. Such a mailing process ensures the integrity of a judicially controlled communication directed to the intended audience.

In contrast, electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication *631 will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease. First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process. Therefore, notice shall be given by

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



means of first-class mail only.

Accordingly, IT IS ORDERED that:

1. Plaintiffs motion to proceed as a collective action pursuant to 29 U.S.C. § 216(b) is GRANTED;

2. the collective action, as defined herein, is certified for notice purposes only;

3. the parties shall file any objections to the attached form of notice and opt-in form within 10 days from the date this Order enters;

4. Defendants SHALL PROVIDE Plaintiffs with the names and last known physical addresses of all individuals in the putative FLSA collective action by October 23, 2002;

5. Defendants SHALL PROVIDE NOTICE by First Class Mail to all putative opt-in Plaintiffs; and

6. the stay of discovery entered April 2, 2002 is hereby LIFTED.

## ATTACHMENT
## NOTICE OF PENDENCY OF COLLECTIVE ACTION LAWSUIT

TO: All participants in the Ultima Online Counselor Program of Origin Systems, Inc., and Electronic Arts, Inc., who performed services as Counselors, Senior Counselors, and Assistant Senior Counselors between April 1, 1999 through May 7, 2001 within Defendants' Ultima Online Counselor Program, and whose services were performed in a State of the United States or the District of Columbia.

RE: Fair Labor Standards Act of 1938, As Amended, 29 U.S.C. § 201, *et seq.*

### Introduction

The purpose of this Notice is to: 1) inform you of the existence of a lawsuit in which you are potentially "similarly situated" to the named Plaintiffs; 2) advise you of how your rights may be affected by this lawsuit; and 3) instruct you on the procedure for participating

in this lawsuit. This Notice is not an expression by the Court of any opinion as to the merits of any claims or defenses asserted by any party to this action.

### Description of the Lawsuit

In October, 2000, Katherine Reab, Steven J. Finger, Jr., Gail Lee Graham, and Ian Ronalds (Plaintiffs) brought this lawsuit against Defendants Electronic Arts, Inc. and Origin Systems, Inc. (Defendants) on behalf of themselves and all other past and present individuals who participated in Defendants' Ultima Online Counselor Program as Counselors, Senior Counselors, or Assistant Senior Counselors from April 1, 1999 through May 7, 2001. Specifically, Plaintiffs allege that they are owed pay at the minimum wage for all hours up to forty (40) hours per week, and pay at one and one-half times the minimum wage for all hours over forty (40) per week in which they participated in the Ultima Online Counselor Program during this time period. Plaintiffs also seek as liquidated damages an amount equal to their unpaid compensation or prejudgment interest and attorneys' fees and costs. The Defendants have denied any wrongdoing or liability and vigorously contest all claims that have been asserted.

### Composition of the Class

The named Plaintiffs seek, under their FLSA claim, to sue on behalf of themselves and all other similarly situated participants in Defendants' Ultima Online Counselor Program who participated in the Ultima Online *632 Counselor Program as counselors, senior counselors, or assistant senior counselors from April 1, 1999 through May 7, 2001.

### Your Right To Participate In The FLSA Portion Of This Suit

If you fit the definition above, you may join the FLSA portion of this suit by mailing the "Consent To Become Party Plaintiff" form to Plaintiffs' counsel at the following address:

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



Schmehl, Yowell & Mackler, P.C.
219 West Magnolia Street
Fort Collins, CO 80521

The form must be sent to Plaintiffs' counsel in sufficient time to have Plaintiffs' counsel file it with the Federal Court on or before _____ [date within 60 days after court-approved mailing date]. If you fail to return the "Consent To Become Party Plaintiff" form to Plaintiffs' counsel by _____ for it to be filed with the Federal Court on or before the above deadline, you may [will] not be able to participate in the FLSA portion of this lawsuit.

*Effect Of Joining This Suit*

If you choose to join in the suit, you will be bound by the decision of the court, whether it is favorable or unfavorable.

**If you choose to join in the suit, you may be asked to: 1) appear for a deposition in Denver, Colorado; 2) respond to written discovery; and/or 3) appear at a trial in Denver.**

The attorneys for the class Plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery there will be no attorneys' fee. If the Plaintiffs prevail in this litigation, the attorneys for the class will request that the Court either determine or approve the amount of attorneys' fee and costs they are entitled to receive for their services.

If you return the consent form attached to this Notice, you are agreeing to: 1) designate the class representatives as your agents to make decisions on your behalf concerning this lawsuit; 2) the method and manner of conducting this lawsuit; 3) the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs; and 4) all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiffs will be binding on you if you join this lawsuit. However, the Court has retained jurisdiction to determine the reasonableness of any

settlement with the Defendants, and any agreement concerning the reasonableness of any attorneys' fees and costs that are to be paid to the Plaintiffs' counsel.

*Legal Effect In Not Joining This Suit*

If you choose not to join in this suit, you will not be affected by any judgment or settlement rendered in the FLSA portion of this lawsuit, whether favorable or unfavorable to the class. If you choose not to join in this lawsuit, you are free to file your own lawsuit under the FLSA, but you will then be responsible for all costs, including counsel fees, associated with your lawsuit.

*No Retaliation Permitted*

Federal Law prohibits the Defendants from discharging you or in any other manner discriminating against you because you have exercised your rights under the FLSA to seek compensation.

*Your Legal Representative If You Join*
If you choose to join this lawsuit and agree to be represented by the named Plaintiffs through their attorneys, your counsel in this action will be:

Schmehl, Yowell & Mackler, P.C.

219 West Magnolia Street

Fort Collins, CO 80521

Meisenheiner, Herron & Steele

550 West C Street, Suite 1760

San Diego, California 92101

***633** Further Information*

Further information about this Notice, the deadline for filing a "Consent to Become A Party Plaintiff" or questions concerning this lawsuit may be obtained by writing, phoning or e-mailing Plaintiffs' counsel, James Schmehl, at Schmehl, Yowell & Mackler, P.C., at: [TO BE PROVIDED BY COUNSEL], or

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



**Defendants' counsel, Victor Schachter and Daniel McCoy, at Fenwick & West LLP, (650)494-0600,** *vschachter@fenwick.com, dmccoy@fenwick.com.*

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE

**\*634**

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE

214 F.R.D. 623, 8 Wage & Hour Cas.2d (BNA) 1196

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



LEXSEE 2002 U.S. DIST. LEXIS 9099

**LISA BARNETT, on behalf of herself and all others similarly situated, Plaintiff, v. COUNTRYWIDE CREDIT INDUSTRIES, INC., COUNTRYWIDE HOME LOANS, INC., and FULL SPECTRUM LENDING, INC., Defendants.**

**Civil Action No. 3:01–CV–1182–M**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**2002 U.S. Dist. LEXIS 9099; 147 Lab. Cas. (CCH) P34,644**

**May 21, 2002, Decided**
**May 21, 2002, Filed; May 22, 2002, Entered**

**DISPOSITION:** [*1] Motion to Allow Nationwide Notification Pursuant to 29 U.S.C. § 216(b) GRANTED.

**LexisNexis (TM) HEADNOTES- Core Concepts:**

**COUNSEL:** For LOY CARTER, GEOFF BURKHART, DEBORAH ROBINSON, LISA BARNETT, plaintiffs: David L Leon, Lawrence S Hosmer, Attorneys at Law, Leon & Hosmer, Karen K Fitzgerald, Attorney at Law, Kleiman Lawrence Baskind & Fitzgerald, Dallas, TX USA.

For LOY CARTER, GEOFF BURKHART, DEBORAH ROBINSON, LISA BARNETT, plaintiffs: Anne E Hinds, Caryl L Boies, Sigrid McCawley, Attorneys at Law, Boies Schiller & Flexner, Hollywood, FL USA.

For HEATHER DAWN YOUNG, plaintiff: Karen K Fitzgerald, Attorney at Law, Kleiman Lawrence Baskind & Fitzgerald, Dallas, TX USA.

For HEATHER DAWN YOUNG, plaintiff: Sigrid McCawley, Attorney at Law, Boies Schiller & Flexner, Hollywood, FL USA.

For COUNTRYWIDE CREDIT INDUSTRIES INC, COUNTRYWIDE HOME LOANS INC, FULL SPECTRUM LENDING INC, defendants: Ruth Ann Norton Daniels, Bryan D Perkins, Connie K Wilhite, Attorneys at Law, Gibson McClure Wallace & Daniels, Dallas, TX USA.

**JUDGES:** BARBARA M.G. LYNN, UNITED STATES DISTRICT JUDGE, NORTHERN DISTRICT OF TEXAS.

**OPINIONBY:** BARBARA M.G. LYNN

**OPINION:**

**MEMORANDUM ORDER AND OPINION**

On March 28, 2002, Plaintiff filed [*2] a Motion to Allow Nationwide Notification Pursuant to 29 U.S.C. § 216(b). Having considered the Motion, as well as the Response filed thereto, n1 the Court is of the opinion that the Motion should be GRANTED.

> n1 The Court notes that Plaintiff filed her Reply four days late, and did not file a Motion for Leave to file the Reply late. Thus, the Court did not consider Plaintiff's Reply. Despite Plaintiff's lateness in filing the Reply, however, the Court determines that Plaintiff's Motion should be GRANTED.

In accordance with the procedural provisions for suit set forth in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which provide for institution of suit "by one or more employees for or in behalf of himself or themselves and other employees similarly situated," Plaintiff's suit complains that Defendants have failed to provide overtime compensation to herself and certain other similarly situated employees not exempt from the FLSA's overtime compensation [*3] requirements. District courts have discretion to allow a party asserting FLSA claims on behalf of others to notify potential plaintiffs that they may choose to "opt-in" to the suit. *See* *Hoffman–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989). In this Motion, Plaintiff requests that the Court exercise its discretion to permit Plaintiffs to notify an opt-in class consisting of all current and former Account Executives, Home Loan Consultants, Loan Officers, and Loan Originators who were employed by Defendants from June 20, 1998 to the present. Plaintiff's



Page 2

2002 U.S. Dist. LEXIS 9099, *3; 147 Lab. Cas. (CCH) P34,644

Memorandum at 1. Plaintiff argues that the Court should allow Plaintiff to notify these individuals by posting a notice of the suit on an employee bulletin board or other similar device at the employees' workplace, and also by mailing a notice to the home addresses of all current and former employees who occupied one of the above-listed positions anytime since June 20, 1998. Defendants' central contention is that the class of persons Plaintiff wishes to notify are not similarly situated to Plaintiff such that she may act as a representative Plaintiff for them.

Although the Fifth [*4] Circuit has not adopted a particular standard to be used in determining whether to allow notification, n2 the prevailing test among the federal courts, originating in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), consists of the following:

> First, the Court must make an initial inquiry into whether the Plaintiff has provided sufficient evidence that similarly situated potential Plaintiffs exist. At this stage, the Court uses a lenient standard to determine whether similarly situated persons exist, and if the Court determines that certification is appropriate, then it usually "conditionally certifies" the class. Second, the Court reexamines the class after notice, time for opting-in, and discovery have taken place. If the Court finds that the class is no longer made up of similarly situated persons, then it may decertify the class. This inquiry is usually conducted upon a motion filed by the Defendant.

*Hall v. Burk*, 2002 U.S. Dist. LEXIS 4163, No. 3:01-CV-2487-H, 2002 WL 413901, at *2 (N.D. Tex. Mar. 11, 2002) (Sanders, Senior J.) (citations omitted). To establish that employees are similarly situated, a plaintiff must show that they are "'similarly situated [*5] with respect to their job requirements and with regard to their pay provisions.' [The] positions need not be identical, but similar." *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994).

> n2 In *Mooney v. ARAMCO Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), the Fifth Circuit explicitly declined to adopt a specific approach.

The Court concludes that, applying the *Lusardi* two-step procedure for FLSA opt-in suits, Plaintiff has proffered evidence sufficient for conditional certification of the class, and for the Court to permit Plaintiffs to notify the class members of the pending suit. Although the Court notes Defendants' concerns, the record is, at this early stage in the proceedings, too incomplete for the Court to make a definitive determination as to the similarity of the class members. After the potential opt-in plaintiffs have filed their Notices of Consent, the Court will entertain a motion by Defendants to decertify the class.

Two remaining issues [*6] are (a) what type of notice the Court should allow, and (b) whether Account Executives who have binding arbitration agreements with Defendants should be notified. The Court determines that mailing the notice to the potential class members, rather than also posting them at Defendants' offices, is sufficient to provide the potential opt-in plaintiffs with notice of the suit. Therefore, the Court orders Defendants to provide to Plaintiff, by May 31, 2002, a list of the names and last-known addresses (in electronic form) of all current and former Account Executives, Home Loan Consultants, Loan Officers, and Loan Originators who were employed by Defendants from June 20, 1998 forward and were classified as exempt from the provisions of the FLSA Act. By June 14, 2002, Plaintiff, through her counsel, shall send the attached notice and consent form to these individuals. The consent forms must be postmarked by August 23, 2002, and filed with the Court by September 6, 2002.

With respect to the arbitration agreement issue, the Court orders Defendants to divide the above list of sales employees into those who signed arbitration agreements and those who did not sign them. Although the Court permits [*7] Plaintiff to send notice of the suit to all of these individuals, regardless of whether they signed arbitration agreements, only those persons who did not sign arbitration agreements may send back their consent form and opt-in to the suit.

SO ORDERED.

DATED: May 21, 2002.

BARBARA M.G. LYNN

UNITED STATES DISTRICT JUDGE

NORTHERN DISTRICT OF TEXAS

ATTACHMENT

**IMPORTANT NOTIFICATION TO POTENTIAL CLASS MEMBERS**

TO: **ALL CURRENT OR FORMER ACCOUNT EXECUTIVES, HOME LOAN CONSULTANTS, LOAN OFFICERS, AND LOAN ORIGINATORS WHO WERE EMPLOYED AT ANY TIME SINCE JUNE 20, 1998 BY COUNTRYWIDE CREDIT INDUSTRIES, INC.; COUNTRYWIDE HOME**

2002 U.S. Dist. LEXIS 9099, *7; 147 Lab. Cas. (CCH) P34,644

Page 3

**LOANS, INC.; OR FULL SPECTRUM LENDING, INC. ("COUNTRYWIDE") AND WHO DID NOT ENTER INTO AGREEMENTS REQUIRING ARBITRATION OF OVERTIME COMPENSATION CLAIMS AGAINST COUNTRYWIDE**

RE: RIGHT TO OPT-INTO LAWSUIT TO RECOVER UNPAID OVERTIME COMPENSATION

DATE: MAY 16, 2002.

1. PURPOSE OF NOTICE

The purpose of this Notification is to inform you of the existence of a collective action lawsuit in which you are potentially eligible to participate because you may be "similarly situated" to the named Plaintiff. This Notification is also intended [*8] to advise you how your rights under the Federal Fair Labor Standards Act (the "Act") may be affected by this lawsuit, and to instruct you on the procedure for participating in this suit, should you decide that it is appropriate and you choose to do so.

2. DESCRIPTION OF THE LAWSUIT

This lawsuit has been brought by Lisa Barnett ("Plaintiff") against Countrywide Credit Industries, Inc., Countrywide Home Loans, Inc. and Full Spectrum Lending, Inc. (collectively referred to as "Countrywide") in the United States District Court for the Northern District of Texas. The lawsuit alleges that Countrywide failed to provide overtime compensation as required by the Act. Plaintiff's lead counsel in this case are:

Caryl Boies (clboies–ᴸ bsfllp.com)

Anne Hinds (ahinds–ᴸ bsfllp.com)

Sigrid McCawley (smccawley–ᴸ bsfllp.com)

Boies, Schiller & Flexner L.L.P.

2435 Hollywood Boulevard

Hollywood, FL 33020

Telephone: (888) 230-9058

Facsimile: (954) 929-1185

Generally, the overtime provisions of the Act require that, for all hours over forty hours per week that an employee works, the employer must compensate the employee at the rate of one and one-half times his or her regular hourly rate, [*9] unless that employee is properly classified as "exempt" from the overtime provisions of the Act. The Plaintiff in this lawsuit claims that during one or more weeks of her employment with Countrywide, she worked in excess of forty hours, but was not paid overtime at the rate of one and one-half times her hourly rate for the hours she worked in excess of forty. Plaintiff alleges that she was not properly paid for her overtime hours due to Countrywide's deliberate misclassification of Plaintiff as exempt from the overtime provisions of the Act. Plaintiff is suing to recover unpaid overtime compensation for the period from June 20, 1998, to the present.

3. COMPOSITION OF THE CLASS

The named Plaintiff seeks to sue on behalf of herself and also on behalf of other employees with whom she is similarly situated. Those that Plaintiff alleges are similarly situated are those current and former Account Executives, Home Loan Consultants, Loan Officers, and Loan Originators of Countrywide at any time from June 20, 1998, to the present, who did not enter into agreements requiring the arbitration of overtime compensation claims. If you entered into such an arbitration agreement, you cannot consent [*10] to join this suit, but may instead pursue your overtime compensation claim in arbitration, by following the procedures outlined in your arbitration agreement.

This Notification is only for the purpose of determining the identity of those persons who wish to be involved in this case and has no other purpose. Your right to participate in this suit may depend upon a later decision by the United States District Court that you and the representative Plaintiff are actually "similarly situated."

4. YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the definition above, that is, you were employed as an Account Executive, Home Loan Consultant, Loan Officer, or Loan Originator anytime since June 20, 1998, did not sign an arbitration agreement with Countrywide, and worked overtime hours for which you were not compensated, you may have a right to participate in this lawsuit. **IT DOES NOT MATTER THAT:**

**YOU WERE PAID ON A SALARY BASIS**

**YOU WERE TOLD BY COUNTRYWIDE THAT YOU WERE NOT ELIGIBLE TO RECEIVE OVERTIME PAY**

**YOU WERE PAID FOR OVERTIME HOURS WORKED AT A RATE OF LESS THAN ONE AND ONE-HALF**

2002 U.S. Dist. LEXIS 9099, *10; 147 Lab. Cas. (CCH) P34,644

Page 4

**TIMES YOUR HOURLY RATE**

**YOU KEPT RECORDS OF YOUR HOURS WORKED**

5. [*11] HOW TO PARTICIPATE IN THIS LAWSUIT

Enclosed you will find a form entitled "Consent to Become a Party Plaintiff" ("Consent Form"). If you choose to join this lawsuit, and thus participate in any recovery that may result from this lawsuit, **it is extremely important that you read, sign and return the Consent Form.** An addressed and postage paid envelope is enclosed for your convenience. Should the enclosed envelope be lost or misplaced, the Consent Form should be sent to:

Overtime Lawsuit Against Countrywide

Boies, Schiller & Flexner, LLP

2435 Hollywood Boulevard

Hollywood, Florida 33020-6629

The signed Consent Form must be postmarked by August 23, 2002. **If your signed Consent Form is not postmarked by August 23, 2002, you will not participate in any recovery obtained against Countrywide in this lawsuit.** If you have any questions about filling out or sending the Consents, please contact Plaintiff's counsel listed on page one of this notice.

6. NO RETALIATION PERMITTED

It is a violation of Federal law for Countrywide to discharge, or in any manner discriminate or retaliate against you for taking part in this case. If you believe that you have been penalized, [*12] discriminated against or disciplined in any way as a result of your receiving this notification, considering whether to join this lawsuit or actually joining this lawsuit, you should contact Plaintiff's counsel immediately.

7. EFFECT OF JOINING THIS SUIT

If you choose to join in this lawsuit, you will be bound by the judgment, whether it is favorable or unfavorable. You will also be bound by, and will share in, any settlement that may be reached on behalf of the class.

By joining this lawsuit, you designate the representative Plaintiff as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.

The representative Plaintiff in this matter has entered into a contingency fee agreement with Plaintiff's counsel, which means that if there is no recovery, there will be no attorneys fees or costs chargeable to you. If there is a recovery, Plaintiff's counsel [*13] will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. You may request a copy of the contingency fee agreement executed by the Plaintiff in this matter from Plaintiff's counsel at the address, telephone number, facsimile number, or e-mail that appears on page one of this notice.

8. NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. You will not be entitled to share any amounts recovered by the class. You will be free to file your own lawsuit, subject to any defenses that might be asserted. The pendency of this suit will not stop the running of the statute of the limitations as to any claims you might have until you opt-in to it.

9. FURTHER INFORMATION

Further information about this Notification or the lawsuit may be obtained from Plaintiff's counsel at the address, telephone number, facsimile number or e-mail identified on page one of this notice.

THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT [*14] OF TEXAS, BARBARA M. G. LYNN, UNITED STATES DISTRICT COURT JUDGE. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS OF THE PLAINTIFF'S CLAIM OR OF THE DEFENDANTS' DEFENSES.

BARBARA M. G. LYNN

UNITED STATES DISTRICT JUDGE

United States District Court, N.D. Illinois.

**Linda BONTEMPO, on behalf of herself
and all other Plaintiffs similarly
situated known and unknown, Plaintiff,**
v.
**WESTWOOD ONE BROADCASTING
SERVICES, INC., d/b/a Shadow
Broadcast Services, and
Metro Networks Communications Limited
Partnership, d/b/a Metro Networks and
Shadow Broadcast Services, Defendants.**

**No. 01 C 8969.**

May 3, 2002.

NOTICE OF LAWSUIT UNDER THE FAIR
LABOR STANDARDS ACT

JAMES F. HOLDERMAN, J.

**\*1** On March 28, 2002, plaintiff Linda
Bontempo, on behalf of herself and all other
plaintiffs similarly situated known as
unknown, filed an amended complaint against
defendants Westwood One Broadcasting
Services, Inc., d/b/a Shadow Broadcast
Services and Metro Networks
Communications Limited Partnership, d/b/a
Metro Networks and Shadow Broadcast
Services. Before the court is plaintiff's motion
to begin "opt-in" notice to members of the
plaintiff class in this action pursuant to §
216(b) of the FLSA. For the following reasons,
plaintiff's motion is granted.

The requirements for a class or collective
action under the FLSA are governed by 29
U.S.C. § 216(b). Under § 216(b), class actions
under the FLSA can only be maintained when
and if potential claimants opt in. *See* 29 U.S.C.
§ 216(b); *Vazquez v. Tri-State Management Co.,
Inc.*, 2002 WL 58718 at \*2 (N.D.Ill. January
14, 2002); *Allen v. Marshall Field & Co.*, 93
F.R.D. 438, 441 (N.D.Ill.1982). In contrast,
class actions under Rule 23 bind all members
of the class unless they opt out and Rule 23's
class certification requirements do not apply
to FLSA class actions. *King v. General Elec. Co.*,

960 F.2d 617, 621 (7th Cir.1992). Rather under
the FLSA, the representative need only show
that the plaintiffs are similarly situated. 29
U.S.C. § 216(b). The FLSA and regulations,
however, do not define similarly situated. One
court defined similarly situated as
"perform[ing] the same type of duties as" the
named plaintiff. *Pfahler v. Consultants for
Architects, Inc.*, 2000 WL 198888 at \* 2
(N.D.Ill. Feb.8, 2000). Other courts have held
that a named plaintiff can show that the
potential claimants are similarly situated "by
making a modest factual showing sufficient to
demonstrate that they and potential plaintiffs
together were victims of a common policy or
plan that violated the law." *Vazquez v. Tri-State
Management Co., Inc.*, 2002 WL 58718 at \*2
(N.D.Ill. January 14, 2002); *Realite v. Ark Rests,
Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y.1998)
(citations omitted). District courts have the
discretionary power to authorize notice of the
action to potential plaintiffs. *Woods v. New York
Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir.1982).

Defendants argue that plaintiff has failed to
make a modest factual showing that an FLSA
violation occurred and that similarly situated
plaintiffs were victims of a common policy or
plan that violated the law. Under the FLSA,
employees who are "outside sales employees"
are exempted from the FLSA overtime
provisions. The regulations interpreting the
FLSA define "outside salesman" any employee
"who is employed for the purpose of and who
is customarily and regularly engaged away
from his employer's place or places of
business" and who does not devote more than
20% of time to activities other than outside
sales. 29 C.F.R. § 541.5(a). Plaintiff alleges
that she was employed by defendants as an
account executive and her job responsibilities
as an account executive were essentially those
of an inside sales representative. Her principal
duty was to sell radio advertisement air time
to commercial customers. Plaintiff states in
her declaration that the majority of her work
time was spent making such sales and
generating sales activities from her desk in
defendants' Chicago office. Defendants
contend that plaintiff has not established she

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

was an inside sales person because plaintiff admitted she made sales calls outside the office and, according to plaintiff's supervisor, on-site meetings and presentations at a prospective customer's place of business are a key job requirement for account executives. Defendant also presented three of plaintiff's weekly sales reports indicating that plaintiff made certain sales calls outside of defendants' office during that time period. While making sales visits and calls outside the office may be an important job duty of an account executive, plaintiff need only make a modest factual showing that she was an inside sales representative for the purposes of the opt-in provision of the FLSA and this court finds that plaintiff in this case has satisfied this burden.

It is undisputed that defendants employ others with the job title "account executive" in its various office in the United States including its Chicago office where plaintiff worked. It is further undisputed that it was not defendants' policy or practice to pay account executives overtime wages for the hours they work in excess of forty in individual work weeks; instead, defendants paid account executives on a draw against commission basis. Defendants allege that despite the identical job titles, plaintiff is not similarly situated to other account executives because other account executives did not share plaintiff's business practice of conducting sales predominantly as an inside sales representative. The "similarly situated" standard under § 216(b) is less stringent than the requirements under Federal Rule of Civil Procedure 23(b)(3). *Garza v. Chicago Transit Authority,* 2001 WL 503036 at * 2 (N.D.Ill May 8, 2001); *see also King v. General Elec. Co.,* 960 F.2d 617, 619 (7th Cir.1992) (opt-in class action procedure preempts class-action procedure under Federal Rule of Civil Procedure 23(a)). Again, plaintiff need only make a modest factual showing sufficient to demonstrate that plaintiff and potential plaintiffs together were victims of a common policy or plan that allegedly violated the FLSA. This court finds that plaintiff has satisfied the lower threshold burden in this case to proceed with opt-in notice to potential class members.

*2 Accordingly, plaintiff's motion to begin opt-in notice is granted. The proper class of plaintiffs is all employees who are or have been employed by defendants as an account executive within the prior three years from the date the employee files his or her Notice Of Consent To Become A Party Plaintiff form, whose job duties included selling radio air time to defendants' customers and who may have worked more than 40 hours in anyone or more individual work weeks. Defendants are ordered to produce to plaintiff the names and home addresses of all potential class members by May 31, 2002. Defendants are ordered to refrain from any and all forms of communication with current and prospective class members concerning the merits and issues of their FLSA claims. Counsel are ordered to review the proposed Notice of Lawsuit and Notice of Consent form attached to this minute order and file any objections by May 14, 2002. This case is set for report on status and approval of Notice of Lawsuit and Notice of Consent form at 9:00 a.m. on May 16, 2002. Finally, this court urges the parties to discuss settlement.

## NOTICE OF LAWSUIT UNDER THE FAIR LABOR STANDARDS ACT

TO: Present and Former Employees of
1. Shadow Broadcast Services; and
2. Metro Networks

Who Performed the Job of "Account Executive" Within the Past Three (3) Years.

RE: Fair Labor Standards Act Lawsuit Filed Against (1) Westwood One Broadcasting Services, Inc. d/b/a Shadow Broadcast Services (2) Metro Networks Communications Limited Partnership, d/b/a Metro Networks and Shadow Broadcast Services.

### 1. INTRODUCTION

*3 The purpose of this Notice is to inform you of the existence of a collective action lawsuit in which you potentially are "similarly situated" to the named Plaintiff, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



participating in this suit if you decide that it is appropriate and should you choose to do so.

## 2. DESCRIPTION OF THE LAWSUIT

Plaintiff Linda Bontempo ("Plaintiff") has brought this lawsuit against Westwood One Broadcasting Services, Inc. d/b/a Shadow Broadcast Services and Metro Networks Communications Limited Partnership, d/b/a Metro Networks and Shadow Broadcast Services (collectively "Defendants") on behalf of herself and all other past and present employees of Defendants who have not been paid overtime wages for hours worked in excess of forth (40) hours a week.

Plaintiff claims that she is entitled to recover unpaid overtime pay for the three (3) years before this suit was brought on November 20, 2001 because she claims that the actions of Defendants were willful. Plaintiff also seeks an additional equal amount as liquidated damages and/or prejudgment interest, attorneys' fees and costs. This lawsuit is currently in the early pretrial stage. Defendants have denied Plaintiff's allegations.

## 3. WHO MAY JOIN THE LAWSUIT?

The named Plaintiff seeks to sue on behalf of herself and also on behalf of other employees with whom she is similarly situated. Specifically, Plaintiff seeks to sue on behalf of any and all employees who are or have been, at any time within the past three (3) years from the date the employee returns the attached Notice Of Consent To Become A Party Plaintiff form, employed as an "Account Executive," who may have worked more than 40 hours in any one or more individual work weeks, and whose job duties included selling radio air time to Defendants' customers.

If you are a current or former employee of Defendants as described above, your right to participate in the lawsuit and how you join the lawsuit is described below.

## 4. YOUR RIGHT TO PARTICIPATE IN THIS SUIT

If you fit the above definition you may join this suit (that is, you may "opt in" to the lawsuit) by filling out, signing and mailing and delivering the attached Notice Of Consent To Become A Party Plaintiff form to Plaintiff's counsel at the following address:

SHADOW BROADCAST SERVICES AND
METRO NETWORKS CLASS ACTION
LITIGATION
ATTN: Douglas M. Werman
The Law Office of Douglas M. Werman
77 W. Washington, Suite 1910
Chicago, IL 60602

postmarked or delivered no later than July 15, 2002. If you fail to return the Consent form to Plaintiff's counsel by this time, you may not be able to participate in this lawsuit. That means you bear the risk of any non-delivery or delay in delivery of the Consent form.

If you file a Consent form, your continued right to participate in this suit may depend upon a later decision by the District Court that you and other Plaintiffs are actually "similarly situated" in accordance with federal law.

## 5. EFFECT OF JOINING THIS SUIT

*4 If you choose to join in the suit, you will be bound by the Judgment, whether it is favorable or unfavorable. While this suit is proceeding, you may be required to respond to written questions, sit for depositions, testify in court, or any combination of those things.

The attorneys for the class Plaintiff may be entitled to receive the payment of attorneys' fees and costs from Defendants in this lawsuit should there be a recovery or judgment in Plaintiff's favor. If there is no recovery or judgment in Plaintiff's favor, you will not be responsible for any attorneys' fee. If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of al members of the class. By joining this lawsuit, you designate the class representatives as your agents to make decisions on your behalf

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



concerning the litigation and the method and manner of conducting this litigation. These decisions and agreements made and entered into by the representative Plaintiff will be binding on you if you join this lawsuit.

## 6. NO LEGAL EFFECT IN NOT JOINING THIS SUIT

If you choose not to join this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. If you choose not to join in this lawsuit, you are free to file your own lawsuit.

## 7. NO RETALIATION AGAINST YOU IS PERMITTED

Federal law prohibits Defendants from discharging you from employment or taking any other adverse employment action against you because you have exercised your legal right to join this lawsuit or because you have otherwise exercised your rights under the Fair Labor Standards Act.

## 8. YOUR LEGAL REPRESENTATION IF YOU JOIN

If you choose to join this suit and you return the Notice Of Consent To Become A Party Plaintiff form by July 15, 2002, your interests will be represented by the named Plaintiff through her attorneys as counsel for the class. Counsel for the class is:

Douglas M. Werman
The Law Office of Douglas M. Werman
77 W. Washington, Suite 1910
Chicago, IL 60602
312-419-1008

Further information about this Notice or the deadline for filing a Consent form or other questions about this lawsuit may be obtained by writing or telephoning Plaintiff's counsel at the number and address stated above.

THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS. THE FEDERAL DISTRICT COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFF'S CLAIMS OR OF DEFENDANTS' DEFENSES. OTHER THAN TO REVIEW THE COURT FILE OR THIS CASE, DO NO CONTACT THE COURT OR THE CLERK OF THE COURT DIRECTLY.

NOTICE OF CONSENT TO BECOME A
PARTY PLAINTIFF IN A COLLECTIVE
ACTION UNDER THE
FAIR LABOR STANDARDS ACT

By my signature below I represent to the Court that I meet the definition contained in paragraph thee (3) of the "Notice Of Lawsuit" describing "Who May Join the Lawsuit," and I hereby authorize the filing and prosecution of this Fair Labor Standards Act action in my name and on my behalf by the above representative Plaintiffs and designate those class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, and all other matters pertaining to this lawsuit.

SIGNATURE

_____(Print Name)_____

**\*5** (Street Address)

_____

(City, State, Zip)

_____

(Telephone Number)

_____

(Social          Security          Number)

_____

Douglas M. Werman (Counsel for Plaintiffs)

The Law Office of Douglas M. Werman

77 W. Washington, Suite 1910

Chicago, IL 60602

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works





(312-419-1008)

2002 WL 1925911 (N.D.Ill.), 146 Lab.Cas. P
34,550

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



United States District Court,
M.D. Tennessee,
Nashville Division.

**Bonnie BELCHER, Barbara Bennett,
Tammy Coward, Darrell Grant, and Sue
Judd, on
behalf of themselves and all others
similarly situated,
v.
SHONEY'S, INC.**

No. 3:96-0001.

May 6, 1996.

Five employees brought suit against employer under Fair Labor Standards Act (FLSA). Employees filed motion for expedited court-supervised notice to prospective class members, and for order compelling defendant to disclose identities of similarly situated employees. The District Court, Campbell, J., held that: (1) employees made sufficient showing that individuals to whom they sought to send notice of lawsuit were similarly situated to them to warrant issuance of court-supervised notice; (2) such notice would be limited to employees and former employees of one particular type of concept restaurant run by employer; (3) notice would be sent only to relevant employees who were employed in three-year period prior to date complaint was filed; and (4)employer was required to disclose relevant information regarding potential class members.

So ordered.

## West Headnotes

**[1] Labor Relations ☞ 1492.1**
232Ak1492.1 Most Cited Cases

Collective action provision of FLSA authorizes trial court to issue court- supervised notice to potential class members. Fair Labor Standards Act of 1938, § 16(b), as amended, 29 U.S.C.A. § 216(b).

