

FILED

U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

NOV 2 5 2003

DAVID J. MALAND, CLERK
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JUNE BELT, on behalf of herself and on behalf of all others similarly situated, | § § § | CIVIL ACTION NO. 6:03-CV-73 |
| *Plaintiff* | § § § | |
| v. | § § | [COLLECTIVE ACTION] [JURY TRIAL DEMANDED] |
| (1) EMCARE, INC., (2) TEXAS EM-1 MEDICAL SERVICES, P.A. (3) ST. PAUL ERDOCS, P.A. | § § § § | |
| *Defendants* | § | JUDGE DAVIS |

## EMERGENCY MOTION FOR PROTECTIVE ORDER, SANCTIONS, AND CORRECTIVE NOTICE

### I. SUMMARY

Defendant EmCare, Inc. (EmCare) wrote an unauthorized letter, attached as Exhibit 1, to each of the potential class members in this case. In its letter, EmCare:

- Suggests the suit insults Physician Assistants and Nurse Practitioners by saying they are not "professionals";

- Misleads the reader as to the type of damages the plaintiffs can recover;

- Attempts to tap into deep rooted prejudices many medical personnel have against malpractice lawsuits by (1) equating this lawsuit to a medical malpractice lawsuit and (2) repeatedly referring to "plaintiff's lawyers" in a derogatory tenor;

- Suggests that a successful suit may have a negative impact on ongoing clinical operations by stating "It is unclear how the Court's rulings may impact clinical operations on a going forward basis."

- Misleads the reader into believing that the Department of Labor approves of EmCare's pay practices despite the fact that the Department of Labor determined EmCare's policy of paying by the hour rendered Belt non-exempt.



**EMERGENCY MOTION FOR PROTECTIVE ORDER,
SANCTIONS, AND CORRECTIVE NOTICE – Page 1**

In addition, EmCare's letter is an improper end run around this Court's decision to deny EmCare's request to have their counsel's contact information included in the notice by inviting employees to contact EmCare with any questions or information about "your duties and exempt status as a professional" and by inviting them to contact EmCare if they feel they are being retaliated against.

Plaintiff June Belt (Belt) seeks a protective order prohibiting EmCare, the other defendants, and their lawyers, from communicating with the potential class members employees regarding this lawsuit. Belt also seeks monetary and non-monetary sanctions (in the form of a corrective notice) to correct the damage done by EmCare's letter.

## II. OUR HISTORY

On February 25, 2003, Belt filed this collective action[1] to recover unpaid overtime wages owed to her and other similarly situated Nurse Practitioners (NPs) and Physician Assistants (PAs).[2] Less than three months after answering, EmCare sought to have this case dismissed on summary judgment grounds. *See* Docket # 31. This Court denied EmCare's motion for summary judgment from the bench on July 3, 2003. *See* Docket # 38.

At that hearing, the Court entered a briefing schedule which was to govern the timing for filing, and responding to, Plaintiff's Motion for Conditional Certification of a Collective Action and for Notice to Potential Class Members. However, the parties reached an agreement regarding conditional certification of a collective action and to the distribution of a court-approved notice to

---

[1]    As the Court is aware, the Fair Labor Standards Act (FLSA) provides for opt-in "collective actions" rather than Rule 23 class actions. 29 U.S.C. § 216(b). Would- be plaintiffs must affirmatively "opt-in" to the lawsuit by filing a "consent" in order to participate. See *infra*.

[2]    EmCare refers to both NPs and PAs as Mid-Level Practitioners (MLPs) and Plaintiff will do so here.

all hourly paid MLPs. The parties submitted a stipulation regarding these procedures on July 15, 2003. *See* Docket # 41.

Shortly thereafter, Belt asked for EmCare's input on the appropriate content of the notice to be sent to the potential class members. Those issues which could not be resolved were specifically addressed in a hearing before the Court. During the hearing, Plaintiff agreed to make many of the changes suggested by EmCare. However, Belt objected to the inclusion of defense counsel's contact information and any statement that potential plaintiffs should contact EmCare with any questions they might have. *See* Docket # 45. Significantly, the Court sustained Plaintiff's objections on these issues and precluded defense counsel from including their contact information, or a statement referring questions to EmCare personnel, in the notice. *See* Docket # 49 & # 50. However, Plaintiffs agreed that, and the Court permitted, EmCare could include its position in the court approved notice sent to the class. *Id.*

Despite the Court's assertion of control over the notice process, and on approximately the same date EmCare produced the names and addresses of the class members, EmCare sent an unauthorized letter to its current MLPs. Exhibit 1. EmCare sent this letter with no prior notice to either the Court or Plaintiffs' counsel. In its letter, EmCare misrepresents the purpose of this case, the damages recoverable under the law, suggests the case may damage EmCare's ability to continue onward as a going concern, and misleads the reader into believing the Department of Labor has approved EmCare's pay practices. For the reasons set forth below, EmCare's end run around this Court's rulings should not be condoned.