**[2] Labor Relations ☞ 1492.1**
232Ak1492.1 Most Cited Cases

For purposes of issuing court-supervised notice to potential class members in FLSA suit, district court would not determine whether showing of similarly situated status could be based solely upon allegations in complaint of class-wide illegal practices, or whether plaintiff had to demonstrate some factual support for allegations before issuance of notice, since plaintiffs made sufficient showing under either standard that individuals to whom they sought to send notice of lawsuit were "similarly situated" to them to warrant issuance of notice, although this did not constitute finding that all members of potential class who would be sent notices were, in fact, similarly situated to plaintiffs. Fair Labor Standards Act of 1938, § 16(b), as amended, 29 U.S.C.A. § 216(b).

**[3] Labor Relations ☞ 1492.1**
232Ak1492.1 Most Cited Cases

FLSA plaintiffs made sufficient showing that individuals to whom they sought to send notice of lawsuit were "similarly situated" to them to warrant issuance of court-supervised notice to potential class members, based on evidence that employer-restaurant failed to properly compensate those employees as required by FLSA; plaintiffs submitted 24 affidavits indicating that hourly employees had been worked "off the clock," that employees paid under fluctuating pay plan had not been paid their guaranteed weekly salary for workweeks in which employee did not work full schedule of hours, and that these practices were not limited to single store or region, and there was evidence that over 400 individuals had already filed consents to join action, and that those individuals represented 22 states and over 200 cities. Fair Labor Standards Act of 1938, §§ 6, 7, 7(g)(3), 16(b), as amended, 29 U.S.C.A. §§ 206, 207, 207(g)(3), 216(b); 29 C.F.R. § 778.114.

**[4] Labor Relations ☞ 1492.1**
232Ak1492.1 Most Cited Cases

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works




Court-supervised notice to potential class members in FLSA suit would be limited to employees and former employees of one particular type of concept restaurant run by employer, and notice would not be sent to employees who worked only at defendant's other concept restaurants run under different names, where no named plaintiff was employed at other concept restaurant, and, of supporting affidavits filed by plaintiffs, only one affiant had worked at any of other concept restaurants, at which she had been employed over 12 years previously.   Fair Labor Standards Act of 1938, § 16(b), as amended, 29 U.S.C.A. § 216(b).

**[5] Labor Relations** ⟨⇒ **1492.1**
232Ak1492.1 Most Cited Cases

Court-supervised notice to potential class members in FLSA suit would be sent only to relevant employees who were employed within three year period prior to date complaint was filed, despite plaintiffs' contention that statute of limitations was tolled;  tolling was open issue to be resolved pending further proof. Fair Labor Standards Act of 1938, § 16(b), as amended, 29 U.S.C.A. § 216(b);  Portal-to-Portal Act of 1947, § 6, 29 U.S.C.A. § 255.

**[6] Labor Relations** ⟨⇒ **1492.1**
232Ak1492.1 Most Cited Cases

In order to issue court-supervised notice to potential class members in FLSA suit, trial court would order defendant employer to disclose names and last known mailing addresses of all individuals to be sent "Notice" and "Consent to Become Party Plaintiff," including all present and former employees of employer, who were paid on hourly basis or under fluctuating pay plan and who were employed within three (3) years prior to date complaint was filed, and, if technically feasible, employer was to produce this information to plaintiffs in computer format compatible with computer hardware and software of plaintiffs' counsel.   Fair Labor Standards Act of 1938, § 16(b), as amended, 29 U.S.C.A. § 216(b).

**\*250** Morris Reid Estes, Jr., Randolph S. Jackson, Jr., Nashville, TN, for plaintiffs.

Keith D. Frazier, Nashville, TN, Thomas Oswald Helton, Chattanooga, TN, for defendant.

*MEMORANDUM*

CAMPBELL, District Judge.

Pending before the Court is Plaintiffs' Motion for Expedited Court- Supervised Notice to Prospective Class Members and an Order Compelling Defendant to Expeditiously Disclose the Identities of Similarly Situated Employees (Docket No. 44) and Defendant's Response (Docket No. 87).

On May 3, 1996, the Court heard oral argument on the Motion.   The Court provisionally **\*251** GRANTS the Plaintiffs' Motion on the terms and conditions contained herein.

Five individual Plaintiffs, who have worked on an hourly basis and/or under a fluctuating pay plan at the Defendant's restaurants, have brought this action under the Fair Labor Standards Act, 29 U.S.C. Sections 201, *et seq.* (hereinafter "FLSA").   The Plaintiffs claim that the Defendant has failed to properly compensate them for all the hours they have worked and, therefore, owes them unpaid wages and overtime compensation and other damages.   The Plaintiffs have brought this suit for themselves and in a representative capacity as a collective action on behalf of others "similarly situated" under 29 U.S.C. Section 216(b).

This Court has subject matter jurisdiction under 29 U.S.C. Section 216(b) and 28 U.S.C. Section 1331.

The FLSA specifically provides for collective actions through an "opt-in" procedure:
... An action to recover the liability [for violations of Sections 206 or 207] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.   No employee shall be a party

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought ...

29 U.S.C. § 216(b).

Plaintiffs' Motions raise at least four questions: (1) whether a Section 216(b) notice should be sent with court-supervision; (2) who should receive the notice; (3) how far back in time the notice should cover; and (4) what the notice should say?

[1] The Supreme Court has made it clear that the collective action provisions of the FLSA, 29 U.S.C. Section 216(b), authorizes a trial court to issue court-supervised notice to potential class members. In *Hoffmann- La Roche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the Court reasoned that the class action provision of the FLSA conferred upon trial courts the requisite procedural authority to manage the process of joining additional parties. Court-supervised notice, the Court explained, assures that the notification procedure will be accomplished in an efficient, accurate manner. 493 U.S. at 169-73, 110 S.Ct. at 486-87.

[2] Although it is clear that the court may supervise notice to potential class members, the lower courts have not agreed as to the factual showing that must be made by a plaintiff to show who is "similarly situated" at the notice stage. Some courts hold that a plaintiff can demonstrate that potential class members are "similarly situated," for purposes of receiving notice, based solely upon allegations in a complaint of class-wide illegal practices. *See, e.g., Allen v. Marshall Field & Co.,* 93 F.R.D. 438, 442-45 (N.D.Ill.1982). Other courts hold that a plaintiff meets this burden by demonstrating some factual support for the allegations before issuance of notice. *See, e.g., Jackson v. New York Telephone Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995). This Court finds it unnecessary to adopt either of the competing standards because the Plaintiffs have made a sufficient showing under either standard that the individuals to whom they seek to send notice of this lawsuit are "similarly situated" to them to warrant the issuance of Court-supervised notice. The Court is not holding at this time, however, that all members of the potential class who will be sent notices are, in fact, similarly situated to Plaintiffs.

[3] The record before the Court and the statements made during oral argument persuade the Court that the Plaintiffs have made a sufficient showing that Shoney's, Inc. has failed to properly compensate these employees as required by the FLSA to warrant notice being sent to prospective class members.

Sections 206 and 207 of the FLSA generally require that employers pay employees specific hourly rates for up to 40 hours per week and pay overtime compensation of one and one-half times the regular rate for hours worked in excess of forty hours. 29 U.S.C. §§ 206, 207.

Employees paid under a fluctuating pay plan under the FLSA must receive a fixed weekly salary as straight time pay for whatever hours they are called upon to work *252 during a particular workweek. 29 U.S.C. § 207(g)(3) and 29 C.F.R. § 778.114.

Plaintiffs have submitted 24 affidavits, which indicate that hourly employees have been worked "off the clock." The affidavits also indicate that employees who have been paid under a fluctuating pay plan have not been paid their guaranteed weekly salary for workweeks in which the employee did not work a full schedule of hours. This guaranteed weekly salary, according to several affiants, was also reduced for restaurant cash shortages and/or casualty losses.

The affidavits indicate that these practices were not limited to a single store or region. As a group, the affiants have worked at Defendant's restaurants in Tennessee, Alabama, Florida, Georgia, Indiana, Kentucky, Louisiana, Mississippi, North Carolina, and South Carolina. In addition, Plaintiffs represented to the Court during oral argument, and the Defendant did not dispute,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



that over 400 individuals have already filed Consents to join this action, and that those individuals represent 22 states and over 200 cities. (See also Affidavit of Roberta M. Parks, Docket No. 478).

Accordingly, the Court provisionally GRANTS the Plaintiffs' request for expedited court-supervised notice to prospective class members.

[4] At this stage, however, the Court does not approve the sending of Notice to employees who have worked only at Defendant's concept restaurants other than Shoney's, such as Captain D's, Pargo's, and Barbwire. The evidence before the Court indicates that none of the named Plaintiffs were employed at these other concept restaurants. Furthermore, of the 24 affidavits filed by Plaintiffs, only one affiant, Deborah McCarthy, has worked at any of these other concept restaurants. She was employed at a Captain D's restaurant over 12 years ago. Accordingly, the Notice approved by this Order shall be limited to employees and former employees of the Shoney's concept restaurants.

[5] The applicable maximum statute of limitations is three years. 29 U.S.C.A. § 255. Thus, at this time, the Notice shall be sent only to the relevant employees who were employed within the three year period prior to the date the Complaint was filed. Plaintiffs have alleged that the statute of limitations is tolled. This is an open issue to be resolved pending further proof.

The Court heard oral argument regarding the "Notice" and "Consent to Become Party Plaintiff" form to be sent by the Plaintiffs. The Court hereby approves the attached "Notice" and "Consent to Become Party Plaintiff" form. The record before the Court indicates a likelihood that there are similarly situated employees who would benefit from an awareness of the pending suit.

Plaintiffs are authorized to send the "Notice" and "Consent to Become Party Plaintiff" form to present and former employees of Shoney's,

Inc. who were paid on an hourly basis or under a fluctuating pay plan and who were employed at a Shoney's, Inc. concept restaurant within the three (3) years prior to the date the Complaint was filed in this case. All "Consent to Become Party Plaintiff" forms shall be filed with the Court on or before July 24, 1996.

[6] Defendant is hereby ORDERED to disclose to the Plaintiffs the names and last known mailing addresses of all individuals to be sent the "Notice" and "Consent to Become Party Plaintiff" on or before May 20, 1996. That is, all present and former employees of Shoney's, Inc. who were paid on an hourly basis or under a fluctuating pay plan and who were employed at a Shoney's, Inc. concept restaurant within the three (3) years prior to the date the Complaint was filed in this case. If technically feasible, Defendant shall produce this information to the Plaintiffs in a computer format compatible with the computer hardware and software of counsel for Plaintiffs.

It is so ORDERED.

### ATTACHMENT
*NOTICE*

TO: Present and Former Employees of Shoney's, Inc., Who Were Paid On An Hourly Basis Or Under A Fluctuating Pay Plan And Were Employed At A Shoney's Concept Restaurant Within the Past Three (3) Years

RE: Fair Labor Standards Act Lawsuit Filed Against Shoney's, Inc.

**\*253** 1. INTRODUCTION.

The purpose of this Notice is to inform you of the existence of a collective action lawsuit in which you potentially are "similarly situated" to the named Plaintiffs, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit, should you decide that it is appropriate and should you choose to do so.

2. DESCRIPTION OF THE LAWSUIT.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



On January 2, 1996, Bonnie Belcher, Barbara Bennett, Tammy Coward, Darrell Grant, and Sue Judd brought this lawsuit against Defendant Shoney's, Inc. on behalf of themselves and all other past and present employees of Shoney's, Inc. who have been paid on an hourly basis or under a fluctuating pay plan, in the United States District Court for the Middle District of Tennessee, alleging that they are owed unpaid wages and overtime pay under the Fair Labor Standards Act:

(a) This lawsuit alleges that Shoney's, Inc. has violated the Act with regard to hourly workers as follows: (1) employees are worked off the clock; (2) employees are not paid for attendance at required employee meetings; (3) employees are not paid for on-duty waiting time; (4) employees who work different jobs with different pay rates are paid minimum and/or overtime wages at the pay rate applicable to the lowest paying job; (5) servers are paid the server's rate of $2.13 an hour for performing non-server jobs for which no tips are received and which require that minimum wage or greater be paid; and (6) break time is deducted from the paychecks received by hourly and/or nonexempt employees even though such employees do not receive an uninterrupted 30-minute break.

(b) This lawsuit also alleges that Shoney's, Inc. has violated the Act with regard to employees paid under a fluctuating pay plan by failing to pay the guaranteed weekly salary for workweeks in which a full schedule of hours is not worked; by failing to pay such employees on a "salary basis" by, for example, subjecting their wages to deductions for restaurant cash shortages and/or other casualty losses; and by failing to compensate such employees for all hours worked in a given workweek.

Plaintiffs alleged that they are entitled to recover unpaid wages and overtime pay for all the years that Defendant Shoney's, Inc. failed to properly compensate them because the actions of Shoney's, Inc. were willful. Plaintiffs also seek an additional equal amount as liquidated damages and/or prejudgment interest, attorneys' fees and costs. This lawsuit is currently in the early pretrial stage.

Shoney's, Inc. has denied Plaintiffs' allegations that it engages in these practices. Shoney's, Inc. also maintains that any failure to properly compensate employees was without the knowledge and contrary to the instructions of appropriate management officials. Shoney's, Inc. states that it exercised good faith in its application of the Fair Labor Standards Act to its employees.

3. COMPOSITION OF THE CLASS.

The five named-Plaintiffs seek to sue on behalf of themselves and also on behalf of other employees with whom they are similarly situated. Specifically, the Plaintiffs seek to sue on behalf of any and all employees who are or have been, at any time within the past three (3) years:

(a) employed at a Shoney's, Inc. concept restaurant that was owned and operated by Shoney's, Inc., on an hourly basis or under a fluctuating pay plan; and

(b)(i) regarding employees paid on an hourly basis, did not receive wages or overtime as a result of the practices described in Paragraph 2(a); and/or

(ii) regarding workers paid under a fluctuating pay plan, did not receive wages or overtime as a result of the practices described in Paragraph 2(b); or were "subject to" a policy which allegedly violated the "salary basis" requirement as described in Paragraph 2(b). The term "subject to" means that an employee could have been the object of an illegal practice, even if he or she was not actually the object of an illegal practice. *254 For example, this would include an employee whose salary could have been illegally reduced but whose salary was not actually reduced.

4. YOUR RIGHT TO PARTICIPATE IN THIS SUIT.

If you fit the definition above, you may join this suit (that is, you may "opt in") by mailing

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



the "Consent to Become Party Plaintiff" form to Plaintiffs' counsel at the following address: M. Reid Estes, Jr., Esquire Stewart, Estes & Donnell SunTrust Center 424 Church Street, 14th Floor Nashville, Tennessee 37219 1-800-644-6610

in sufficient time to have Plaintiffs' counsel file it with the federal court on or before **July 24, 1996.** If you fail to return the "Consent to Become Party Plaintiff" form to Plaintiffs' counsel in time for it to be filed with the federal court on or before the above deadline date, you may not be able to participate in this lawsuit.

If you file a "Consent to Become Party Plaintiff" form, your continued right to participate in this suit may depend upon a later decision by the District Court that you and the Plaintiffs are actually "similarly situated" in accordance with federal law.

5. EFFECT OF JOINING THIS SUIT.

If you choose to join in the suit, you will be bound by the Judgment, whether it is favorable or unfavorable. While this suit is proceeding, you may be required to respond to written questions, sit for depositions and/or testify in court.

The attorneys for the class plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee. If there is a recovery, the attorneys for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. By joining this lawsuit, you designate the class representatives as your agents to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the representative Plaintiffs will be binding on you if you joint this lawsuit.

6. NO LEGAL EFFECT IN NOT JOINING

THIS SUIT.

If you choose not to join this suit, you will not be affected by any judgment or settlement rendered in this case, whether favorable or unfavorable to the class. If you choose not to join in this lawsuit, you are free to file your own lawsuit.

7. NO RETALIATION PERMITTED:

Federal law prohibits Shoney's, Inc. from discharging or in any other manner discriminating against you because you have exercised your rights under the Fair Labor Standards Act.

8. YOUR LEGAL REPRESENTATION IF YOU JOIN:

If you choose to join this suit, your interests will be represented by the named Plaintiffs through their attorneys, as counsel for the class. Counsel for the class are: M. Reid Estes, Jr., Esq. R. Scott Jackson, Jr., Esq. Stewart, Estes & Donnell SunTrust Center 424 Church Street, 14th Floor Nashville, Tennessee 37219 1-800-644-6610

9. COUNSEL FOR SHONEY'S, INC.:

The attorneys for the Defendant Shoney's, Inc. are: T.O. Helton, Esq. Baker, Donelson, Bearman & Caldwell A Professional Corporation 1800 Republic Centre 633 Chestnut Street Chattanooga, Tennessee 37450 (423) 756-2010 Keith D. Frazier Baker, Donelson, Bearman & Caldwell *255 A Professional Corporation 511 Union Street, Suite 1700 Nashville City Center Nashville, Tennessee 37219 (615) 726-5600

10. FURTHER INFORMATION.

Further information about this Notice, the deadline for filing a "Consent to Become Party Plaintiff," or questions concerning this lawsuit may be obtained by writing or telephoning Plaintiffs' counsel at the number and address stated above.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, HONORABLE TODD J. CAMPBELL, FEDERAL DISTRICT COURT JUDGE. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR OF DEFENDANT'S DEFENSES.