### III. LAW AND ARGUMENT

**1.    EmCare and EmCare's Improper Actions Warrant Restraint and Sanctions**

    *A.    District Courts Have an Important Role in the Notice Process*

Generally, under Federal Rule of Civil Procedure 23(c), the district court bears responsibility to direct the "best notice practicable" to class members and to safeguard those members from unauthorized, misleading communications from the parties or their counsel. *See Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 846 (2d Cir. 1980). In *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the United States Supreme Court held district courts have discretion, in appropriate cases, to implement § 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C.§ 216(b), by facilitating notice to potential class members. In so holding, the Supreme Court observed:

> Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. It follows that, once an [FLSA] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.

*Id.* at 170-71, 110 S.Ct. at 486, 107 L.Ed.2d at 488-89. As the *Sperling* Court noted, judicial oversight of the contents of the notice helps protect against misleading communications to potential class members because the court resolves any disputes about the contents of the notice prior to its distribution. *Sperling*, 493 U.S. at 171, 110 S.Ct. at 486-87, 107 L.Ed.2d at 488.

Early on in this case, EmCare itself repeatedly asserted that any communications with the class must be scrutinized to guard against the potential for "misrepresentations" to reach the class. *See* EmCare's Motion for Protective Order. Belt requested this Court facilitate the notice of the pendency of the action, and this request was granted. Belt submitted her proposed notice to

EmCare and ultimately made many of the revisions proposed by EmCare. EmCare even had an opportunity to present its views on the appropriate content of the notice to this Court. *See, e.g.,* Docket # 44 & # 46.

Despite the duty of this Court to oversee and ensure a fair, unbiased and neutral notification of class members, EmCare chose to unilaterally communicate with the potential class members regarding this action. Exhibit 1. EmCare's obvious intent is to deny the potential class members access to this Court, via misleading statements which would never have survived the Court's scrutiny. These actions are a blatant attempt to pressure current employees into foregoing their rights to join this lawsuit.

>   B.    *Unapproved and Misleading Communications with Class Members Warrant Protection and Sanctions*

"Unapproved notice to class members which are factually or legally incomplete lack objectivity and neutrality ... [and] will surely result in confusion and adversely affect the administration of justice." *Erhardt*, 629 F.2d at 846. Further, the solicitation of exclusions from a pending class action by a defendant constitutes a serious challenge to the authority of the Court to maintain control over communications with class members. *See* 3 Newberg on Class Actions § 15.19 (3d ed. 1992). "Unsupervised unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from these statements could well be irreparable." *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985) (citing *Zarate v. Younglove*, 86 F.R.D. 80. 90 (C.D. Cal. 1980)). Such conduct clearly warrants restraint.[3]

---

[3]    Since the United States Supreme Court's decision in *Gulf Oil Co. v. Bernard*, 452, U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), courts have tended to view requests for orders prohibiting contact with class members skeptically in light of possible First Amendment "prior restraint" issues. Nonetheless, such First Amendment concerns fall by the wayside when the speech to be protected is misleading and deceptive, as is the case with EmCare's actions.

In *Kleiner v. First National Bank of Atlanta*, a class of bank customers filed suit against defendant on various causes of action. Prior to the opt-out deadline, defendant began soliciting exclusions from the class from potential class members through a covert telephone campaign. Upon learning of defendant's solicitation campaign, the district court enjoined defendants from further contacts with potential class members. Defendant's solicitation campaign was found to violate the district court's class notice order, as well as the Model Rules of Professional Conduct regarding contact with persons known to be represented by counsel.