*CONSENT TO BECOME PARTY PLAINTIFF*

By my signature below, I represent to the Court that I meet the definition contained in paragraph three (3) of the "Notice" describing "Composition of the Class," and I hereby authorize the filing and prosecution of the above-styled Fair Labor Standards Act action in my name and on my behalf by the above representative Plaintiffs and designate the class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

SIGNATURE (Sign Your Name)

(Print Name)

(Street Address)

(City, State, Zip)

(Telephone Number)

(Social Security Number)

PLEASE RETURN THIS FORM IN TIME FOR FILING WITH THE COURT BY JULY 24, 1996, TO:

M. Reid Estes, Jr., Esq.
Stewart, Estes & Donnell
SunTrust Center
424 Church Street, 14th Floor
Nashville, TN 37219
1-800-644-6610
Counsel for Plaintiffs

927 F.Supp. 249, 132 Lab.Cas. P 33,425

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



United States District Court,
D. New Jersey.

**Richard SPERLING, et al., individually
and on behalf of others similarly
situated, Plaintiffs,
v.
HOFFMAN-LA ROCHE, INC., Defendant.**

**Civ. A. No. 85-2138.**

Jan. 5, 1988.

Former employees brought putative class action against former employer alleging violations of the federal Age Discrimination in Employment Act, state antidiscrimination statute, and state common law of contracts. On objections to reports and recommendations of magistrate with respect to various motions, the District Court, Harold A. Ackerman, J., held that: (1) it is permissible for court to facilitate notice of age discrimination suit to absent class members in appropriate cases, so long as court avoids communicating to absent class members any encouragement to join in suit or approval of suit on the merits; (2) it was appropriate for court to offer some degree of facilitation to plaintiffs' notice efforts in the instant case, to the extent of specifying content of notice going out from plaintiffs or plaintiffs' counsel; (3) notice to absent class members did not have to await a conclusive finding that they were similarly situated to the named plaintiffs; (4) consents opting-in to suit previously received by plaintiffs were valid; (5) though there was a facially compelling case for equitable tolling of statute of limitations as to absent class members, final decision on issue would be put off until after deadline for filing consents; (6) principles of pendent jurisdiction did not preclude class certification of state discrimination claim; and (7) it was appropriate to exercise pendent jurisdiction over state contract claim.

Motions granted in part and denied in part.

West Headnotes

**[1] United States Magistrates ⟨⇒ 27**
394k27 Most Cited Cases

District judge was required to make de novo review of each matter as to which magistrate's recommendations were objected to, and even if some of those matters were properly considered nondispositive, they were subject to plenary review where they all concerned questions of law only.   28 U.S.C.A. § 636(b)(1)(A-C);  U.S.Dist.Ct.Rules D.N.J., Rule 40, subd. D, pars. 4, 5.

**[2] Federal Civil Procedure ⟨⇒ 2532**
170Ak2532 Most Cited Cases

Any summary judgment motion in age discrimination case which purported to turn on a factual discrimination of the employer's decision making in connection with a reduction in force had to await time when plaintiffs would have received a decent opportunity to conduct their own discovery regarding that decision making.   Fed.Rules Civ.Proc.Rule 56(f), 28 U.S.C.A.

**[3] Federal Civil Procedure ⟨⇒ 184.20**
170Ak184.20 Most Cited Cases

Maintenance of representative claims under the Age Discrimination in Employment Act is governed by section of the Fair Labor Standards Act relating to representative claims, and not by class action rule.   Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b);  Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[4] Federal Civil Procedure ⟨⇒ 184.20**
170Ak184.20 Most Cited Cases

In order for age discrimination plaintiff to maintain suit on behalf of other employees, named plaintiff and other employees must be similarly situated and the other employees must file written consents to join the action.   Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[5] Federal Civil Procedure ⟨⇒ 177.1**

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works





170Ak177.1 Most Cited Cases
(Formerly 170Ak177)

It is permissible for a court to facilitate notice of suit under the Age Discrimination in Employment Act to absent class members in appropriate cases, so long as court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

[6] Federal Civil Procedure ⊜ 177.1
170Ak177.1 Most Cited Cases
(Formerly 170Ak177)

Policies against barratry or champerty do not preclude courts from facilitating notice to potential class plaintiffs in age discrimination suit. ABA Rules of Prof.Conduct, Rules 7.1, 7.2; U.S.Dist.Ct.Rules D.N.J., General Rule 6; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

[7] Federal Civil Procedure ⊜ 177.1
170Ak177.1 Most Cited Cases
(Formerly 170Ak177)

In age discrimination suit, in order to facilitate plaintiffs' efforts to notify potential members of class, defendants would be required to comply with request for discovery of names and addresses of persons subjected to allegedly discriminatory reduction in force. Fed.Rules Civ.Proc.Rules 12(b)(6), 56, 28 U.S.C.A.

[8] Federal Civil Procedure ⊜ 178
170Ak178 Most Cited Cases

In age discrimination suit, notice to potential members of plaintiff class did not have to be sent out by court itself but would appropriately be sent out by plaintiffs or plaintiffs' counsel, with contents specified by the court, and notice should indicate that court authorized the notice without in any way judging the merits of plaintiffs' claims or

defendant's defenses. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

[9] Federal Civil Procedure ⊜ 179
170Ak179 Most Cited Cases

Request of age discrimination plaintiffs that notice to potential class members be posted on "company bulletin-boards" on defendant employer's premises and published in employer's "company newspapers" was too vague to require compliance. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

[10] Federal Civil Procedure ⊜ 177.1
170Ak177.1 Most Cited Cases
(Formerly 170Ak177)

Notice to absent class members in age discrimination action need not await a conclusive finding that they are similarly situated to the named plaintiffs. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

[11] Federal Civil Procedure ⊜ 177.1
170Ak177.1 Most Cited Cases
(Formerly 170Ak177)

Issue of whether potential class members were similarly situated to named plaintiffs in age discrimination suit was sufficiently developed to allow court-facilitated class notice where plaintiffs had made detailed allegations in pleadings, supported with affidavits, describing a single decision, policy, or plan of employer, infected by discriminatory aspect, which led to termination or demotion of every member of the class plaintiffs wish to represent and reallocation of responsibilities among remaining, generally younger, employees. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

[12] Federal Civil Procedure ⊜ 184.20

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



170Ak184.20 Most Cited Cases

Showing that members of class are similarly situated to named plaintiffs establishes no more than right of plaintiffs to maintain a collective age discrimination action, and at trial each individual plaintiff must bear his or her burden of proof as to each element of the claim, and court may modify or reverse decision on the "similarly situated" issue at a later time, as new facts emerge.   Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.;   Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b);   Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[13] Federal Civil Procedure** ⬡ **180**
170Ak180 Most Cited Cases

In determining validity of consents by class members under opt-in procedure in age discrimination suit, court would look to full and effective disclosure of all relevant facts sufficient to enable the consenting parties to make an informed decision.   Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b);   Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[14] Federal Civil Procedure** ⬡ **180**
170Ak180 Most Cited Cases

Consents whereby class members opted-in to age discrimination suit were not invalid on ground that forms failed to indicate that consenting parties believed themselves to be victims of age discrimination, on basis that form and accompanying letter did not explain that plaintiffs might try their case at least in part on a disparate impact theory, or that defendant had denied any charges of age discrimination, or on ground that letter did not disclose that party opting-in might be obliged to participate in discovery.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[15] Federal Civil Procedure** ⬡ **180**
170Ak180 Most Cited Cases

Consents opting-in to age discrimination suit

were not invalid on ground that form and accompanying letter failed to identify plaintiffs' counsel or alert potential opt-ins of right to pursue claims separately with counsel of their own choice, where letter made no mention of legal validity or invalidity of separate actions and made clear that named plaintiffs had or would be selecting counsel at their discretion.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[16] Federal Civil Procedure** ⬡ **180**
170Ak180 Most Cited Cases

Consents opting-in to age discrimination suit were not invalid on ground that accompanying letter did not expressly mention taxing of court costs against parties opting in, where it amply warned potential opt-ins that participation might be costly.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[17] Federal Civil Procedure** ⬡ **180**
170Ak180 Most Cited Cases

Consents of parties opting-in to age discrimination suit were not invalid on ground of plaintiffs' counsel failing to reveal their participation in writing consent form and accompanying letter, or on ground of emotionalism in the letter, where the letter was signed by plaintiffs and not by the lawyers.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[18] Limitation of Actions** ⬡ **126.5**
241k126.5 Most Cited Cases

There was a facially compelling case for equitable tolling of statute of limitations in age discrimination suit with respect to potential class members who had yet to file consents opting-in to suit, where suit was timely filed and defendant long had notice of claims and plaintiffs' efforts to find more class members, but proceedings on plaintiffs' notice motions before the magistrate took 19 months, running three months past the limitations date;  however, final decision on equitable tolling should wait until after deadline for filing consents, in that some new class

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



members might have reasons for entering action at late date which would not support an exercise of equity in their favor. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[19] Federal Civil Procedure** ⬅ **177.1**
170Ak177.1 Most Cited Cases
(Formerly 170Ak177)

**[19] Federal Courts** ⬅ **15**
170Bk15 Most Cited Cases

Principles of pendent jurisdiction did not preclude certification of state discrimination claim under Rule 23 on ground that court would then be compelled to send notice to class of a sort denied under federal age discrimination claim, thereby allegedly manufacturing federal jurisdiction and improperly employing Rule 23 on an opt-in basis, where possible membership in the state class would be limited to people already members of the class under the federal age discrimination claim and notice under Rule 23 would be given only after all timely consents were received on age discrimination claim. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[20] Federal Courts** ⬅ **15**
170Bk15 Most Cited Cases

Federal age discrimination claim and state claim of breach of implied contract of employment shared nucleus of operative facts sufficiently common to establish federal court's pendent jurisdictional power of the contract claim, where the state claim turned on the same facts with respect to discrimination, plus any additional facts necessary to establish the exact contents of the contract. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[21] Federal Courts** ⬅ **15**
170Bk15 Most Cited Cases

Considerations of economy, convenience and fairness militated in favor of retaining pendent jurisdiction over state claim of breach of implied employment contract, together with federal age discrimination claim, where plaintiffs sought to prove that the way in which they were fired or demoted was infected with age discrimination, in violation of both federal statutes and private employment contracts. Age Discrimination in Employment Act of 1967, § 2 et seq., 29 U.S.C.A. § 621 et seq.

**[22] Federal Civil Procedure** ⬅ **1271**
170Ak1271 Most Cited Cases

Magistrate's order staying discovery in age discrimination suit for some two years, except for discovery by defendant on validity of prior consents by class members opting-in to the action, was clearly erroneous.

**\*395** Ben H. Becker, Schwartz, Tobia & Stanziale, Montclair, N.J., Leonard N. Flamm, Hockert & Flamm, New York City, for plaintiffs.

John A. Ridley, Richard S. Zackin, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for defendant.

Opinion

HAROLD A. ACKERMAN, District Judge.

[1] This is a putative class action brought by former employees of defendant pharmaceutical company, on behalf of themselves and others similarly situated, alleging violations of the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 *et seq.* (the "LAD"), and the New Jersey common law of contracts. Before me now are a number of motions on which U.S. Magistrate G. Donald Haneke has filed reports and recommendations ("R & R's"). Plaintiffs have objected to most of the Magistrate's recommendations, and defendant has objected to the remainder. Therefore, I must now make a *de novo* review of each of these matters. *See* 28 U.S.C. §§ 636(b)(1)(B) and (b)(1)(C); Local

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



Rule 40.D.5; *see also Henderson v. Carlson,* 812 F.2d 874, 878-79 (3d Cir.1987). I note in the alternative that even if some of these matters are properly considered nondispositive under 28 U.S.C. § 636(b)(1)(A), they all concern questions of law only, and therefore are subject to plenary review by me. *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 40.D.4.

Also before me is a request by plaintiffs that discovery be allowed to go forward. The Magistrate stayed all discovery by plaintiffs when he received the referral of motions for report and recommendation. Defendant has been permitted to conduct discovery on a single issue only. Whether I view plaintiffs' request as a timely appeal from the Magistrate's most recent discovery decision, which was filed on May 6, 1987 and ordered that the discovery stay continue until I issued my decision on the R & R matters, or as a new request made directly to me, to be decided in the context of my other decisions today, I find that plaintiffs' request is properly before me.

## I. BACKGROUND

Before specifying exactly which issues require my consideration, I shall briefly recount the factual background to and procedural history of this case. On February 4, 1985, defendant allegedly fired or demoted about 1,200 employees as part of a systematic reduction in force, or "RIF," executed in furtherance of a company program which defendant called "Operation Turnabout." In the following months, Richard Sperling, Frederick Hemsley, and Joseph Zelouskos, the 3 named plaintiffs in this case, took the necessary procedural steps *396 to file an ADEA action in this court. Plaintiffs' original complaint, filed on May 7, 1985, charged as its first count that defendant had violated the rights under the ADEA of a defined class of employees. Count 2 charged defendant with ADEA violations against the named plaintiffs only. Count 3 charged defendant with violating the rights under New Jersey's LAD of the named plaintiffs and the defined class. On July 3, 1985, plaintiffs filed an amended complaint which added a 4th count, asserting violations of New Jersey contract law by defendant

against the named plaintiffs and the defined class.

At the time the case was filed, and up until late 1986, the case was assigned to then Chief Judge Clarkson Fisher. During that time, each side in the case made a number of motions. These motions concerned the following issues: the propriety of notice from the court to potential class members, the dismissal of certain claims, class certification, the legal propriety of earlier communications by plaintiffs and their counsel with putative class members, and discovery. Judge Fisher referred the motions to Magistrate Haneke for decision, or in the case of dispositive motions, for report and recommendation. The Magistrate suspended all discovery by plaintiffs pending decision on the motions, but did allow defendant to conduct discovery on a single limited issue.

The Magistrate filed his initial Report and Recommendation on February 6, 1987. As the newly assigned judge on the case, that R & R came to me. I remanded the matter to the Magistrate for fuller discussion. On May 5, 1987, the Magistrate issued a supplemental Report and Recommendation, more fully explaining the reasoning behind his recommendations regarding the parties' outstanding motions. On May 6, 1987, the Magistrate filed an additional Report and Recommendation, which addressed a motion by plaintiffs to equitably toll the statute of limitations for putative class members who had not yet joined Count 1. The tolling motion had been filed soon after the case was reassigned to me, and I had referred it to the Magistrate, who at that time had yet to produce his supplemental R & R. On that same day, May 6, 1987, the Magistrate also issued a decision reasserting his stay of discovery in the matter, until the issues addressed in his R & R's were finally resolved by an order from me.

Between them, the two sides objected to each of the Magistrate's recommendations, thus bringing before me for *de novo* review all the issues considered by the Magistrate except the issue of the stay of discovery, which as I have

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



previously explained I find to be before me as either a timely appeal or as a new request made directly to me.

## II. SUMMARY OF THE ISSUES

The issues before me may be summarized as follows. First, there are the issues related to Count One only. Count One states a claim under the ADEA on behalf of a defined class of allegedly injured employees. Plaintiffs moved for discovery from defendant of the names and addresses of all the employees fired or demoted in the February 4, 1985 RIF who fit within the definition of the class plaintiffs wish to represent on Count One, for the court to send out notice of the pendency of this action to whichever putative class members have not yet filed with the court a written consent to join the action, and for defendant to publish notice of the action in the company newspaper and post notice on company billboards. In requesting this relief, plaintiffs argued that they had already satisfied the special statutory requirements imposed under the ADEA for maintaining a class-wide ADEA claim. Defendant opposed plaintiffs' motions, and cross-moved to invalidate the written consents to join the action which had already been filed with the court and to have "corrective notice" sent out to those who had filed consents. Plaintiffs eventually filed an additional motion to equitably toll the statute of limitations on Count One for those putative class members who had not yet joined the action. In reviewing all these motions, the Magistrate concluded that there was no basis in the record at that point for deciding that Count One could be maintained as *397 an ADEA class claim. He recommended that the consents already filed be invalidated, that employees who had already consented be sent, under court supervision, "corrective notice" regarding the action, that the court send notice to no other employee, that the requests for posting and publication be denied, and that the equitable tolling motion be denied at this time. The Magistrate also kept his discovery stay in place, rejecting plaintiffs' request for discovery regarding the names and addresses of all the RIF'ed employees who fit the definition of the class plaintiffs wished to

represent. Before me, plaintiffs renew all their requests, and defendant renews its requests.

Second, there are the issues related to Counts One, Two and perhaps Three. Count One states the ADEA class claim, while Count Two states the individual ADEA claims of the named plaintiffs. Count Three states a pendent state LAD claim on behalf of the named plaintiffs and the same class defined by plaintiff under Count One. Defendant moved to dismiss all age discrimination claims sounding in a "disparate impact" theory. I note that although defendant premises its disparate impact arguments on federal-law citations only, defendant never expressly limits those arguments to the federal age claims only. Conceivably, defendant intends to attack Count Three allegations sounding in a disparate impact theory as well as allegations in Count One and Two. The Magistrate recommended denying the motion as premature. Defendant renews its request before me.

Third, there are the issues related to Counts Three and Four. Count Three states a pendent state LAD claim on behalf of the named plaintiffs and the class defined by plaintiffs under Count One. Count Four states a pendent state contract claim on behalf of the named plaintiffs and the class defined by plaintiffs under Count One. Plaintiffs moved to certify the classes under Counts Three and Four in accordance with Fed.R.Civ.P. 23 and to have the court notify class members of the claims and of their right to exclude themselves by notice to the court. Defendant moved to dismiss Count Four under the discretionary principles of pendent jurisdiction, and additionally opposed class certification on both Counts. The Magistrate recommended that Count Four be dismissed under the discretionary principles of pendent jurisdiction, or alternatively, if jurisdiction was not declined, that Rule 23 certification be denied on that count. He also recommended that Rule 23 certification be denied as to Count Three. Before me, both sides renew their respective requests.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



Finally, there is plaintiffs' request that discovery go forward.