In redressing defendant's actions, the district court imposed sanctions, which included a monetary penalty against defendant's attorneys in the amount of $50,000, disqualification of counsel from participating in further proceedings in the litigation, and an assessment against defendant of the class attorneys's fees and costs in the approximate amount of $60,000. Finally, the district court ruled that the exclusion requests completed by class members would be voidable following entry of judgment. In upholding the district court's decision, the appellate court observed that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendant's interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests." *Kleiner*, 751 F.2d at 1202. However, a defendant's campaign to dissuade class members from participating in a class action "is a classic example of a major potential abuse which necessitates restraint." *Id.* at 1206.

---

*See e.g., Kleiner v. First Nat'l Bank of Atlanta,* 751 F.2d 1193, 1204 (11th Cir. 1985) ("As a threshold matter, untruthful or misleading speech has no claim on first amendement immunity. Commercial speech merits consitutional safeguards only to the extent it is accurate ... No constitutional objection thus inheres in banning 'forms of [commercial] communications more likely to deceive the public than to inform it ...'" (citations omitted)); *In re Asbestos School Litigation*, 115 F.R.D. 22, 25 (E.D.Penn. 1987) ("Commercial speech must concern lawful activity and not be misleading for it to be constitutionally protected. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 68, 103 S.Ct. 2875, 2881, 77 L.Ed.2d 469 (1983)."), *order vacated in part,* 842 F.2d 671 (3d Cir. 1988); *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976)(holding the government may control commercial speech that is deceptive or misleading in the commercial context).

Indeed, courts have readily sanctioned defendants that have engaged in unsupervised contacts with class members. *See Erhardt*, 629 F.2d at 845 (enjoining defendants from further communications with class members; ordering defendants to provide new class notice advising class members that previous decisions to opt out were voidable; and imposing monetary sanctions); *Impervious Paint Industries, Inc. v. Ashland Oil*, 508 F.Supp. 720, 723-4 (W.D.Ky. 1981) (imposing injunction upon defendant's attorneys prohibiting contact with class members and restoring class members that opted out to the class); *In Re Federal Skywalk Cases*, 97 F.R.D. 370, 377 (W.D. Mo. 1983)(same); *Kleiner*, 751 F.2d at 1299 (same).[4]

This principal holds true in FLSA collective actions as well. For example, in *Davis, et al. v. Metro Networks Communications, Inc.*, the undersigned represented a group of repairmen who were improperly classified by the defendant as exempt from overtime. *Davis, et al. v. Metro Networks Communications, Inc.*, H-99-1128 (S.D.Tex.)(Judge Lake). While the issue of notice was under consideration, the defendant attempted to settle with the potential class members for less than the full amount owed under the FLSA. Judge Johnson found that the entry of a Protective Order was justified under the circumstances and prohibited the defendant from, among other thing, communicating "directly or indirectly, with any current or former . . . employees" regarding the issues in the lawsuit. *See* Judge Johnson's Order attached as Exhibit 2, * 5.

Similarly, in *O'Brien v. Encotech Construction Services, Inc.*, the defendant sent "all employees potentially part of the putative class a letter with an attached Release and an unsigned check . . . ." *O'Brien v. Encotech Construction Services, Inc.*, 00-1133 (N.D. Ill. October 11,

---

[4]    Even in cases where courts have refrained from imposing complete restraints on defendant communications with class members, the courts have recognized that misleading communications or communications designed to influence a class member's decision to participate in the lawsuit are to be prohibited. *See e.g., Rankin v. Board of Ed. Of the Wichita Pub. Schs., U.S.D.259,* 174 F.R.D. 695, 697 (D. Kan. 1997); *In re Potash Antitrust Litigation*, 896 F.Supp. 916, 920 (D. Minn. 1995).

2000)(unpublished), attached as Exhibit 3, at *1. As in this case, the defendant did not notify plaintiffs' counsel or the Court prior to sending the letter. *Id.* In restraining the defendant, the Judge noted that the defendant had "seriously threatened the court's ability to handle this case in a fair and efficient manner" and had injected "chaos into what should be an orderly process." *Id,* *2. The Court then prohibited the defendant from seeking additional releases. *Id.,* *3. The Court later voided the releases and ordered that corrective notice be issued. *O'Brien v. Encotech Construction Services, Inc,* 183 F.Supp.2d 1047, 1052 (N.D.Ill. 2002).