I have summarized the issues before me on a claim-by-claim basis. I shall now consider them in a somewhat different organization, so as to simplify the tangled interconnections which have grown up among them. This tangle must be attributed in some part to the complexity of the issues themselves, but in larger part it derives from the extraordinarily overlong and convoluted briefing in which the parties have wrongly been allowed to indulge.

## III. DISPARATE IMPACT

Defendant moves under Fed.R.Civ.P. 12(b)(6), and alternatively under Fed.R.Civ.P. 56, to dismiss any age discrimination claims made by plaintiffs which are premised on a theory of "disparate impact." *See, e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (racial discrimination under Title VII); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (racial discrimination under Title VIII); *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) (sex discrimination under Title VII). *See also Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981) (applying disparate impact theory to ADEA age discrimination claims); *Lusardi v. Xerox Corp.,* 118 F.Supp. 351, 362, (D.N.J.1987) (stating that disparate impact theory applies under *398 the ADEA. But *see Markham v. Geller,* 451 U.S. 945, 947, 101 S.Ct. 2028, 2029, 68 L.Ed.2d 332 (1981) (Rehnquist, J., dissenting from denial of certiorari) (arguing that disparate theory is inapplicable to ADEA claims).

Defendant purports to save for another day the argument that, no matter what the set of facts, disparate impact theory cannot apply in age discrimination actions. *See, e.g.,* Defendant's Brief on Disparate Impact prepared for March 24, 1986 return date, at page 4 note 2. At this point, defendant argues merely that disparate impact cannot be invoked in the case at hand. The thrust of defendant's argument is that disparate impact analysis is applicable only in the case of a facially age-neutral, "single, discrete condition of employment, mechanically applied, which has a statistically significant adverse impact" on a protected group, defendant's brief, cited supra, at page 3, and that the Operation Turnabout RIF was no such condition.

It is clear to me that defendant's discriminatory impact motion must be denied at this time. First, defendant's motion cannot be granted under 12(b)(6). At this point in the case, defendant has reserved any argument that disparate impact theory is generally inapplicable in age discrimination suits. And, if one assumes the propriety of disparate impact analysis for the sake of argument, *see Massarsky v. General Motors, Corp.,* 706 F.2d 111, 120 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983), and even the propriety of the specific disparate impact definition asserted by defendant, it is not beyond doubt that plaintiffs could not prove a set of facts which would establish that defendant committed a disparate impact violation. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1975). It would be consistent with plaintiffs' pleadings, for example, if defendant in fact fired people based on the size of their salaries, *see Geller v. Markham,* 635 F.2d at 1030, or on the number of years they spent developing expertise in one technical area to the exclusion of others, *see Blum v. Witco Chemical Corp.,* 829 F.2d 367, 371-72 (3d Cir.1987), and by so doing caused the termination or demotion of an unacceptably high percentage of older workers.

[2] Second, defendant's motion cannot be granted under Rule 56. The crux of defendant's argument on this motion is made out in the thick affidavits which defendant filed in support of its contention that the Operation Turnabout RIF involved complciated, subjective, multifactored judgments about which employees to fire, which to demote. These detailed factual submissions are necessary to defendant's argument, because that argument turns on a claim about how, in fact, the "Operation

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



Turnabout" RIF worked. For reasons which remain puzzling to this court, however, plaintiffs have not been allowed one whit of discovery to aid them in challenging defendant's version of how, in fact, the RIF worked. Under Rule 56(f), I find that any summary judgment motion which purports to turn on a factual description of decisionmaking in the RIF must await a time when plaintiffs have received a decent opportunity to conduct their own discovery regarding that decisionmaking. *See Sames v. Gable,* 732 F.2d 49, 51-52 (3d Cir.1984); *see also J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618-19 (3d Cir.1987) (Becker, J., concurring) (arguing that "the timing issue" governed by Rule 56(f) has taken on greater importance in light of the recent opinions of the Supreme Court in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), concerning the proper standards for summary judgment).

For all these reasons, defendant's disparate impact motion must be denied, without prejudice.

## IV. THE ADEA CLASS

In Count One, plaintiffs seek relief under the ADEA on behalf of a class of employees which is a subgroup of all the employees terminated or demoted in the February 4, 1985 RIF.

**\*399** [3] In most federal class actions, including those involving racial and sex discrimination, the issues of joinder among, and notice to, potential class members are governed by Fed.R.Civ.P. 23. Class claims brought under the ADEA, however, are different. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), incorporates certain select provisions of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* to establish the "powers, remedies, and procedures" by which the ADEA is to be enforced. One of these provisions, 29 U.S.C. § 216(b), provides for class actions as follows:

An action to recover the liability prescribed ... may be maintained against any employer

(including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus it has generally been held that ADEA class actions may proceed under 29 U.S.C. § 216(b) only, and not under Rule 23. *See, e.g., LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir.1975); *Lusardi v. Xerox Corp.,* 99 F.R.D. 89, 92 (D.N.J.1983), *app. dismissed,* 747 F.2d 174 (3d Cir.1984); and cases cited in *Lusardi,* 99 F.R.D. at 92. Or, as it has otherwise been expressed repeatedly, § 216(b) creates an "opt-in" mechanism for class formation and Rule 23 creates an "opt-out" mechanism, and, in the case of the ADEA, the incorporation of the former prohibits application of the latter. *LaChapelle,* 513 F.2d at 289; *Lusardi,* 99 F.R.D. at 92. *See* cases cited in *Lusardi,* 99 F.R.D. at 92. I note that courts commonly employ terms such as "class" and "certification" when discussing § 216(b) claims, even though such terms are hallmarks of Rule 23 litigation and are not mentioned in § 216(b). *See, e.g., Lusardi,* 99 F.R.D. at 93. Whatever nomenclature is used, however, it is clear that the maintenance of ADEA representative claims, and the maintenance of Count One in this case, is governed by § 216(b) and not Rule 23.

[4] As the district court noted in *Lusardi, supra,* at 358, it is clear on the face of § 216(b) itself that an ADEA plaintiff may "maintain" a suit on behalf of other employees once two conditions are met. First, the named plaintiffs and the other employees must be "similarly situated," and second, the other employees must filed written consents to join the action. The courts have applied § 216(b) in a manner which supports this view of the statute. *See, e.g., Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, *amended on other grounds,* 509 F.Supp. 1352 (S.D.N.Y.1981); *Plummer v. General Electric Co.,* 93 F.R.D. 311 (E.D.Pa.1981).

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



Under these principles of § 216(b), I must decide the issues described earlier as "relating to Count One only." The parties' dispute regarding these issues began when plaintiffs moved for discovery of the names and addresses of all the employees who fell within the definition of the class plaintiffs sought to represent, for notice from the court to absent class members regarding the existence of this action, and for the posting and publication of notice on defendant's premises. I shall begin my analysis with these motions.

### 1. *Court Facilitation of Notice to the Class*

The class of employees which plaintiffs seek to represent on Count One is defined by plaintiffs, in their pleadings and other papers, as follows:

All persons, male and female, in the present or former employ of the Company, now or hereafter executing and filing written consents to participate and join in this action, pursuant to 29 USC 216(b), who were, at any time from on or about January 1, 1985 to date:

(a) over 40 but less than 70 years of age;

(b) employed by HLR at any of its locations nationwide in a non-union position or a position not subject to a collective bargaining agreement;

*400 (c)(1) if an exempt employee (i) with an HLR salary grade level of 10 or above, or (ii) if below an HLR salary grade level of 10, with a base annual salary at or greater than the midpoint of such salary grade level, or (2) if a non-exempt employee, with a base annual salary of at least $20,000;

(d) involuntarily discharged, laid off, terminated, downgraded or demoted from employment by HLR:

(e) subjected to such adverse employment actions as described in (d) pursuant to or in connection with a staff reduction action and/or layoff implemented by HLR on or about February 4, 1985.

At the present time, roughly 400 employees have filed with the Clerk of this Court written notices of their consent to join the action. Perhaps 1,200 people all told were fired or demoted; plaintiffs belief that up to 600 may

fit the class they wish to represent. Plaintiffs seek discovery against defendant and the posting and publication of notice on defendant's premises in order to find those missing class members, if any. Once they are found, plaintiffs want the court to notify them of this action and provide them with opt-in forms.

In *Lusardi,* the district court decided to send written notice from the court to absent members of a class that eventually numbered more than 1,300. 99 F.R.D. at 93, *see also supra,* at 358. The defendant in that case then attempted an immediate appeal of the notice decision under the collateral-order doctrine. *Lusardi v. Xerox Corp.,* 747 F.2d 174 (3d Cir.1984). The Third Circuit dismissed the appeal, but noted in dictum that the notice issue was "novel and unresolved." 747 F.2d at 176. In addition, the appeals court stated that:

There is substantial support in the case law for Xerox' position that a district court may not authorize a class-based notice in an ADEA action. *See, e.g., Dolan v. Project Construction,* 725 F.2d 1263 (10th Cir.1984); *Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859 (9th Cir.1977). But there is equally strong precedent supporting the district court's order authorizing notice to a conditional ADEA class. *See, e.g., Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335 (2d Cir.1978), *cert. denied,* 441 U.S. 944 [99 S.Ct. 2162, 60 L.Ed.2d 1046] (1979); *see also, Woods v. New York Life Ins. Co.,* 686 F.2d 578 (7th Cir.1982); *Allen v. Marshall Field & Co.,* 93 F.R.D. 438 (N.D.Ill.1982). This court has not yet addressed the notice issue.

747 F.2d at 176.

[5] Apparently, it was not a matter in dispute in *Lusardi* that plaintiffs could conduct discovery against defendant to identify missing class members. *See* 99 F.R.D. at 93 n. 8. In the case at hand, the issue of discovery and the issue of posting and publication, as well as the issue of notice from the court, are in dispute. I consider the issues of discovery, posting and publication, and notice from the court to represent three aspects of an overarching issue: to what extent may a court

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



offer the mechanisms of judicial process to aid ADEA class plaintiffs in filling their class with all its possible members? I shall decide the motions by plaintiffs now under discussion by considering this overarching issue. I take the Third Circuit's comments in *Lusardi,* quoted above, to apply with equal force to the overarching issue I have identified. Therefore, I shall start my consideration with a review of the divided case law, including cases cited by the Third Circuit in the *Lusardi* opinion.

I turn first to the cases opposing court involvement. In *Dolan v. Project Construction Corp.,* 725 F.2d 1263 (10th Cir.1984), a Fair Labor Standards Act ("FLSA") case for unpaid compensation, brought as a representative action under § 216(b), the Tenth Circuit prohibited "active assistance of plaintiff" by the court in contacting new class members. 725 F.2d at 1268. "Active assistance" included notice from the court and any discovery of names intended solely to facilitate the search for new class members. 725 F.2d at 1267 and note 4. The Tenth Circuit based its holding on its reading of the legislative history behind the most recent amendments to § 216(b), which predated passage of the ADEA itself, 725 F.2d at 1267- 68; *401 on its conclusion that missing class members cannot be bound by the result in an opt-in class litigation, and therefore will not be prejudiced by lack of notice, 725 F.2d at 1268; on its conclusion that without such prejudice due process did not require notice, 725 F.2d at 1269; and on its conclusion that requests to produce names and addresses are "often" great burdens on defendants, 725 F.2d at 1267.

In *Kinney Shoe v. Vorhes,* 564 F.2d 859 (9th Cir.1977), another FLSA unpaid compensation case brought as a § 216(b) representative action, the Ninth Circuit prohibited notice by the court to absent class members and, apparently, any discovery of names and addresses intended solely to aid the search for new class members. 564 F.2d at 864. The court reasoned that Congress' selection of § 216(b) rather than Rule 23 in FLSA representative actions indicated an affirmative intent that procedures under Rule

23 be banned from FLSA representative actions, 564 F.2d at 862-64; that, apparently, even if Congress were neutral regarding notice under § 216(b), neither § 216(b) nor any other law gave couts the affirmative power to issue notice, 564 F.2d at 863-64; that due process did not require notice when the case was an opt-in action, 564 F.2d at 863; and that courts should avoid "stirring up" litigation, 564 F.2d at 863.

In *McKenna v. Champion International Corp.,* 747 F.2d 1211 (8th Cir.1984), the Eighth Circuit decided in an ADEA case that courts could neither send notice nor allow discovery of names and addresses. Although the court found "little light" in the legislative history of § 216(b), it did rely on the arguments, mentioned in regard to the other cases described above, that due process did not compel notice and that neither § 216(b) nor any other law expressly empowered courts to send notice, 747 F.2d at 1213-14. The court added that, given the comparatively intricate procedures with which plaintiffs must contend in certifying a Rule 23 class, plaintiffs in § 216(b) cases should not enjoy the "benefits of court-directed notice" without carrying the burden of Rule 23 pleading and proof, 747 F.2d at 1213. The court also noted that the existence of a "remedial purpose" in the FLSA and the benefit in avoiding a "multiplicity of suits" were on balance unpersuasive reasons to allow court notice, 747 F.2d at 1213-14. *See also, e.g., Goerke v. Commercial Contractors & Supply Co.,* 600 F.Supp. 1155, 1158-61 (N.D.Ga.1984) (courts have no power to send notice or approve notice sent by others); *McGinley v. Burroughs Corp.,* 407 F.Supp. 903, 911 (E.D.Pa.1975) (congressional intent that Rule 23 not be used includes an intent that "Rule 23 type notice" be prohibited).

On the other hand are cases approving of varying degrees of court facilitation of ADEA class formation. In *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335 (2d Cir.1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979), an FLSA action for compensation, a Second Circuit panel decided in a *per curiam* opinion that although due process does not require notice in an opt-in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



case, court-authorized notice would be allowed because, in light of the "broad remedial purpose" of the FLSA, it "makes more sense" to read the silence in § 216(b) on the notice issue as permitting notice "in an appropriate case," rather than as prohibiting notice; also, notice would help avoid a multiplicity of lawsuits, 600 F.2d at 336.

The Seventh Circuit took a notable intermediate position on court involvement in *Woods v. New York Life Insurance Co.,* 686 F.2d 578 (7th Cir.1982). *Woods* was an ADEA case brought as a representative action under § 216(b). The Seventh Circuit found there to be no legislative history behind § 216(b) which was "pertinent to the issue of notice," 686 F.2d at 581, and further found it to be "sufficiently unlikely that Congress, having created a procedure for representative actions, would have wanted to prevent the class representative from notifying other members of the class that they had a champion," 686 F.2d at 581. The court approved discovery against defendant to uncover unknown class members; approved notice by plaintiffs, without the involvement of the court or defendant, to newly discovered members prior to the *402 filing of the suit; and required that notice by plaintiffs after the filing of the suit be regulated in manner and content by the court, after defendant has received an opportunity to be heard on the propriety of the notice. 686 F.2d at 580-81. The court forbade, however, any "judicial imprimatur" in the notice which might be construed as the court's "invitation" to join the suit. 686 F.2d at 581-82. See also Judge Eschbach's partial dissent in *Woods,* arguing that the decision whether or not to issue notice from the court directly should be left to the discretion of the trial judge. 686 F.2d at 582.

In *Allen v. Marshall Field & Co.,* 93 F.R.D. 438 (N.D.Ill.1982), the district court found that the legislative history behind § 216(b) shed "no light" on the issue of whether silence on the notice issue should be read as prohibiting or permitting notice from the court. 93 F.R.D. at 441. Citing *Braunstein,* the court then found that the broad remedial purpose of the ADEA, 93 F.R.D. at 442, as well as the judicial

economies presented by the joinder of lawsuits, 93 F.R.D. at 444, favored the transmittal of notice from the court.

On the issue of discovery only, a recent district court case from within this circuit, *Vivone v. Acme Markets, Inc.,* 105 F.R.D. 65 (E.D.Pa.1985), supports the use of discovery to uncover the identities of missing class members. The court found that "implementation" of the ADEA, "a remedial statute," supported the "mixed" use of such discovery to prove the pattern or practice claims of the current plaintiffs and to find new plaintiffs. 105 F.R.D. at 68. The court also found that a request for certain routine employment information on all employees occupying certain job categories over a three-year period, a group estimated at less than 280 people, was not burdensome. 105 F.R.D. at 67-68. *See also, e.g., Lusardi,* 99 F.R.D. at 93 (notice from the court); *Johnson v. American Airlines, Inc.,* 531 F.Supp. 957 (N.D.Tex.1982) (notice from the court); *Monroe v. United Air Lines, Inc.,* 90 F.R.D. 638 (N.D.Ill.1981) (letter notice from plaintiffs ending with the line: "This notice has been authorized by Honorable Milton I. Shadur, the judge to whom these cases are assigned."); *Riojas v. Seal Produce, Inc.,* 82 F.R.D. 613 (S.D.Tex.1979) (notice from the court).

After careful consideration of these cases and the arguments they raise, I find that it is permissible for a court to facilitate notice of an ADEA suit to absent class members in appropriate cases, so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits.