As set forth below, EmCare's actions represent a clear undermining and defiance of the authority of this Court to ensure a fair and unbiased notice process in this action. Accordingly, the circumstances of this case warrant the issuance of a protective order and corrective notice. *See Haffer v. Temple University,* 115 F.R.D. 506, 512 (E.D. Pa. 1987) (holding that courts routinely issue restraining orders after parties initiate improper communications with class members); *accord Hampton Hardware, Inc. v. Cotter & Company, Inc.,* 156 F.R.D. 630 (N.D. Tex. 1994).

C.    *EmCare's Statements are Unauthorized and Misleading*

EmCare's letter contains numerous misrepresentations regarding this lawsuit. For example, EmCare opens its missive by stating that the suit is an attack on the status of MLPs as "professionals" in the generic sense of the word, rather than the limited sense used under the FLSA. *See* Ex. 1, p. 1. EmCare clearly hopes to create the mis-impression that this suit is designed to denigrate the MLPs professionally, rather than to better their working conditions.

EmCare also misstates the damages available to potential plaintiffs. For example, EmCare suggests that all Plaintiff is seeking to recover is "overtime pay for hours she worked in excess of forty in a workweek." *See* Ex. 1, p. 1, ¶ 5. EmCare does not mention either liquidated damages, attorneys fees or costs which Plaintiff seeks to recover for herself and other similarly

situated employees. EmCare goes on to suggest that even if the Plaintiff prevails, opt-in plaintiffs will only receive "some money for past overtime worked" which will "presumably" be reduced by a payment to "the Plaintiff's attorney . . .." *See* Ex. 1, p. 2, ¶ 1. Given that overtime pay, liquidated damages, attorneys' fees and costs are all mandatory unless *EmCare* can meet its *affirmative defenses* on these issues, EmCare's assertions are a blatant distortion of the remedies available to opt-in plaintiffs.

In a particularly pernicious move, EmCare attempts to tap into deep rooted prejudices many medical personnel have against medical malpractice lawsuits by (1) equating this lawsuit to a medical malpractice lawsuit and (2) repeatedly referring to "Plaintiff's lawyer" in a derogatory tenor. *See, e.g.*, Ex. 1, p. 2, ¶ 1 ("This case is not unlike medical malpractice lawsuits you may be familiar with . . ."). This Court is well aware that this case is quite unlike a medical malpractice lawsuit,[5] and EmCare's reference to these types of suits has only one purpose – to prejudice the potential plaintiffs against this case and to dissuade these medical personnel from participating in this lawsuit.

But EmCare does not stop there. EmCare goes on to suggest that joining the lawsuit may have a negative impact on ongoing clinical operations by stating "It is unclear how the Court's rulings may impact clinical operations on a going forward basis." *See* Ex. 1, p. 2, ¶ 1. Thus, opt-in plaintiffs are left with the impression that a successful lawsuit may leave some or all of the MLPs in the unemployment line. This is a classic example of the type of coercive influence an employer can wield.

---

[5]     For example, unlike a medical malpractice action, this case is not an attack on the performance of any medical provider, but is rather on behalf of medical providers. Unlike a medical malpractice action, the burden of proof on many issues in an FLSA case is on the defendant, not the plaintiff or opt-in plaintiffs. Unlike a medical malpractice action, the cause of action in this case is statutory based on federal laws meant to protect (not to threaten) MLPs.

Next, EmCare misleads potential class members by suggesting that the Department of Labor approves of the manner in which EmCare pays its MLPs. (Ex. 1, p. 2, ¶ 3). Of course, EmCare has neglected to provide any evidence of the Department of Labor's approval of EmCare's actions. This is likely because, as the Court is aware, the Department of Labor determined that Belt was non-exempt because she was paid on an hourly basis. Thus, EmCare's statements reek of bad faith given that the Department of Labor had already determined that EmCare's pay practices violated the FLSA.

These statements, and the format they were made in, are all the more egregious because EmCare had the opportunity to include its views of the case in the Court-approved notice. Perhaps mindful that the Court would review these statements, and certainly aware that the Court would never have approved these inflammatory and misleading statements, EmCare instead chose to make these statements *ex parte*, without notice to the Court or to Plaintiff's counsel. At best, EmCare's statements constitute the type of misinformation and inflammatory innuendo that warrant restraint and remedial sanctions.