I start my analysis with § 216(b) itself, which is wholly silent on the issue of notice and court involvement. Turning next to the legislative history of § 216(b), I find it similarly silent on the issue, at least as it might relate to the case at hand. The version of § 216(b) now in effect was created by amendments to the FLSA passed in 1947. Cases such as *Dolan* rely on the legislative history of the 1947 amendments to support a restrictive view of court involvement. I disagree with such

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



assessments. The legislative history of the 1974 amendments consists of House Report No. 71 of the 80th Congress, 1st Session. *See* 1947 U.S.Code Congressional Service (80th Cong., 1st Sess.) 1029. That report expressly divides itself into two "parts." 1947 U.S.Code Congressional Service at 1029. The second part concerns "all" FLSA actions but relates only to statute-of-limitations, good- faith defense, settlement, and damages issues. 1947 U.S.Code Congressional Service at 1035- 36. The first part discusses only "certain claims, actions, and proceedings concerning alleged wages and overtime compensation," especially the "portal-to-portal" actions which had been authorized the year before by the U.S. Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). 1947 U.S.Code Congressional Service at 1029-35. Because part 2 of the House Report does not concern itself with the issue of court involvement in notice to absent class members, and part 1 does not concern cases aside from portal-to-portal compensation cases, I find nothing in the legislative history of § 216(b) which might apply to the issue of court-facilitated *403 notice, at least when it arises in a case other than a portal-to-portal compensation case. *See Woods*, 686 F.2d at 581; *Allen*, 93 F.R.D. at 441-42.

I next move beyond § 216(b) to the ADEA itself, which, as the statute incorporating § 216(b) and creating the claim at issue here, might add its own instructions as to how the notice issues in this case should be decided. *See, e.g., Vivone*, 105 F.R.D. at 69 (in ADEA class action, court reads the limits of § 216(b) in light of the special characteristics of ADEA claims). Although the legislative history of the ADEA is silent on these issues, it is clear to me that the ADEA is a remedial statute, which as a matter of traditional interpretative theory, should be broadly construed to effectuate its general purpose: ameliorating age discrimination in employment. *Holliday v. Ketchum, McLeod & Grove, Inc.*, 584 F.2d 1221, 1229- 30 (3d Cir.1978) (*en banc* ); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3d Cir.1977). *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 765- 66, 99 S.Ct. 2066, 2076, 60

L.Ed.2d 609 (Blackman, J. concurring); *see also Ricks v. Delaware State College*, 605 F.2d 710, 712 (3d Cir.1979), *rev'd on other grounds*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (noting the "common humanitarian and remedial purpose" of the ADEA and Title VII). See generally Singer, Sutherland Statutory Construction, §§ 60.01 *et seq.* (4th ed.).

Given this conclusion, I find that the ADEA itself, consistent with the otherwise silent § 216(b), generates a capacity for courts to facilitate notice to absent ADEA class members. If courts refrain from facilitating notice to missing class members, the enforcement of ADEA remedies for violations which victimize a group of people will be limited only to those victims who are already known to their "champion," *Woods*, 686 F.2d at 581, or who are fortunate enough to hear and heed "the vagaries of rumor and gossip," *Lusardi*, 99 F.R.D. at 93, or who are courageous enough to recognize the wrong done them and sue on their own. The ADEA cannot tolerate the piecemeal remediation which would thereby result, at least in those instances where the discriminatory act has victimized a large number of people. I note that even if § 216(b) does contain some restrictive Congressional intent regarding court-facilitated notice which I have failed to perceive, the applicability of that intent in ADEA cases is best discerned through the prism of the incorporating statute, the ADEA, and its general remedial goals. Therefore, even in this alternative situation some degree of court involvement in notice efforts would comport with the applicable statutory purposes.

[6] In addition to the statutes involved and their legislative histories, it is clear to me that the general policy of judicial economy also supports some role for the courts in facilitating notice to an ADEA class. Such notice can obviously aid courts in collapsing a potentially high number of separate ADEA suits into one case. Policies against barratry or champerty are not to the contrary. *See, e.g., Braunstein*, 600 F.2d at 336; *Lusardi*, 99 F.R.D. at 93; *Johnson*, 531 F.Supp. at 959-60. I would indeed presume that any aid a court

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



might lend to an ADEA notice effort should not in any instance go beyond the constraints on commercial speech under which lawyers must in all cases operate. *See,* e.g., Rule 6 of the General Rules of this district, incorporating the American Bar Association Rules of Professional Conduct; Rules 7.1 and 7.2 of the ABA Rules; *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 642-43, 105 S.Ct. 2265, 2277-78, 85 L.Ed.2d 652 (1985).

For all these reasons I find that courts may facilitate notice to absent class members in appropriate ADEA actions. For the reasons given in my foregoing analysis, I reject all the arguments to the contrary offered in the cases disfavoring court involvement.

[7] Turning to the case at hand, I find it to be appropriate for this court to offer some degree of facilitation to plaintiffs' notice efforts. First, plaintiffs contend that up to 600 victims of defendant's alleged discriminatory RIF may exist, about 200 of whom are still unknown to plaintiffs *404 and have not opted in. I shall order defendant to comply forthwith with plaintiffs' request for discovery of names and addresses in order to aid the effort to contact these unknown people. I note that defendant has not made known to me any objection it might have to the burden this discovery might impose. *See Vivone,* 105 F.R.D. at 67-68 (request for routine personnel-file information on perhaps 280 employees is not burdensome).

I turn now to the issue of whether the court itself should issue the notice that will go out should absent class members be discovered. On this issue, I find instructive that part of the opinion of the Seventh Circuit in *Woods* which discusses the dangers inherent in courts placing their "imprimaturs" on notices sent out in opt-in class actions. Certainly, the reasons I have given in support of court facilitation of ADEA notice do not necessarily require that notice issue from the court itself; instead, plaintiffs or plaintiffs' counsel can put their names on the notice and still achieve the primary purposes behind notice: ensuring effective ADEA enforcement and fostering judicial economy. I note in passing that defendant has not seriously argued that

plaintiffs themselves can or should be prohibited from communication with absent class members. *See,* e.g., *Dolan,* 725 F.2d at 1268-69 (citing, *inter alia, Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)); *Vivone,* 105 F.R.D. at 67; *see also Rodgers v. U.S. Steel Corp.,* 508 F.2d 152, 163-65 (3d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

[8] At the same time, however, it does serve the purposes of judicial economy for the court to specify the content of the notice, so that further arguments regarding the propriety of the notice can be avoided and the court can fairly require that after such notice is given a final deadline for consents be imposed. Once the court has specified the content of the notice, however, it would be unfair, if not a genuine infringement of plaintiffs' free-speech rights, to, in effect, put words in the mouths of plaintiffs or plaintiffs' counsel without indicating the court's involvement in the preparation of the notice.

In the case at hand, I shall resolve these countervailing positions by allowing notice to go out from plaintiffs or plaintiffs' counsel, with a content specified by me. The notice shall indicate that this court has authorized the notice without in any way judging the merit of plaintiffs' claims or defendant's defenses. *See Monroe,* 90 F.R.D. at 641-42 (court approved sending of notice from plaintiffs which ended: "This notice has been authorized" by the court). In reaching this conclusion, I endorse and rely upon Judge Eschbach's partial dissent in *Woods,* which argued that the decision whether or not, in a specific case, to allow notice from the court or instead to employ some more tempered alternative is a "detail" which should be left to the discretion of the trial judge. 686 F.2d at 582. *See also,* e.g., *Riojas,* 82 F.R.D. at 619 (notice from the court itself was sent to class, but apparently a special need for such notice was shown because class members were migrant workers whose poverty and education left them with "no conception of legal rights they might possess").

The notice I authorize is contained in

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



Appendix A of this opinion. Unless plaintiffs agree to a shorter deadline, I shall impose a cutoff date for new consents 45 days after plaintiffs send out this notice in the mail.

[9] Finally, I turn to plaintiffs' request that notice be posted on "company bulletin-boards" on defendant's premises and published in defendant's "company newspapers." Given plaintiffs' allegation that defendant both fired and demoted employees in a discriminatory manner on February 4, 1985, notice of this sort would presumably aid in ensuring that all prospective class members learned of this action. Plaintiffs have not, however, posed their request with sufficient specificity, or presented specific facts regarding the existence of "company" bulletin boards and newspapers, such that I may fairly order defendant to comply. Plaintiffs' request is too vague; if plaintiffs return with a more specific request, stating where exactly and when *405 posting should be ordered, and in which newspapers, in what sort of format, and when publication should be ordered, I shall consider it. Plaintiffs can gather whatever information they need through regular discovery channels, which, as I shall explain more fully later in this opinion, are now to be reopened.

In short, I have decided that defendant must honor plaintiffs' discovery request for names and addresses forthwith, that notice by mail as contained in Appendix A of this opinion shall be allowed to go out bearing plaintiffs' or plaintiffs' counsel's names, and that the notice shall note that it has been authorized by the court. Plaintiffs' request for notice by posting and publication on defendant's premises is denied without prejudice because it is too vague.

I note that two of the reasons Magistrate Haneke gave for recommending that all of plaintiffs' notice and notice-related discovery motions be denied were that, under § 216(b), plaintiffs had failed to make a sufficient showing that all class members were similarly situated to the named plaintiffs, and also that the written consents so far filed with this court were flawed and should be invalidated. (As I discussed earlier, the only two requirements for maintaining a § 216(b) class action are that class members be similarly situated and that each absent class member file a consent to join the action.) I find neither of these two points sufficient to justify a denial of plaintiffs' discovery and notice motions.

*2. The "Similarly Situated" Requirement*

First, I discuss the "similarly situated" issue. On this point, plaintiffs need show only "that their positions are similar, not identical," to the positions held by the putative class members. *Riojas,* 82 F.R.D. at 616 (*citing Calabrese v. Chiumento,* 3 F.R.D. 435, 437 (D.N.J.1944)).

[10] It seems clear from the language of § 216(b) alone that a § 216(b) representative action cannot be "maintained" unless all the employees represented are "similarly situated." The use of the word "maintained" in the statute, however, begs the question as to when in a specific case a determination of "similar situations" should be made. That question may not be important in all ADEA cases, but it is in this case, for plaintiffs have sought court assistance in filling their ADEA class, and thus are seeking orders in support of the maintenance of their class claim before the class is fully assembled for court inspection. In light of this problem, the Magistrate apparently concluded that a "similarly situated" determination had to be made at the outset of the litigation, and after examining the record in its nascent form and finding that plaintiffs had failed to carry their burden (whatever he felt it to be) on the issue, he denied their notice and notice-related discovery motions. I reach a different conclusion.

It is clear from a review of the "similarly situated" caselaw that the issue of when the determination must be made has not received extended consideration. A determination as to whether class members are similarly situated is always fact-specific. *See, e.g., Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir.1979); *Lusardi, cited supra,* at 359; *Owens v. Bethelehem Mines Corp.,* 108 F.R.D. 207 (S.D.W.Va.1985); *Behr v. Drake Hotel,* 586

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



F.Supp. 427 (N.D.Ill.1984); *Frank v. Capital Cities Communications, Inc.,* 33 E.P.D. Paragraph 34, 285 (S.D.N.Y.1983) [available on WESTLAW, 1983 WL 643]; *Allen v. Marshall Field & Co.,* 93 F.R.D. 438 (N.D.Ill.1982); *Franci v. Avco Corp.,* 538 F.Supp. 250 (D.Conn.1982); *Plummer v. General Electric Co.,* 93 F.R.D. 311 (E.D.Pa.1981); *Sussman v. Vornado, Inc.,* 90 F.R.D. 680 (D.N.J.1981); *Locascio v. Teletype Corp.,* 74 F.R.D. 108 (N.D.Ill.1977); *Cavanaugh v. Minneapolis Aquatennial Ass'n.,* 82 Lab.Cas. Paragraph 33,558 (D.Minn.1976) [available on WESTLAW, 1976 WL 1699]; *Burgett v. Cudahy, Co.,* 361 F.Supp. 617 (D.Kan.1973). Nevertheless, only a few courts have bothered to explain how much of a factual record they required before they would decide the issue. *See Haynes v. Singer Co.,* 696 F.2d 884, 887-88 (11th Cir.1983) (not error for district court to decline to circulate notice of FLSA class *406 claim when only evidence of widespread violation was counsel's unsupported assertions); *Locascio,* 74 F.R.D. at 112 (a one-day layoff alleged; court found plaintiffs to be similarly situated based on a reading of plaintiffs' complaint, bolstered by defendant's answers to interrogatories, which confirmed use of "uniform group of rules" for all layoffs); *Sussman,* 90 F.R.D. at 684 (termination scheme running from 1976 to 1977; court found plaintiffs to be similarly situated based on "undisputed facts" regarding the dates when employees departed, plaintiffs' allegations of discriminatory intent, and the subsequent hiring of younger employees); *Frank,* 33 E.P.D. at page 33,084-85 (defendants alleged a "subtle" campaign of harassment through various means, over an extended period of time, against employees in varied jobs in three states; court allowed case to proceed as a class action but reminded plaintiffs that they must prove at trial the existence of a single discriminatory policy touching all plaintiffs in order to "have justified their treatment as a class"); *Wilson v. Babcock & Wilcox Co.,* No. 82 Civ. 5685 (CES), slip op. at 4-5 (S.D.N.Y. April 27, 1983) (a discriminatory RIF alleged; court-authorized notice would not be circulated until plaintiff "at least has a *prima facie* case" against defendant, which plaintiff had not presented by relying on allegations in

complaint when defendant presented affidavits contesting those allegations); *Lusardi,* 99 F.R.D. at 93 and *cited supra,* at 359 (allegation of nationwide discriminatory policy operating over four years; court "conditionally" certified class for notice and discovery purposes, then de-certified class after discovery revealed 75 RIFs covering over 17 separate organizations within defendant corporation); *Cavanaugh,* 82 Lab.Cas. at pages 47,924-25 (FLSA wage compensation case; court should wait until all interested employees have filed consents before deciding "similarly situated" issue).

In the case at hand, the issue of "similar situations" is in dispute. Plaintiffs have relied on their pleadings and on a number of affidavits, notably the joint affidavit of Frederick Hemsley and Joseph Zelauskas at paragraphs 10, 12, 13, 14, 17 and 19 and the affidavit of Richard Sperling at paragraph 11, to allege the existence of a discriminatory purpose or impact running through the Operation Turnabout RIF and uniting all members of their self-defined class with a common cause of their injuries. Defendant has in turn submitted affidavits in support of its argument that at least some of the individuals already in the case are not similarly situated to the named plaintiffs.

I find, however, that notice to absent class members need not await a conclusive finding of "similar situations." To impose such a requirement would condemn any large class claim under the ADEA to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves. Such a scheme would of course violate the twin policies which I earlier found to support court participation in ADEA-class notice in the first place: broad ADEA remediation and judicial economy. In addition, to allow notice before the "similarly situated" issue is decided would insure that all possible class members who are interested are present, and thereby assure

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



that the full "similarly situated" decision is informed, efficiently reached, and conclusive.

[11] The question remains whether the record in this case on the "similarly situated" issue is sufficiently developed at this time to allow court- facilitated class notice. I find that it is. Plaintiffs have made detailed allegations in their pleadings, and have supported those allegations with affidavits which successfully engage defendant's affidavits to the contrary. Plaintiffs' allegations, as supported, describe a single decision, policy, or plan of defendant's, infected by a discriminatory aspect which led to the termination or demotion of every member of the class plaintiffs wish to represent, and the reallocation of responsibilities among the remaining, generally younger workers. I find that with these allegations, *407 plaintiffs set forth with some factual support all the necessary elements of an ADEA class claim. *See Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253, 256-57 (3d Cir.1986). Whatever the minimum requirements may be for alleging that class members are similarly situated so as to merit court-facilitated notice, I find that the case at hand meets those requirements.

In reaching less than a final decision on the "similarly situated" issue, I do not mean to intimate that the ultimate burdens plaintiffs must sustain on that issue are heavy, or that significant discovery must be undertaken to sustain them. Without pre-judging my eventual decision I wish to point out what I have perceived so far regarding the standards governing a conclusive finding of "similar situations."

The relevant statutes and caselaw do not prescribe clear rules for determining whether putative class members are similarly situated. *See Lusardi, supra,* at 358-359. In general, however, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination. *Frank,* 33 E.P.D. at page 33,085; *Owens,* 108 F.R.D. at 209-12. See the fact situations at issue in *Bean,* 600 F.2d at 756 (RIF implemented over 4 months);

*Owens,* 108 F.R.D. at 208-09 (consolidation of two corporate divisions led to a RIF which at least ten employees complained of as discriminatory); *Allen,* 93 F.R.D. at 443 ("campaign" of discrimination by top management over 5 years); *Franci,* 538 F.Supp. at 252 ("massive" RIF executed over 3 years); *Plummer,* 93 F.R.D. at 312 (class members shared same company department, "similar" complaints of discrimination, and same requests for relief); *Sussman,* 90 F.R.D. at 682, 684 ("undisputed facts" showed that class members were forced out of company between 1976 promise of pension participation and effective date of their participation in 1977); *Locascio,* 74 F.R.D. at 112 (one large layoff on or about July 11, 1975); *Burgett,* 361 F.Supp. at 622 (all class members were (1) 60-65 years old, (2) long-time supervisory personnel, (3) fired and rehired at same time, for same reasons, (4) complaining of same injurious behavior, (5) seeking same relief). Contrast *Lusardi,* cited *supra* at 359 (class decertified due to, *inter alia,* "disparate factual and employment settings" of plaintiffs and the different defenses defendant had posed to different individual claims). In view of these apparent requirements, the victims of an allegedly discriminatory RIF have in dictum been called a "self-evident" class. *Frank,* 33 E.P.D. at page 33,084.