Moreover, EmCare's letter is an improper end run around this Court's decision to deny EmCare's request to have their counsel's contact information included in the notice by inviting employees to contact EmCare with any questions or information about "your duties and exempt status as a professional" and by inviting them to contact EmCare if they feel they are being retaliated against. Apparently, EmCare believes that if it loses in Court, it is free to use "self-help" remedies to achieve its goal of spreading misinformation to the class.

As a result of these actions, the class has been severely tainted and infected with false perceptions conveyed by EmCare. Rectification of this conduct, if at all possible, will take considerable time and effort, which will work to the ultimate detriment of class members whose

claims are not made, and as to which the statute of limitations may not be tolled, until they file a written consent to "opt-in" to this action. As noted in *Waldo v. Lakeshore Estates, Inc.*, 433 F.Supp. 782, 790-791 (E.D.La. 1977):

> Unapproved communications to class members that misrepresent the status or effect of the pending action also have an obvious potential for confusion and/or adversely affecting the administration of justice. Particularly should such communications seem vested with official authority, there arises not only the risk of subsequent disenchantment with the judicial process, but also the danger that individuals will be induced to act to their detriment in reliance upon misinformation and/or falsehoods. Thus entailed in this abuse is something more than a general interest in orderly process which is shared by the court and the public; there is the added interest of the individual in achieving a full and fair judicial remedy. To this extent, it is important to recognize the need for restricting free expression where such presents a "reasonable likelihood" of endangering the individual's constitutional guarantee of a fair trial. (Footnote omitted).

Consequently, EmCare's actions have not only caused injury to Belt and the class she seeks to represent, but also have severely endangered this Court's ability to grant pervasive and meaningful relief following a trial on the merits.

D.    *The Law Does not Allow EmCare to Mislead the Class*

EmCare will likely suggest that the Court cannot act to restrain EmCare from communicating with its own employees. However, as noted above, the seminal case governing collective actions held that "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties" because of the potential for abuse. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. at 171; 110 S.Ct. at 487. The potential for "misleading communications" was specifically identified by the Supreme Court as an abuse to be guarded against by the District Court. *Id.* The Court went on to suggest that misleading communications could be "countered by court-authorized notice." *Id.*

The Supreme Court has also noted the heightened potential for abuse in the employer-employee context. In so doing, the Supreme Court cautioned that any evaluation of communications in the employer-employee context "must take into account the economic dependence of the employees on their employers, and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." *NLRB v. Gissel Packing Co.*, 23 L.Ed.2d 547, 617-18 (1969). The employer-employee relationship is different from that involving an independent voter who "may be freer to listen more objectively . . ." *Id.* Thus, such communications must be monitored due to the potential for coercion. *Id.*; *see also, Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999)("Coca-Cola has not given the Court any reason to suspect that it will attempt to mislead its employees and coerce them into non-participation in this case. But simple reality suggests the danger of coercion is real and justifies the imposition of limitations on Coca-Cola's communications with potential class members."). Any suggestion that this Court cannot exercise is power to control this collective action by preventing EmCare from issuing misleading communications is without merit.

## CONCLUSION

This Court asserted control over the class notification process. Despite this Court's duty and authority to protect against misleading statements, EmCare issued an unauthorized and inaccurate letter to the putative class. This letter was clearly designed to undermine the broad remedial goals of the FLSA by misleading the class members as to the existence of their rights and pressuring them into foregoing these rights. These actions cannot be condoned.

Accordingly, a protective order, prohibiting further contacts or communications by EmCare, EmCare's staff, and/or EmCare's lawyers with the Potential Class Members regarding this lawsuit without prior court approval must be issued. Further, remedial steps should be taken to

counteract the devastating impact on the court-approved task of informing the potential class members of their rights. These remedial steps should include an appropriate monetary sanction along with a corrective notice to the class.

Respectfully submitted,

**JONES & ASSOCIATES, P.C.**

James A. Jones (TX Bar No. 10908300)
Christopher L. Green (TX Bar No. 24032372)
5015 Tracy, Suite 100
Dallas, Texas 75205
(214) 219-3456
(214) 219-9309 (fax)

**BRUCKNER BURCH. P.L.L.C.**

Richard J. Burch
State Bar No. 24001807
5847 San Felipe # 3900
Houston, Texas 77057
(713) 877-8788 (Telephone)
(713) 877-8065 (Telecopier)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

I conferred with opposing counsel via telephone, and in writing, on November 21, 2003, regarding the substance of this motion. Defendant opposes this Motion. Thus, this Motion is submitted to the Court for consideration.