[12] Whatever the proper standard may be for conclusively judging the "similarly situated" issue, however, it must be remembered that the "similarly situated" showing establishes nothing more than the right of plaintiffs to "maintain" a collective action. At trial, each individual plaintiff must bear his or her burden of proof as to each element of an ADEA claim. *See, e.g., Berndt,* 789 F.2d at 256-57. In the meantime, the "similarly situated" finding provides for unified trial preparation, prosecution, and defense on what appears to be a single discriminatory decision motivating all the terminations and demotions at issue. *See, e.g., Owens,* 108 F.R.D. at 209-10; *Frank,* 33 E.P.D. at page 33,085; *Franci,* 538 F.Supp. at 255-56 (and cases cited therein). Finally, nothing would appear to prevent the court from modifying or reversing a decision on "similar situations" at a later

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



time in an action, as new facts emerge. *See Lusardi,* 99 F.R.D. at 93 and cited *supra,* at 358 . But *see Cavanaugh,* 82 Lab.Cas. at page 47,925 (no "warrant" for engrafting" onto § 216(b) procedure the Rule 23 practice of conditionally certifying a class).

Putting these preceptions aside, however, I do in any event find that plaintiffs have at this point made a sufficient showing on the "similarly situated" issue to merit court-facilitated notice at this time in the action.

### 3. The Validity of the Prior Consents

Second, I discuss the issue of whether the consents already filed in this action are flawed, and must be invalidated. In contrast *408 to the Magistrate, I find defendant's arguments for invalidating the consents to be generally without merit, and I deny defendant's requested relief.

According to those undisputed facts so far presented in this case, the efforts of plaintiffs to form a class on their ADEA claim began within a month of the February 4, 1985 RIF. A group of putative class members formed a group called R.A.D.A.R. ("Roche Age Discriminatees Asking Redress") on or about March 2, 1985. On March 7, 1985, a letter was mailed out to an unstated number of terminated Roche employees on R.A.D.A.R. letterhead, signed by 6 putative class members, soliciting consents to join and monetary contributions to cover litigation expenses. Attached to the letter was a document denominated "Consent to Join Action (Pursuant to 29 U.S.C. § 216(b))," which went on for 6 paragraphs and left blank spaces for the consenting employee's name, address, birthdate, age, salary, salary grade, and signature. The form was addressed to the Clerk of this court and bore the caption in this case. Later on, a newsletter, a press conference, and other publicity efforts were employed by plaintiffs to discover the names of additional class members. When new individuals were discovered, they were sent the March 7 letter and consent form. It is apparently not disputed that most or all of the approximately 400 consents filed so far in this

action were filed after their signatories had received and read the March 7 letter.

Defendant voices a number of objections to the March 7 letter and argues that any consents filed as a result of solicitation through the letter are invalid as a matter of law. Defendant seeks an order voiding the consents on file and directing that a curative notice from the court and a new consent form be sent to each employee who filed a voided consent.

[13] Neither party has cited to me any law regarding the proper meaning of "consent" within the context of a § 216(b) opt-in procedure, and I have found nothing directly on point. In a somewhat analogous context, however-- the question of whether a law firm's client has effectively consented to representation by the law firm despite a conflict of interest on the law firm's part--the Third Circuit has described consent as "full and effective disclosure of all the relevent facts ... sufficient to enable [the consenting party] to make an informed decision ...." *IBM v. Levin,* 579 F.2d 271, 282 (3d Cir.1978). I will look for such disclosure and informed decisionmaking in deciding the validity of the consents in this case.

[14] Defendant's first objection is that the March 7 letter and consent form fail to indicate that a person opting-in must believe himself or herself to be a victim of age discrimination. As a subsidiary point, defendant complains that the letter and form fail to explain that plaintiffs might try their case at least in part under a disparate impact theory. These are silly objections. First, defendant cites no authority, and I know of none, which makes a plaintiff's subjective belief in his victimization an element of an age discrimination claim. Defendant makes veiled accusations regarding Fed.R.Civ.P. 11, which requires that plaintiffs and plaintiffs' counsel possess a reasonable basis in fact for the allegations made in their pleadings. If defendant feels that Rule 11 has been violated, defendant can make an appropriate motion for sanctions. In any event, I will not read that rule as creating some new essential



element of subjective belief for every claim filed in federal court.   Second, I find no harm caused by the failure of the letter and consent form to discuss disparate impact theory.   Read together, the letter and form make clear that the named plaintiffs in the action would exercise their discretion to select counsel, and that anyone opting in would be bound by the results of counsel's efforts.   If a solicited employee wished to know more about the details of plaintiffs' litigation strategy, he or she could have inquired initially by calling any one of the 6 letter signatories, all of whom listed their phone numbers.   Certainly, for defendant to demand that opt-ins receive up-front detail regarding alternative theories of liability *409 under the ADEA verges on the ludicrous.

Defendant's second objection is that the letter and form fail to alert opt-ins to the fact that defendant had denied any charges of age discrimination.   I can think of few suppositions more likely to be entertained by a potential plaintiff on his own than the supposition that the potential defendant might oppose plaintiff's lawsuit.   Express notice is hardly necessary.   In any event, the clear implication of the March 7 letter is that defendant would offer plaintiffs vigorous opposition.

[15] Defendant's third objection has some degree of substance to it.   Defendant complains that the letter and form fail to identify plaintiffs' counsel, or alert potential opt-ins to their right to pursue their claims separately with counsel of their own choice. Obviously, the selection of counsel, even in a civil case, is an important matter.   As I noted earlier, however, the letter and form together make clear that R.A.D.A.R. had or would be selecting counsel at their discretion, and that the efforts of the R.A.D.A.R.-selected counsel would ultimately bind all opt-ins.   Potential opt- ins seeking information regarding who that counsel might be could have phoned the letter signatories.   In view of these facts, opt-ins who consented to join the action without knowledge of who would represent them did so with their eyes open.   I reject defendant's related contention that the letter "implies that

only through R.A.D.A.R.'s suit will one be able to obtain 'redress.' " Defendant's brief in support of motion to declare invalid and vacate consents, prepared for March 24, 1986 return date, at page 20.   The letter does nothing of the kind;   rather it argues that there is "strength in numbers" and makes no mention whatsoever of the legal validity or invalidity of separate actions.   Defendant's third objection ultimately fails.

[16] Defendant's fourth objection, that the letter does not disclose the fact that an opt-in may be obliged to participate in discovery, is too insubstantial to discuss at length. Defendant's fifth objection, that the letter does not disclose potential liability for costs, is not only insubstantial, *see Sussman v. Vornado, Inc.*, Civil No. 78-422, letter opinion of Judge Stern at page 3 (D.N.J. October 18, 1978), it also ignores the long paragraph in the March 7 letter explaining the many types of expenses which plaintiffs must bear on their own and suggesting contributions of up to $200 each. This paragraph amply forewarned potential opt-ins that participation might be costly, even though it did not expressly mention the taxing of court costs.   Defendant's sixth objection, that the letter and form did not adequately alert opt-ins to the legal effect which a judgment in this case would exert, is flat wrong.   Paragraph 4 of the form states clearly that the opt-in consents "to be bound by any settlement of this action or adjudication of the court."

[17] Finally, I wish to address generalized and related objections of defendant's, expressed obliquely in some of defendant's specific objections discussed above.   The first is that the March 7 letter and consent form are flawed because plaintiffs' counsel helped write them, but did not disclose this fact in the letter.   The second is that the letter and form are inflammatory. I see no harm in plaintiffs' counsel failing to reveal their participation in writing the letter and form, because I see no way that such nondisclosure could have misled readers.   I find in fact that by sending out the letter over the signatures of class members, not lawyers, plaintiffs and plaintiffs' counsel avoided misleading readers.   A letter from a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



lawyer inviting one to join an action may create false hopes of success, or dissuade one from engaging a disinterested professional for a second opinion. A letter from another non-lawyer, however, does neither. Indeed, it may prompt a reader to be especially careful in deciding whether to join, or prompt him to first seek out an independent opinion from a lawyer close at hand and outside the case. Thus, the failure to disclose plaintiffs' counsel's role did not affect the quality of the consent registered by each opt-in. To the extent that defendant implies that such activity on the part of plaintiffs' counsel is unethical, I find defendant's contention strained, and irrelevent *410 to the consent issue. Similarly, because the letter came from plaintiffs and not plaintiffs' counsel, whatever inflammatory language the letter might have used did not effect the validity of the consents. In the use of such phrases as " 'Black Monday' massacre," "war chest" and "Operation Throw 'Em Out," the overall effect of the letter and form is somewhat strident and self- righteous. But the fact that it is signed by plaintiffs, and not lawyers, alerts the reader to the possibilities of puffery or unrealistic expectations on the part of the signatories. In addition, the sober appearance and wording of the consent form signify that important legal consequences will flow from signing it, and thus further counteract whatever emotionalism the letter may bear. And certainly, the mere fact that plaintiffs' letter adopted some heated phrases cannot, without more, make it an invalid communication. See, e.g., Zauderer, 471 U.S. at 641-42, 105 S.Ct. at 2277. For these reasons, I reject defendant's generalized objections to the consents.

In short, the March 7 letter and consent form are not flawed in any way which vitiates the consents they solicited. I see no reason to doubt that the individuals who have so far opted into this action have done so after sufficiently full and effective disclosure, such that their decisions may be considered informed. Given this finding, defendant's request for curative notice is moot.

In reaching this conclusion, I distinguish

Partlow v. Jewish Orphans' Home of Southern California, 645 F.2d 757 (9th Cir.1981), and Walker v. Mountain States Telephone and Telegraph Co., 112 F.R.D. 44 (D.Colo.1986). In Partlow, the prior consents to joining an FLSA action were invalidated because plaintiffs' counsel has solicited the consents and, in the circuit where the case arose, "named plaintiffs' counsel had no power to solicit the class members." 645 F.2d at 759. No party in this case has argued for so restrictive an approach to notice under § 216(b) as the approach enforced in Partlow by the invalidation of the consents; indeed, I have already adopted in this opinion a much broader approach to § 216(b) notice in ADEA actions. In Walker, an ADEA case before a district court bound by the Dolan decision, discussed supra, the prior consents were invalidated because the consent forms were captioned as pleadings, the notice did not explain the right of each member to obtain separate counsel, the forms were sent out without alerting the other side in the case, and the forms incorrectly discussed consent regarding other claims than the ADEA claim. 112 F.R.D. at 48. I find the first objection by the Walker court to be puzzling, but in any event I do not consider the consents in the case at hand to be misleading in their physical composition; I find the second objection by the Walker court distinguishable for the reasons given earlier regarding the selection of counsel; and I find the third and fourth objections by the Walker court to be irrelevant here. Thus, I do not find these cases to be at odds with my conclusion that the prior consents in this case are valid.

### 4. Equitable Tolling

The last remaining issue related to count one only is the equitable tolling issue. Plaintiffs seek a ruling from me that the statute of limitations on the ADEA claim, which plaintiffs concede ran out on February 4, 1987 (unless defendant committed a willful violation of the ADEA, in which case the statute of limitations runs until February 4, 1988), be tolled for all new-class members who file consents in response to the notice which I have authorized today.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



[18] It is clear that the statute of limitations governing ADEA claims may be tolled by "equitable considerations." *Callowhill v. The Allen-Sherman-Hoff Co.*, 832 F.2d 269, 274 (3d Cir.1987). In the case at hand, the two-year statute of limitations for non-willful violations ran out during a period of long delay in the decision of plaintiffs' notice motions. Plaintiffs filed their action in May 1985 and filed their notice motions in August 1985. For reasons which remain unclear, the Magistrate then stayed all discovery by plaintiffs; gave defendant four months of discovery on the *411 previously discussed issue of the validity of the prior consents; granted defendant another three months in which to prepare multiple briefs on plaintiffs' notice motions, and apparently, whatever other threshhold motions defendant desired to bring on its own behalf; waited another nine months to issue his first, insufficient, R & R; and then took another three months to, at my order, produce an R & R which gave reasons for his conclusions. All told, this process took 19 months, and ran three months past the 2-year limitations date of February 4, 1985. To this delay must be added the time since the Magistrate's supplemental R & R issued in May 1987 that I have taken to produce this decision. Of course, plaintiffs' counsel have intermittently registered their protests and pleas for speed, but delay has built up against them nevertheless.

Because this delay renders my ruling today less than "timely," *Owens v. Bethlehem Mines Corp.*, 630 F.Supp. 309, 311 (S.D.W.Va.1986), and will render moot my findings that court-facilitated notice will serve ADEA purposes unless equitable tolling is granted, and because defendant has long had timely notice of the claims in this case and plaintiffs' efforts to find more class members, plaintiffs have presented a facially compelling case for equitable tolling. *See also Owens,* at 312.

I will, however, put off a final decision on the issue until after the deadline for filing consents listed in the notice authorized today has run. Defendant believes that, despite the court's delay in deciding these motions and the notice defendant has already received, some new class members may have reasons for entering the action at this late date which would not support an exercise of equity in their favor. It is better to resolve this issue based on fact, not speculation. After all possible class members have consented in, plaintiff can present to the court each of those class members who need and want to have the limitations period tolled, and defendant can if it wishes contest the equity in tolling the limitations period for each of those people individually. The parties should be prepared to present factual allegations as to why each of the late opt-ins did not join the action before February 4, 1987. *See Owens,* at 311 (deciding tolling issue for each applicable plaintiff individually). The notice which I authorize today shall state in part that individuals who fear that the statute of limitations may have run on their claims should not fail to join the action for that reason only, because any question regarding the applicability of the statute of limitations shall be decided by the court later in the case.

## V. PENDENT JURISDICTION AND THE STATE-LAW CLAIMS

As noted earlier, defendant has separate pendent-jurisdiction objections to each of the two state-law claims asserted by plaintiffs.

### 1. *The State Discrimination Claim*

[19] Defendant argues that this court should refuse to certify a class under Fed.R.Civ.P. 23 because the principles of pendent jurisdiction do not allow such certification. The Magistrate found this argument persuasive.

The doctrine of pendent jurisdiction allows federal courts, in certain circumstances, to exercise jurisdiction in a discretionary manner over state-law claims which lack a federal jurisdictional basis of their own. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Owens Equipment and Erections Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The Third Circuit has stated in a comprehensive fashion the test to

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



be applied for determining whether an assertion of pendent jurisdiction is warranted. That test has three parts.

On the first level, a court must determine whether it has constitutional power to determine a state-law claim. This "power" test depends on whether there is a "common nucleus of operative fact" between the state claim at issue and the accompanying federal claims.... The second level requires the court to determine *412 whether the exercise of jurisdiction at issue would violate a particular federal policy decision.... At this level, the Court may consider whether the plaintiff's assertion of ... pendent jurisdiction is an attempt to manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes.... The final level-- prudential in character--is for the district court, in its discretion, to weigh various factors bearing on the appropriateness of hearing a pendent claim.

*Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 989-90 (3d Cir.1984).

According to defendant, this court should not certify a Rule 23 class on the state LAD claim because Rule 23 will then compel the court to send notice to the class, and in that way plaintiffs will get court notice of a sort I have already denied under the ADEA claim. Defendant argues that to grant plaintiffs court notice in this backhanded way will "manufacture federal jurisdiction" in contravention of part 2 of the *Ambromovage* test. Defendant also appears to argue that plaintiffs are requesting this court to employ Rule 23 on an opt-in basis, in contravention of that rule.

I find defendant's arguments unconvincing. I understand plaintiffs to be requesting class certification on the LAD claim under Rule 23, court notice to all class members to provide them with an opportunity to opt out, and a self-imposed limit on the definition of the LAD class to include only those people who have already joined as class members on the ADEA claim. This request differs in subtle but important ways from defendant's restatement of it. First, plaintiffs do not request that Rule 23 be revoked as an opt-in mechanism.

Second, by limiting possible membership on the state LAD claim to people already members of the class under the federal ADEA claim, plaintiffs appear to avoid any possible "pendent party" difficulties. *See, e.g., Aldinger,* 427 U.S. at 14-18, 96 S.Ct. at 2420-22.

As for the notice problem raised by defendant, I note that I am skeptical that the difference in court involvement between Rule 23 notice on the pendent claim and the notice I have authorized on the ADEA claim is properly characterized as a *jurisdictional* difference, such that questions of proper pendent jurisdiction are raised. Nevertheless, I do not believe I need to reach this particular question, because for separate reasons I intend to put off any issue of Rule 23 notice until a time when, if such notice is given at all, it should have no effect whatsoever on the composition of the ADEA class, and therefore should not trouble defendant.

Plaintiffs themselves desire to include no one else in the putative Rule 23 class on count 3 than is already included in the count-one ADEA class. Therefore, there is no analytical need for me to address the issues of class formation and notice on the LAD claim until after the membership in the ADEA class has been finalized. Given that no such need exists, I find it prudent to put off consideration of these issues until after membership in the ADEA class is set, for the following reasons. First, an informed decision on LAD class formation issues can best be reached after the identities of all possible class members are known. Such will be the case after membership in the ADEA class is finalized. Second, confusion among potential class members regarding the differences between opt-in and opt-out choices, and between notice from plaintiffs and notice from the court, can best be avoided by separating in time the ADEA notice and any Rule 23 notice which may eventually be required. I thus contemplate a schedule in which putative class members receive notice of the ADEA claim only, all timely consents are received by the court, the issue of "similar situations" is decided, and only then is the issue of Rule 23 certification on the LAD claim decided and, if

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



certification is granted, the issue of court notice to all Rule 23 class members is considered.