Richard J. Burch

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was served on the following counsel for Defendants on November 24, 2003, by facsimile and First-Class United States Mail in accordance with FED. R. CIV. P. 5:

Kim A. Lucas
Kyle & Mathis, L.L.P.
8300 Douglas Ave., Suite 700
Dallas, Texas 75225

**ATTORNEYS FOR EMCARE, INC.**

John T. Cox, III
Lynn Tillotson & Pinker, LLP
750 N. St. Paul St., Suite 1400
Dallas, Texas 75201

**ATTORNEYS FOR ST. PAUL ER DOCS**

Ronald E. Manthey
Ann Marie Painter
Littler Mendelson
2001 Ross Ave
Suite 2600, LB 116
Dallas, Texas 75201

**ATTORNEYS FOR TEXAS EM-I**

Richard J. Burch



*Emergency Medicine. Customer Driven.*

The following information is provided to you by EmCare, Inc. on behalf of your employer or the company with which you contract. EmCare, Inc. and its subsidiaries provide management services to these companies pursuant to a series of contracts. The purpose of this communication is to respond to certain questions you may have concerning a lawsuit entitled June Belt v. EmCare, Inc., et al.

**I understand EmCare, Inc. and Texas EM-I Medical Services, P.A. have recently been sued by a nurse practitioner for misclassifying her as exempt from overtime. What is the scope of the suit?**

On February 25, 2003, a nurse practitioner who formerly worked in an emergency department supported by Texas EM-I Medical Services, P.A., EmCare of Texas, Inc. and EmCare, Inc. filed suit against these three entities. She alleges that she was not properly classified as exempt from overtime compensation because she was not employed in a bona fide professional position, or in the alternative, because she was paid on an hourly basis. At present, this suit seeks to include all nurse practitioners and physician assistants who have worked in hospitals associated with EmCare owned or managed companies since February 25, 2000.

We believe that the positions are exempt as professionals and that the claims in this suit do not give appropriate consideration to the nature of work performed by nurse practitioners and physician assistants and the amount of independence, discretion, and professional judgment they exercise on a daily basis.

**What is EmCare, Inc.'s position about these nurse practitioners and physician assistants?**

EmCare, as a management company, believes that the independent and professional work performed by licensed and trained nurse practitioners and physician assistants is the type of work required of an exempt employee. Nurse practitioners and physician assistants not only engage in professional activities and functions in their jobs, but they also exercise significant discretion and independent judgment in assessing, diagnosing and treating patients. Companies under management agreements with EmCare treat these employees like other exempt professionals and compensate them in a manner commensurate with the level of responsibility of their positions.

**What exactly is this nurse practitioner suing to recover?**

In general, the Plaintiff nurse practitioner is seeking to recover overtime pay for the hours she worked in excess of 40 in a workweek. She is also asking the Court to order that the nurse practitioners and physician assistants within the scope of the lawsuit be reclassified as nonexempt employees.



**What happens if the Plaintiff nurse practitioner wins her suit?**

This case is not unlike the medical malpractice lawsuits you may be familiar with, in that Ms. Belt has hired a plaintiff's lawyer to ask a court to award her money. Ms. Belt and her lawyer would like you to join as a plaintiff in their lawsuit if you are eligible to do so. If Ms. Belt and any other individuals who join as plaintiffs win, the Court may award Ms. Belt and the plaintiffs some money for past overtime worked. Some portion of the Court's award presumably will be paid to the Plaintiff's attorney as fees. It is unclear how the Court's rulings may impact clinical operations on a going forward basis.

**What happens if the Plaintiff loses her suit?**

Should the Court rule against the Plaintiff, any claims for overtime pay by a nurse practitioner or physician assistant joining the suit will be barred and no other changes to exempt status, etc. will be necessary.

**How do others treat the exempt status of their nurse practitioners and physician assistants?**

It is our understanding from an informal and limited survey that nurse practitioners and physician assistants generally are treated as exempt professionals by others in the health care industry. This is consistent with the Department of Labor's general characterization of nurse practitioners and physician assistants as professional employees. Plaintiff, of course, contests EmCare, Inc.'s interpretation. EmCare and Texas EM-I intend to vigorously defend the classification of the Plaintiff and all nurse practitioners and physician assistants as exempt.