If defendant has any valid argument that Rule 23 notice on a pendent claim is unfair or impermissible when a companion ADEA claim is the subject of a different type of notice, that argument would be based on a concern that the Rule 23 notice might generate *413 more, or different, plaintiffs than the ADEA notice alone. I believe that the timing which I contemplate here will necessarily avoid any such differences between the ADEA class and any Rule 23 class which might eventually be certified. Thus, I believe that the timing contemplated will assure the validity of each separate act of notice, and of the court's retention of the state-law claim. For these reasons, defendant's motion to deny class certification of the LAD claim on pendent jurisdictional grounds is denied.

### 2. The State Contract Claim

Defendant argues that this court should refuse to exercise pendent jurisdiction over count four because the court lacks power to assert that jurisdiction, or alternatively because discretion warrants such refusal. The Magistrate found this argument persuasive.

[20] Count four states a claim for the violation of an implied contract of employment, made out in defendant's employment manual, establishing that defendant would fire employees for good cause only. In *Woolley v. Hoffmann-La Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257, *modified,* 101 N.J. 10, 499 A.2d 515 (1985), a case involving the same defendant as in the case at hand, and, according to plaintiffs, the same employment manual, the Supreme Court of New Jersey established the validity in New Jersey law of such claims under a theory of implied employment contracts. Plaintiffs now seek to apply *Woolley* to the employment decisions in this case allegedly based on age discrimination.

Defendant claims first that this court lacks the power to retain count four because it and the federal ADEA claim share no "common

nucleus of operative fact." *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138; *see Ambromovage,* 726 F.2d at 990. The parties agree that this question is to be decided by reference to the pleadings only. *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474, 478-79 (3d Cir.1979).

In this case, plaintiffs' federal ADEA claim turns on the facts of the February 4, 1985 RIF: how the termination and demotion decisions which comprised the February 4, 1985 RIF were made and whether they were affected by discriminatory intent or effect. The state contract claim turns on the same facts precisely, plus whatever additional facts are necessary to establish the exact contents of the employee manual/contract which applied to each plaintiff. See plaintiffs' amended complaint at paragraphs 24-30. I have no difficulty concluding that the ADEA claim and the state contract claim share a nucleus of operative fact sufficiently common to establish this court's jurisdictional power over the contract claim. *See, e.g., Studint v. La Salle Ice Cream Co.,* 623 F.Supp. 232, 234 (E.D.N.Y.1985) federal ADEA claim plus, *inter alia,* a state-law claim based on an employment contract); *Placos v. Cosmair, Inc.,* 517 F.Supp. 1287, 1289 (S.D.N.Y.1981) (federal ADEA claims plus, *inter alia,* state-law claim based on employment contracts); *Rechsteiner v. Madison Fund, Inc.,* 75 F.R.D. 499, 506 (D.Del.1977) (federal ADEA claim plus, *inter alia,* state-law claim based on alleged oral employment contract). I find the cases cited by defendant in support of their argument that no power exists to be either readily distinguishable on their facts, *see, e.g., PAAC v. Rizzo,* 502 F.2d 306, 307 (3d Cir.1974), *cert. denied,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1985); *Hales v. Winn-Dixie Stores, Inc.,* 500 F.2d 836 (4th Cir.1974), or unduly restrictive in their application of the "common nucleus" test, *see, e.g., Mason v. Richmond Motor Co.,* 625 F.Supp. 883 (E.D.Va.1986); *Watkins v. Milliken & Co.,* 613 F.Supp. 408 (W.D.N.C.1984).

[21] Defendant claims second that even if this court retains jurisdictional power over count four, it should decline to exercise that power for discretionary reasons. According to *Gibbs,* the discretion to decline an exercise of pendent



jurisdiction involves "considerations of judicial economy, convenience, and fairness to litigants," weighted by such concerns as the avoidance of "[n]eedless decisions of state law," the avoidance of federal adjudications in cases where "state issues substantially predominate," and the avoidance of "the likelihood of jury confusion in treating divergent *414 legal theories of relief." 383 U.S. at 726-27, 86 S.Ct. at 1139. *See Ambromovage,* 726 F.2d at 990-91 and note 53.

In the case at hand, it is quite clear to me that considerations of economy, convenience, and fairness all militate strongly in favor of keeping count four in this case. Plaintiffs seek to prove in part that the way in which they were fired or demoted was infected with age discrimination, in violation of federal statutes and private employment contracts. Defendant must put forth persuasive reasons indeed why I should exercise my discretion so as to bifurcate plaintiffs' contractual age discrimination claim from plaintiffs' federal statutory age discrimination claim, and force plaintiffs to present their basic age discrimination allegations twice, in two separate actions.

Defendant has failed to produce such reasons. I see no great danger that the retention of count four will damage federal-state comity through "needless" state-law decisions, *see Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. *Woolley* itself established the innovative principle that employee manuals can constitute enforceable employment contracts; what remains for courts in cases such as the one at hand is the task of applying settled state contract law to this new type of contract. Contrast *Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486, 1500 (6th Cir.1984) (finding "new state-law principles" or "novel" applications of old principles to be at stake); *Watkins,* 613 F.Supp. at 422 (neither state legislature nor state courts had yet recognized "implied contract" exception to at-will employment).

Nor do I see much of a threat of jury confusion. *Woolley* itself notes that issues concerning contract existence and interpretation may be for the court only. 99 N.J. at 307 and note 13, 491 A.2d 1257. And should issues on the contract claim require jury attention, any confusion which threatens to arise can be dealt with through jury instructions, the use of verdict interrogatories, or division of the trial into separate segments. *See, e.g., Benedetto v. Pepsi Cola Bottling Group,* Civil No. 86-2557, slip op. at 7 (D.N.J. January 5, 1987); *Placos,* 517 F.Supp. at 1289.

Nor do I discern any hint that state law will predominate in this action. The gravamen of plaintiffs' claims is age discrimination in the Operation Turnabout RIF. This is, of course, the heart of plaintiffs' federal claim. Plaintiffs claim a broad array of damages and equitable relief under the ADEA; the only remedies they seek which are peculiar to count four are punitive damages for shame and emotional distress. *See Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Whatever state-law contract issues do ultimately arise, I simply cannot foresee them predominating at either the liability or damages phases of this case.

For all these reasons, I refuse to employ my discretion to decline jurisdiction over count four. *See* generally *Lusardi,* 99 F.R.D. at 93-94; *Sussman,* 90 F.R.D. at 690.

## VI. CLASS CERTIFICATION AND THE STATE-LAW CLAIMS

I have earlier discussed how any Rule 23 class certification decision on count three is to be put off until after the composition of the count one class is finalized. For the same reasons, any Rule 23 class certification decision on count four should be put off to the same time.

## VII. DISCOVERY

[22] Discovery for plaintiffs has been stayed almost since the outset of this action, and has remained so for more than two years. As pointed out previously, defendant has had three months of discovery on the issue of the validity of the prior consents, and no other

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



discovery. Why a stay of any length, for either side, was ever appropriate is wholly unclear to me. Plaintiffs now apply to me for an order that discovery may go forward. If this application brings the stay before me on appeal from the Magistrate, I vacate it as clearly erroneous and contrary to law. If the application *415 is a new motion, made to me in the first instance, to allow discovery now that the pending motions are resolved, it is granted.

The parties may immediately begin any discovery now permitted by the federal and local rules. The parties deserve, if nothing else, a chance to test the strength of plaintiffs' claims and defendant's defenses through the mechanisms of discovery. The parties shall be ordered to report to my current Magistrate, the Hon. Stanley R. Chesler, at his earliest convenience, so that scheduling orders may be drawn and he may impose whatever pre-trial regulations he may see fit to impose, including expedited discovery, which are not in conflict with my findings today and which in his discretion follow the spirit of the projected pretrial schedule I have included as Appendix B of this opinion. In particular, the Magistrate may wish to consider expediting whatever discovery plaintiffs may need to conduct before resubmitting to me their request for the posting and publication of notice on defendant's premises. In no event shall my discovery findings in this part of the opinion supercede my earlier command that defendant proceed forthwith to comply with plaintiffs' request for discovery of the names and addresses of putative count- one class members.

## VII. CONCLUSION

In conclusion, I have considered all of Magistrate Haneke's recommendations and his discovery stay. I have for the most part rejected or modified his recommendations, and have ordered discovery to resume immediately. Specifically, I deny defendant's motion for dismissal of or summary judgment on plaintiffs' disparate impact claims, I grant plaintiffs' request for discovery against defendant of the names and addresses of

putative count-one class members; I grant plaintiffs' request for mailing notice to newly discovered class members, so long as the notice comes from plaintiffs or plaintiffs' counsel and bears the court's authorization; and I deny plaintiffs' request for posting and publishing notice on defendant's premises because that request is too vague. I put off any final decision on whether plaintiffs and those they wish to represent are similarly situated. I deny defendant's motion to invalidate the prior consents to join and send out corrective notice. I deny defendant's motions to refuse jurisdiction over counts three and four. I put off consideration of Rule 23 class certification on counts three and four. General discovery shall resume immediately, the parties shall see Magistrate Chesler at his earliest convenience for general pre-trial instructions, and defendant shall produce the requested names and addresses forthwith. I attach two appendices to this opinion. Appendix A contains the notice for mailing and Appendix B contains a projected pre-trial schedule embodying the effect of my decision today.

## APPENDIX A
### Notice for Mailing
### NOTICE
(Date)
FROM: (Plaintiffs or Plaintiffs' Counsel)
TO: Present and former employees of Hoffman-LaRoche, Inc. ("Roche" or "HLR"), between the ages of 40 to 70 who have been involuntarily terminated, laid off or demoted from employment pursuant to the staff reduction program of Roche implemented on or about February 4, 1985.
RE: Age Discrimination Law Suit filed against Roche

(1) INTRODUCTION. The purpose of this Notice is to inform you of the existence of a class action law suit in which you may be a member of the Plaintiff class, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit if you so desire.

(2) DESCRIPTION OF THE LAW SUIT. On May 1, 1985, Richard Sperling, Frederick

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



Hemsley, and Joseph Zelauskas brought this suit against Roche in the federal District Court for the District of New Jersey, alleging that they were discriminated against and involuntarily terminated **416** from employment because of their age, in violation of the federal Age Discrimination and Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD"). In particular, the plaintiffs have contended that a Roche staff reduction program instituted in February, 1985 discriminated, in the selection for termination and demotion, against certain employees over the age of 40. Plaintiffs seek back pay, forward pay, lost pension and other fringe benefits, money damages and, where appropriate, reinstatement to their former positions. Plaintiffs have also asserted claims for breach of employment contracts under New Jersey law. The law suit, which Roche is opposing, is proceeding through pre-trial stages.

(3) COMPOSITION OF THE AGE DISCRIMINATION CLASS. The three named plaintiffs seek to sue on behalf of themselves and also on behalf of other employees with whom they are similarly situated. Specifically, the plaintiffs seek to sue on behalf of any and all employees who were, at any time from on or about January 1, 1985 to date:

(a) over 40 but less than 70 years of age;

(b) employed by HLR at any of its locations nationwide in a non-union position or a position not subject to a collective bargaining agreement;

(c)(1) if an exempt employee (i) with an HLR salary grade level of 10 or above, or (ii) if below an HLR salary grade level of 10, with a base annual salary at or greater than the midpoint of such salary grade level, or (2) if a non-exempt employee, with a base annual salary of at least $20,000;

(d) involuntarily discharged, laid off, terminated, downgraded or demoted from employment by HLR:

(e) subjected to such adverse employment actions as described in (d) pursuant to or in connection with a staff reduction action and/or layoff implemented by HLR on or about

February 4, 1985.

(4) YOUR RIGHT TO PARTICIPATE IN THIS SUIT. If you fit the definition above, you may join this suit (that is, you may "opt in") provided that you cause to be filed a "Consent to Join" in the very near future. Consent to Join forms and information regarding the specific filing deadline are available from the sources listed at the end of this notice.

Your eligibility to file a Consent to Join is not affected by your previous filing or failure to file any charge or complaint of age discrimination with any federal, state or local agency.

Your eligibility to file a Consent to Join is not affected by any statute of limitations. Even if you file a Consent to Join, however, your continued right to participate in this suit may depend upon a later decision by the District Court that no statute of limitations has run against you. In addition, your continued right to participate may depend upon a later decision that you and the plaintiffs are similarly situated, in accordance with federal law.

(5) EFFECT OF JOINING THIS SUIT. If you choose to join this suit, you will be bound by the judgment whether it is favorable or unfavorable. While the suit is proceeding you may be required to provide information, sit for depositions, and testify in court. You will not be required to pay attorneys' fees directly. The plaintiffs' attorneys will receive a part of any money judgment entered in favor of the class.

(6) NO LEGAL EFFECT IN NOT JOINING THIS SUIT. If you choose not to join this suit, you will not be affected by the judgment, favorable or unfavorable. If you choose not to join this suit, you are free to file your own law suit.

(7) YOUR LEGAL REPRESENTATION IF YOU JOIN. If you choose to join this suit, your interest will be represented by the named plaintiffs through their attorneys, as counsel

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



for the class. The counsel for the class are:

Leonard N. Flamm, Esq.
Hockert & Flamm
880 Third Avenue
New York, New York 10022
(212) 752-3380

Ben H. Becker, Esq.
Schwartz, Tobia & Stanziale
22 Crestmont Road
Montclair, New Jersey 07042
(201) 746-6000

(8) FURTHER INFORMATION. Further information about this suit, the deadline *417 for filing a Consent to Join, and the availability of Consent to Join forms can be obtained by

(Plaintiffs provide instructions)
Signed,
(Plaintiffs or Plaintiffs' Counsel)

THIS NOTICE AND ITS CONTENTS HAS BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, HON. HAROLD A. ACKERMAN, JUDGE. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR OF ROCHE'S DEFENSES.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
RICHARD SPERLING, FREDERICK HEMSLEY: and JOSEPH ZELAUSKAS, individually and on behalf of others similarly situated, Plaintiffs, v.
HOFFMAN-LA ROCHE, INC., Defendant.
Civil Action No. 85-2138
CONSENT TO JOIN
(Pursuant to 29 USC § 216(b))
TO: THE CLERK OF THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

STATE OF:

COUNTY OF:

_____, being duly sworn, deposes and says:

(name)

1. I reside at _____. I was born on _____, and was over the age of forty (40) years on _____, the date on

which (check either a or b):

___ a. My employment with Hoffman-LaRoche ("Roche") was involuntarily terminated or I was laid off.

___ b. I was demoted to a lesser position at Roche. (Check either 2 or 3):

___ 2. As an exempt employee, by base salary level at the time of my termination was Grade ____. If Grade 10 or under, my salary ____ (was, was not) at or greater than the midpoint of the Grade.

___ 3. As a non-exempt employee, my base pay at termination was at least $20,000 per annum.

4. I understand this suit is being brought under the federal Age Discrimination in Employment Act. I have read and I understand the notice accompanying this Consent. As a former employee of Roche, I hereby consent, agree and opt-in to become a party plaintiff herein and to be bound by any settlement of this action or adjudication of the Court.

6. I hereby further authorize the named plaintiffs herein to retain their counsel of record or select new counsel, as they shall determine in their discretion, and I hereby further authorize such counsel to make such further decisions with respect to the conduct and handling of this action, including the settlement thereof, as they deem appropriate or necessary.

_____
(full signature)

_____
(type or print name)

Sworn and subscribed to before me this day

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



of, 1987.

_____

TO: (Plaintiffs provide instructions.)

APPENDIX B
Projected Pre-Trial Schedule

*Immediately:*
(1) Plaintiffs given discovery of names and
addresses.
(2) Resumption of normal discovery by both
sides on all issues generally.
*Upon completion of discovery of names and
addresses:*
Plaintiffs mail authorized notice, including
consent form. Deadline for all remaining
consents is 45 days from mailing. Plaintiffs
shall certify to court and defendant the date
of mailing.
*After deadline for all consents:*
Expedited discovery on "similarly situated"
issue, equitable tolling issue. Magistrate
Chesler shall, in setting expedited schedule,
take note of whatever **418** discovery
defendant has already had relevant to the
"similarly situated" issue.
*After expedited discovery above:*
Motions to court on "similarly situated"
issue, equitable tolling issue, class
certification of state-law claims.
*If class certification on state-law claims is granted:*

Mailing of opt-out notice to state-law claim
class members.

118 F.R.D. 392, 48 Fair Empl.Prac.Cas. (BNA)
990

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



VICENTE MARCHAN, *et al.*,          §
                                    §
                  Plaintiffs,       §
                                    §
*versus*                            §          CIVIL ACTION H-02-4167
                                    §
                                    §
TAQMEX, INCORPORATED, *et al.*,     §
                                    §
                  Defendants.       §

United States Courts
Southern District of Texas
ENTERED

APR 1 7 2003

Michael N. Milby, Clerk of Court

## Order

1.   There will be a 30-day period for the potential plaintiffs to mail their notices of consent. The plaintiff's counsel will accept the notices up to three days after the period elapses.

2.   Plaintiff's counsel will keep a log of receipts of the notices. For statute of limitations purposes, a claim will be considered filed on the date the plaintiff's counsel received it.

3.   At the end of the period, plaintiff's counsel will give a copy of the log to Taqmex and file the original with the court.

Signed April __/6___, 2003, at Houston, Texas.


Lynn N. Hughes
United States District Judge