**I am a Nurse Practitioner or Physician Assistant. Can I join in the suit?**

You will receive a notice describing the suit and a consent form that allows you to join the suit. Ultimately, however, it will be up to the Court to determine who will be a party to the suit.

**NO RETALIATION.**

If you are a physician assistant or a nurse practitioner, the decision to sign the consent form or not is entirely up to you. The Plaintiff may or may not prevail with regard to her claims. Regardless, the law prohibits retaliation of any kind against individuals who elect to join and do participate in the suit. Should you feel that you are being retaliated against for your decision to participate or not participate in this suit, please feel free to contact an EmCare representative. Should you elect to join the suit, you will be represented by the Plaintiff's attorney, who will advise you about this particular lawsuit, but should you have questions or information about your duties and exempt status as a professional, you can always raise this issue with your Employer or EmCare.

**This is for information only. The Court has not reviewed this communication.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**SEP 0 9 1999**

**Michael N. Milby, Clerk of Court**

| | | |
|---|---|---|
| MARK DAVIS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-99-1128 |
| | § | |
| METRO NETWORKS, INC. | § | |
| | § | |
| Defendant. | § | |

## PROTECTIVE ORDER

Plaintiffs, on behalf of themselves and others, filed this suit pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), for unpaid overtime compensation for hours worked in excess of forty hours per week. Before the parties began the class notification process, the court gave the parties an open-ended time period in which to exchange documents and attempt to pursue a settlement on behalf of themselves and similarly situated employees.[1]

During this negotiation period, Plaintiffs allege that Defendants are attempting to settle with potential class members on an individual basis for less than the law would require, specifically, offering one hour "comp" time for one hour overtime. Plaintiffs allege that the Defendant is failing to inform these potential class members of their legal entitlement to time and a half wages for hours worked over forty per week and liquidated damages. Plaintiffs argue that Defendant's attempt to settle these

---

[1] By separate order, that time period will now expire on September 24, 1999. See Docket Entry # 24.

*26*



claims outside the present suit and for less than the full amount owing is improper, citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946). Plaintiffs seek an order prohibiting such conduct while settlement negotiations are being pursued and before the potential class of plaintiffs can be advised of their rights with respect to their possible claims. Defendant argues that it is not prohibited from settling potential claims with its employees on any mutually agreed terms because those employees are not yet parties to the suit.

Plaintiffs' argument more correctly states the law and the spirit of the court's instructions. In Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704 (1945), the Supreme Court found that waivers of private rights guaranteed by the FLSA were void as against the public policies that the FSLA were intended to further. The Court noted that the mandatory language of section 207(a)(1) of the FSLA required that an employer shall not employ a worker longer than the specified time without payment of overtime compensation.

In O'Neil, the Supreme Court limited as the issue before it "whether in the absence of a bona fide dispute between the parties as to liability" an employee could waive the liquidated damages to which the statute entitled him. O'Neil, 324 U.S. at 704. The Court expressly refused to to decide "what limitation, if any . . . the Act places on the validity of agreements between an employer and employee to settle claims arising under the Act if the

2

settlement is made as a result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement." Id. at 714.

In D.A. Schulte v. Gangi, 328 U.S. 108 (1946), an employer disputed whether its employees were covered by FLSA, and therefore refused to pay the claimed overtime. When the employees threatened legal action, the employer paid the claimed overtime wages in exchange for waivers from the employees of "any other or further obligations in connection [with FLSA]." Gangi, 328 U.S. at 112, n. 5. The employees later filed suit to recover liquidated damages under section 216(b) of FLSA. The employer argued that the waivers were obtained in settlement of a bona fide dispute as to FLSA coverage and therefore could be less than the amount required by statute. Gangi, 328 U.S. at 112, 66 S.Ct. at 927.

In determining that the waivers were invalid, the Court stated that "the remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage." Gangi, 328 U.S. at 114, 66 S.Ct. at 928. The Court further stated that "the purpose of [FLSA], which ... was to secure for the lowest paid segment of the nation's workers a subsistence wage, leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage." Gangi, 328 U.S. at 116, 66 S.Ct. at 929.

In Gangi, the Court held that where the only bona fide dispute concerned whether the employer was covered by the FLSA, the

employee was not bound to his or her compromise for less than the statutory liquidated reparation. The Court reasoned that in the absence of any dispute other than coverage, an employer covered by the Act should not be able to escape its statutory obligation on the theory that coverage was not altogether clear. The Court noted that it was not passing on the quite different question whether a covered employer could enter into a settlement with its employees where a bona fide dispute existed as to liability or amount.

The court has not yet determined whether any plaintiff or potential plaintiff is covered by the FSLA or was properly considered "exempt" from its provisions. However, in light of the strong public policy considerations evident in the mandatory language of the statute, it appears that permitting an employer to possibly circumvent its statutory liability by allowing it to compromise claims before its employees can be adequately informed of their options cannot be condoned by the court. The court has given the parties time within which to resolve all employee-class notice issues, not simply time to resolve the named plaintiffs' claims. Accordingly, the court finds that Plaintiffs' motion for a protective order is well-taken.

It is therefore ORDERED:

1. Neither Plaintiffs nor Defendant shall retaliate against, or threaten any Plaintiff or potential Plaintiff with retaliation of any type because of this lawsuit or for having any involvement in this lawsuit.

4

2.  Defendant shall not communicate, directly or indirectly, with any current or former Engineering Department employees about any matters which touch or concern:

    a.  Settlement of outstanding wage claims or unpaid compensation for time worked;

    b.  The number of hours the employee believes he/she is owed;

    c.  Payment for unpaid overtime or "comp time."

3.  This Order shall not restrict Defendant from discussing with any current employee matters that arise in the normal course of business.

    SIGNED in Houston, Texas, this ___ day of ____ 1999.

              NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

OCT 1 1 2000

ROBERT O'BRIEN, individually and on behalf )
of a class of employees similarly situated )
                                   )
                Plaintiff, )
                                   )
     v.                                   )      No. 00 C 1133
                                   )
ENCOTECH CONSTRUCTIONS SERVICES, )
INC., and HOWARD FRANK, )
                                   )
               Defendants. )

## ORDER

     This case under the Fair Labor Standards Act was filed on February 25, 2000. On May 16, plaintiff moved for class certification. A briefing schedule was set. On the date defendant's response to the motion was due, defendant moved for an extension of time to respond in order that the parties could attempt to settle the case. The case was referred to Magistrate Judge Nolan for a settlement conference.

     On September 21, the magistrate judge sent the case back to the district court, indicating that settlement efforts had failed. On September 27, defendant, with no notice to plaintiff or the court, sent all employees potentially part of the putative class a letter with an attached Release and an unsigned check, informing the employee that if he or she signed the Release, the defendant would remit to the employee the amount of money specified in the unsigned check. Defendant's letter describes the pending lawsuit as follows: "It has come to our attention that there has been a claim that some employees have not been paid properly for travel to the day's first job site and from the day's last job site. We believe that Encotech has fairly and properly

1



compensated employees for all hours worked. Nevertheless, we want to be sure that all employees are satisfied with their experience at Encotech. We therefore have decided to offer you some additional compensation . . . ." The Release purports to relinquish "any right to sue or be any part of any suit for back wages under [a number of listed laws including the Fair Labor Standards Act and the Illinois Minimum Wage Law]. The Release states that if it is held invalid, the employee "will tender back to the Company the payment made in consideration for this Release."

Defendant has done more than simply attempt to settle with individual members of the potential plaintiff class. Defendant has sent out a notice describing the dispute to all of its current employees who might be part of the potential class. As far as this court is concerned, this is essentially class notice. The district court has the authority to intervene in the notice process in Fair Labor Standards Act cases to make sure that notice provided to potential class members is accurate and timely so that the process of joining parties to the action is fair, orderly and sensible. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Woods v. New York Life Insurance Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Defendant's conduct, in unilaterally soliciting releases, with no notice to plaintiff's counsel or the court, seriously threatens the court's ability to handle this case in a fair and efficient manner. Defendant is seeking to have members of the putative class relinquish rights they don't know they have, the effect of which will be to plunge this court into collateral proceedings regarding the enforceability of these waivers. There is no justification for injecting chaos into what should be an orderly process. At the minimum, defense counsel should have provided plaintiff's counsel and the court with notice of the communication defendant sought to distribute concerning this action. *See Woods, supra* at 580.

2

Defendant is prohibited from seeking or accepting further releases until the court has been given an opportunity to assess the fairness of the notice accompanying the releases.

ENTER:

_____

JOAN B. GOTTSCHALL
United States District Judge

DATED:    October 6, 2000

3