FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG

DAVID J. MALAND, CLERK

DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **JUNE BELT,** *et al.* | § | **CIVIL ACTION NO. 6:03-CV-73** |
| | § | |
| *Plaintiffs* | § | |
| | § | **[COLLECTIVE ACTION]** |
| **v.** | § | |
| | § | |
| **(1) EMCARE, INC.,** | § | |
| **(2) TEXAS EM-1 MEDICAL SERVICES, P.A.** | § | **[JURY TRIAL DEMANDED]** |
| **(3) ST. PAUL ERDOCS, P.A.** | § | |
| | § | |
| *Defendants* | § | **JUDGE DAVIS** |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**JONES & ASSOCIATES, P.C.**

James A. Jones (TX Bar No. 10908300)
Christopher L. Green (TX Bar No. 24032372)
5015 Tracy, Suite 100
Dallas, Texas 75205
(214) 219-3456
(214) 219-9309 (fax)

**BRUCKNER BURCH PLLC**

Richard J. Burch
State Bar No. 24001807
5847 San Felipe # 3900
Houston, Texas 77057
(713) 877-8788 (Telephone)
(713) 877-8065 (Telecopier)

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

I.  SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  THE SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  The General Statutory Framework . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1.  *The FLSA Requires the Payment of Overtime Wages to All Non-Exempt Employees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2.  *The Professional Exemption* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        2.  *The Exception to the Salary Test Created for Doctors and Lawyers* . . . . 4

    B.  The Proper Legal Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.  For Summary Judgment Purposes, This Court Need Only Address the Second Stage of the *Auer* Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D.  The DOL Has Consistently Reused to Extend the Exception to the Salary Test Beyond "Doctors" and Has Consistently Held that the Exception Does Not Apply to MLP's . . . . . . . . . . . . . . . . . . . . 12

        1.  *The History of the Salary Basis Test for Professionals* . . . . . . . . . . . . . . 12

        2.  *The Limited Exception to the Salary Basis Test for "Doctors and Lawyers"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        3.  *The Department Has Consistently Rejected Efforts to Expand the Exception to the Salary Basis Test Beyond the "Original, Limited Number of Professions that Were Not Subject to the Salary Test."* . . . . . 14

            a.  *In 1949, the Department of Labor Conducted Hearings and Determined: 1) The Salary Basis Test Should Remain Intact; and 2) The Exception Should Continue to Be Limited to "Doctors and Lawyers."* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            b.  *In 1949, the Department Noted That the Clause "Or Any of Their Branches" Has Always Been Limited to "Doctors and Lawyers"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

c.     *In 1949, the Department Adopted § 541.314, an Interpretive Regulation,  Which Expressly Limited the Scope of § 541.3 to "the Traditional Professions of Law and Medicine and Not to Employees in Related Professions Which Merely Service the Professions of Law or Medicine."* . . . . . . . . . . . . . . 16

d.     *In 1958, the Department Once Again Refused to Expand to Scope of the Doctor and Lawyers Exception.* . . . . . . 17

e.     *The Department of Labor Revised the "Physician and Lawyer" Exception in 1967, but did Not Expand the Definition of Physician and Lawyers Beyond Their Original Scope.* . . . . . . 17

f.     *In 1973, the DOL Revised § 541.314, Once Again Expressly Limiting the Scope of § 541.3 to "the Traditional Professions of Law and Medicine and Not to Employees in Related Professions Which Merely Service the Professions of Law or Medicine."* . . . . . . . . . . . . . . . . . . . . . 18

     1)     Because EmCare admits MLP's are not physicians, lawyers or teachers, the "Exception for Physicians, Lawyers and Teachers" does not apply. . . . . . . . . . . . . . 18

     2)     The language of § 541.314(a) makes it clear that only those who 1) hold valid licenses or certificates permitting the practice of medicine; and 2) are actually engaged in practicing the profession of medicine, are exempt from the salary basis test . . . . . . . . . . . . . . . . . . . . . . . . 18

     3)     Since Mid-Levels did not exist at the time the "Doctor and Lawyer" exception was created, they cannot be members of the "traditional profession of medicine" . . . 20

     4)     Professions which are related to the profession of medicine Are NOT within the scope of 29 C.F.R. § 541.314 . . . . . . . . . . . . . . . . . . . . . . . . . 21

     5)     The examples of "physicians and other practitioners" provided by the Department of Labor are all "Doctors" within the common sense of the word. . . . . . . . . . . . . . 21

     6)     Because 29 C.F.R. § 541.314(c) excludes medical occupations which service the medical profession

(such as pharmacists, nurses & psychologists),
the salary basis exception for physicians
does not apply to Mid-Levels. . . . . . . . . . . . . . . . . . . . . 22

g.   *The Department of Labor Specifically Addressed the
Overtime Status of Physician Assistants in 1974 and 1994
and Determined that a Salary was Required for Exemption*. . . . 24

h.   *Between 2001 and 2003, the Department of Labor Has,
on at Least Three Occasions informed EmCare that
its Practice of Paying Mid-Levels on an Hourly Basis without
Paying Them Overtime violates the FLSA* . . . . . . . . . . . . . . . . 24

i.   *As Recently as April 2004, the Department Has
Specifically  Rejected Proposals to Expand the "Doctor and
Lawyer" Exception Based on Increases in the "Educational
Requirements and Professional Standards" of Medical
Professionals other Than Doctors* . . . . . . . . . . . . . . . . . . . . . . 25

j.   *In April 2004, the Department Specifically Dealt with
Physician Assistants and Determined Not to Include Them
Within the Salary Basis Exception* . . . . . . . . . . . . . . . . . . . . . . 27

4.   *Case Law Interpreting The Doctor and Lawyer Exception Confirms
its Narrow Parameters* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

E.   **Because Mid-Levels are Non-Exempt Under the FLSA, They are Non-
Exempt Under Illinois State Law** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

F.   **Mid-Levels Are Entitled to Overtime Under Washington State Law** . . . . . . 29

IV. **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

iii

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | | |
|---|---|---|---|
| JUNE BELT, *et al.* | | § | CIVIL ACTION NO. 6:03-CV-73 |
| | *Plaintiffs,* | § | |
| | | § | [COLLECTIVE ACTION] |
| v. | | § | [JURY TRIAL DEMANDED] |
| EMCARE, INC., *et al.* | | § | |
| | *Defendants.* | § | JUDGE DAVIS |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This collective action involves 79 MLP's (20 Nurse Practitioners and 59 Physician Assistants) in 20 states[1] who were employed by EmCare and EmCare-related entities, who were paid on an hourly basis, who regularly worked in excess of forty hours in a workweek, and who were not paid overtime compensation as required by the Fair Labor Standards Act. Plaintiff hereby moves for partial summary judgment on the following issues:

> 1)  that the exception to the salary basis requirement for physicians contained in 29.U.S.C. § 541.3(e) does not apply to Nurse Practitioners and Physician Assistants, and that, therefore, Nurse Practitioners and Physician Assistants who are paid on an hourly basis do not meet the salary-basis test for the Professional exemption under the Fair Labor Standards Act, and thus must be paid overtime for all hours worked in excess of 40 hours in a workweek;

> 2)    that the Illinois Plaintiffs are entitled to the payment of overtime for all hours worked in excess of 40 hours in a workweek under Illinois' Minimum Wage Law; and

> 3)    that the Washington Plaintiff is entitled to the payment of overtime for all hours worked in excess of 40 hours in a workweek under the Wasshington Minimum Wage Act.

---

[1]    The 20 states are AZ, CT, FL, GA, IL, KY, MD, MT, NC, NJ, NM, NV, NY, OH, PA, SC, TX, WA, WI, and WV. The claims of an additional 12 Opt-Ins from the State of California have been resolved in connection with the settlement of the California class action. Another 13 persons who returned Opt-In cards were determined by Plaintiff's counsel to not have claims which Plaintiff's counsel could, under Rule 11, pursue.

## I.  SUMMARY OF THE ARGUMENT

Defendants pay their Nurse Practitioners and Physician Assistants (collectively, "Mid-Levels") by the hour, but do not pay them overtime. On at least two occasions, the Department of Labor (the "DOL," the "Department," or the "Secretary") has specifically determined that Defendants' practice violates the law. *See* App. Exhibits 2 & 4. Nonetheless, Defendants continue to pay Mid-Levels on an hourly basis, without overtime, to this very day.

Despite a wealth of authority stating that Mid-Levels in general, and Defendants' Mid-Levels in particular, are not within its terms, Defendants erroneously contend that the limited "exception for physicians, lawyers and teachers" permits them to pay Mid-Levels by the hour without paying them overtime. Because Defendants are just dead wrong, Plaintiffs are entitled to summary judgment on the issue of liability.

## II.  THE SUMMARY JUDGMENT STANDARD

The standards applicable to a summary judgment motion pursuant to Rule 56 are familiar to this Court. *Wyble v. Gulf South Pipeline Co., L.P.*, 308 F.Supp.2d 733, 739-40 (E.D. Tex. 2004) (Davis, J.). Accordingly, Plaintiffs note only that they seek summary judgment on Defendants' *affirmative defense* of exemption from the FLSA and state law's overtime requirements which must be narrowly construed *against* Defendants. *Camargo v. Trammell Crow Interest Co.*, 318 F.Supp.2d 443 (E.D. Tex. 2004)(Davis, J.)(citations omitted).

## III.  ARGUMENT AND AUTHORITY

### A.     The General Statutory Framework

#### 1.     *The FLSA Requires the Payment of Overtime Wages to All Non-Exempt Employees*

As this Court has noted:

> The FLSA was enacted to provide a minimal standard of living necessary for the health, efficiency, and general well-being of workers and to prescribe certain minimum standards for working conditions. In applying the Act to the facts at hand, we must liberally construe it 'to apply to the furthest reaches consistent with congressional direction' in fulfillment of its humanitarian and remedial purposes.

*Camargo*, 318 F.Supp.2d at ___. One of the FLSA's prime purposes was to protect employees from "the evils of overwork." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). Accordingly, to discourage employers from requiring their employees to work long hours, the FLSA requires employers to pay their employees overtime for hours worked in excess of forty in a workweek. 29 U.S.C. § 207(a).

Any exceptions to the FLSA's overtime requirement must be "narrowly construed" against the employers seeking to assert them . . ." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Only those employees who are "plainly and unmistakably within their terms and spirit" may be denied overtime pay. *Id.* If an employer fails to meet even a single element of its affirmative defense of exemption, the employees are not exempt and are entitled to overtime pay. *Usery v. Associated Drugs, Inc.*, 538 F.2d 1191 (5th Cir. 1976)(pharmacists did not fall within professional exemption because defendant failed to prove they were paid on a salary basis).

### 2. *The Professional Exemption.*

The FLSA establishes a general rule that employers must pay their employees overtime compensation. The FLSA then goes on to create exemptions to the overtime requirement for executive, administrative, and professional employees. Congress, in enacting the FLSA, did not define the terms "executive, administrative, and professional;" instead it specifically delegated to the Department of Labor the duty and "broad authority" to "define and delimit" the scope of these exemptions. 29 U.S.C. § 213(a)(1). Thus, the FLSA exempts from its overtime requirements an

employee employed as a "professional" as that term is defined and delimited by the United States Department of Labor. 29 U.S.C. § 213(a)(1);  *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261 (5th Cir. 2000).  "Under the Secretary's chosen approach, exempt status requires that the employee be paid on a salary basis ...." *Auer v. Robbins*, 519 U.S. 452, 456 (1997); 29 C.F.R. § 541.3(e).

      **3.**     ***The Exception to the Salary Basis Test Created for Doctors and Lawyers.***

In connection with the "professional" exemption, the Secretary has created a limited exception to the salary basis requirement for those employees who hold  "a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof . . ." 29 C.F.R. § 541.3(e).  It is through this exception to the salary basis requirement that Defendants attempt to justify their failure to pay their hourly MLP's overtime.  As the Court will see, however, there is no basis, and never has been, for even an argument that MLP's can come within the scope of  the exception for "physicians, lawyers and teachers."

**B.**    **The Proper Legal Analysis**

In deciding this Motion for Partial Summary Judgment, this Court is going to be asked to review a regulation of the DOL and the Department's own interpretations of that regulation. Specifically, the Court will be required to review and interpret 29 C.F.R. § 541.3(e) as applied to MLP's, and, if necessary, to review numerous interpretations of § 541.3(e) expressed by the DOL over the last 60 years.[2]

The area of the interpretation of federal agency regulations and the deference which must be accorded by a Court to the regulations and other interpretive  materials of those agencies is

---

      [2]     These interpretations include, but are not limited to, DOL opinion letters, agency reports, preambles to the publication of regulations, agency enforcement manuals, and interpretative regulations not adopted through "notice and comment."

perhaps one of the most murky areas of the law today. The primary confusion that vexes many parties and even some courts is the difference between agency regulations interpreting statutes versus agency interpretations of the agency's own regulations and the difference between agency regulations and/or interpretations adopted pursuant to the "notice and comment" procedures of the Administrative Procedures Act and those which are not.

Perhaps, the best-known line of cases dealing with the issue of agency deference is *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and its progeny. *Chevron* dealt with the issue of the proper deference to give to agency regulations/interpretations when the agency was interpreting a Congressional **statute**. Under *Chevron*, if a statute is unambiguous, the language of the statute (and thus the clear intent of Congress) controls, and agency regulations and/or interpretations are given no deference by the Courts. If, however, the statute is ambiguous or silent on the specific issue being addressed, *Chevron* requires Courts to give controlling deference to an agency regulation or interpretation adopted pursuant to "notice and comment."[3] Other agency interpretations (including regulations that were not adopted through the "notice and comment" procedure), while not entitled to *Chevron* - level deference, are entitled to "respect according to its persuasiveness" under the Supreme Court's decision in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

*Chevron*, however, is not applicable in this case because the issue before this Court does not deal with an agency interpretation of a Congressional statute, in which Congressional intent is paramount, but with an agency's interpretation of its own regulation. In such a situation, the deference standard of *Auer v. Robbins*, 519 U.S. 452 (1997) controls. *See, e.g., Humanoids Group*

---

[3]     The Supreme Court, in *United States v. Mead Corp.*, 533 U.S. 218 (2001), held that *Chevron* deference may be owed some agency rules interpreting statutes not adopted through "notice and comment" where there is some other indication that Congress intended such rules to have the force of law.

*v. Rogan*, 2004 U.S. App. LEXIS 14949 (4th Cir. June 20, 2004) (*Chevron* applies when agency is interpreting a statute, but *Auer* applies when an agency is interpreting its own regulations).

In *Auer*, the Supreme Court was faced with interpreting a provision of the salary basis test adopted by the DOL as part of its directive to define and delimit the executive, administrative and professional exemptions. Finding that, because "the salary-basis test is a creatrue of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless "plainly erroneous or inconsistent with the regulation." 519 U.S. at 461. Thus, the Supreme Court accepted as controlling the interpretation of the Secretary of Labor as set out in an *amicus* brief submitted in that case. It is important to note that, when dealing with an agency's interpretation of its own regulation, the Supreme Court gave controlling deference (*Chevron*-type deference) to an interpretation of the agency that had not been adopted through "notice and comment" and that did not have the "force of law." Thus, when *Auer* is applicable, ALL agency interpretations are entitled to controlling deference. *Akzo Nobel Salt, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 212 F.3d 1301, 1304 (D.C. Cir. 2000) ("[A]gency interpretations that lack the force of law (such as those embodied in opinion letters and policy statements) do not warrant *Chevron*-style deference when they interpret *statutes* but do receive deference under *Auer* when interpreting ambiguous *regulations*.").

In *Christensen v. Harris County*, 529 U.S. 576 (2000), the Supreme Court clarified that *Auer* deference applies to the interpretation of regulations only when the regulation is ambiguous. If the language of the regulation is not ambiguous, the language of the regulation controls without reference to extrinsic agency interpretations. 529 U.S. at 588.

Courts since *Auer* and *Christensen* have further elucidated the proper analysis to be utilized when examining and interpreting an agency's interpretation of its own regulation. For example,

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 6

Judge Cobb of this District has held that when an agency pronounces what its own regulations

mean, that pronouncement is understood to be *prima facie* correct. *Anderson v. Gus Mayer Boston*

*Store of Del.*, 924 F. Supp. 763, 772 (E.D. Tex. 1996).[4]  In *Wells Fargo Bank of Texas NA v.*

*James*, 321 F.3d 488 (5th Cir. 2003), the Fifth Circuit explained:

> *Auer v. Robbins* offers the standard to be used where an agency
> interprets its own regulation. To determine whether *Auer* deference
> is appropriate, the court must first consider whether the language of
> the regulation is ambiguous.  Here, there is no contention that the
> OCC's interpretation of § 7.4002(a) is contrary to the plain meaning
> of the regulation. Thus, where, as here, the regulation is ambiguous
> as to the precise issue in constest, an agency's interpretation of its
> own regulation is controlling unless it is clearly erroneous.

321 F.3d at 494.  (Citations omitted).  The Fifth Circuit held in that case that an opinion letter

written by the Office of the Comptroller of the Currency was controlling on the issue before it. *Id.*

Thus, as initially set out in *Auer*, and as subsequently informed in *Christensen* and *Wells*

*Fargo*, the proper analysis in this Circuit to be applied to a case such as this, in which the Court

is asked to review an agency's interpretations of its own regulation, is first, is the regulation

ambiguous or silent as to the precise issue in contest.  If not, the plain meaning of the regulation

controls and the Court need look no further.  However, if the regulation is ambiguous or silent as

to the precise issue in contest, then an agency's interpretation of its own regulation is controlling

unless it is clearly erroneous.

### C.    For Purposes of Summary Judgment, This Court Need Only Address the Second Stage of the *Auer* Analysis.

For purposes of summary judgment in this case, this Court need only address the second

stage of the *Auer* analysis since Defendant's case depends wholly upon 29 C.F.R. § 541.314, an

---

[4]    As Judge Cobb eloquently noted, "What court would presume to tell an agency that when it promulgated regulation X it did not really mean to do so?" *Gus Mayer*, 924 F. Supp. at 772.

interpretive regulation (which was issued without "notice and comment"), which by definition can come into play only in the second stage of the *Auer* analysis. *See Defendant EmCare Inc's First Amended Answer*, p. 6, ¶ 3 ("EmCare asserts that the Plaintiffs and Opt-In Plaintiffs are or were excepted from the salary requirements under the FLSA pursuant to 29 C.F.R. section 541.314 during the relevant time period and were or are not legally entitled to overtime compensation as a matter of law."); *Defendant Texas EM-I Medical Services, P.A.'s First Amended Answer*, p. 7, ¶ 3 (same).

The "notice and comment" regulation at issue is 29 C.F.R. § 541.3(e), which provides:

> (e) Who is compensated for services on a salary or fee basis at a rate of not less than $170 per week ($150 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities: Provided, That this paragraph shall not apply in the case of an employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof, nor in the case of an employee who is the holder of the requisite academic degree for the general practice of medicine and is engaged in an internship or resident program pursuant to the practice of medicine or any of its branches, nor in the case of an employee employed and engaged as a teacher as provided in paragraph (a)(3) of this section

29 C.F.R. § 541.3(e). (Emphasis added). Thus, the regulation itself requires that, in order to be excepted from the salary basis test for the professional exemption, an employee must 1) hold a valid license or certificate permitting the practice of medicine or any of its branches and 2) be actually engaged in the practice thereof. Defendants, however, have not taken the position in this case that MLP's fit within the above quoted language alone, but have pled that this Court must look to one of the interpretive regulations, 29 C.F.R. § 541.314(b), which was adopted without "notice

and comment," and which is contained in Subpart B of § 541, which is entitled "Interpretations."[5]

Additionally, Plaintiffs took the deposition in this case of the designated corporate representative of Defendants EmCare, Inc. and Texas EM-I Medical Services, P.A.   In that deposition, EmCare's designated corporate representative gave the following testimony:

> 3    Q.   (BY MR. BURCH) I'm showing you what's been marked as
> 4    Exhibit 11.  What is that?
> 5    A.   29 CFR 541.314 Exception for Physicians, Lawyers,
> 6    and Teachers.
> 7    Q.   And in general what is that?
> 8    A.   It's exception from the salary requirement for
> 9    various classifications of employees.
> 10   Q.   Does it also have a section name underneath it that
> 11   says exception for physicians, lawyers, and teachers?
> 12   A.   Yes.
> 13   Q.   Is this the regulation that EmCare contends allows
> 14   it to pay mid-levels on an hourly basis but still not pay them
> 15   overtime?
> 16   A.   Yes.
>                           * * *
> 22   Q.   (BY MR. BURCH) Right.  And this is the exception
> 23   that EmCare is relying on to the salary or fee basis test
> 24   applicable to professional employees, correct?
> 25   A.   That is correct.
> 1    Q.   Are there any other regulations or information that
> 2    you rely on to support your claim that you can pay them by the
> 3    hour and still be exempt?
> 4    A.   No.

EmCare Depo., pp. 82 - 84.

> 5    Q.   Are nurse practitioners engaged in the practice of
> 6    medicine?
>                           * * *
> 9    A.   EmCare's position is that nurse practitioners are
> 10   other practitioners licensed and practicing in the field of
> 11   medical science and healing or any other medical specialties
> 12   practiced by physicians or practitioners.[6]

EmCare Depo., p. 85

---

[5]      § 541.3, which <u>was</u> adopted after notice and comment is a part of Subpart A of § 541, which is entitled "General Regulations."

[6]      Note that this is a direct quote from 29 C.F.R. § 541.314(b)(1).  The language upon which EmCare relies is specifically NOT contained in the regulation itself, 29 C.F.R. § 541.3(e).

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** – Page 9

9   Q.   (BY MR. BURCH) Yes. Well, let me ask you this:  Do
10  you contend that mid-levels have an academic degree for the
11  general practice of medicine?
12    A.   I do not.
13    Q.   Okay.  And neither does EmCare?
14    A.   No.

EmCare Depo., p. 98

21    Q.   (BY MR. BURCH) Let's try it like this.  Does EmCare
22  contend that nurse practitioners hold a valid license or
23  certificate permitting the practice of medicine or any of its
24  branches?
25    A.   EmCare contends that nurse practitioners and PAs are
1   other practitioners in the field of medical science and
2   healing.
3    Q.   And is I understand it, you're talking about now
4   section B1, right?
5    A.   Correct.
6    Q.   Let's look up at section A, the different section.
7    A.   Right.
8    Q.   Okay.  Does EmCare contend that physician assistants
9   hold a valid license or certificate permitting the practice of
10  medicine or any of its branches?
11    A.   EmCare contends that PAs and nurse practitioners
12  hold valid licenses or certificates which allow them to
13  practice as NPs and PAs, and that practice fits them within
14  the other practitioners in the field of medical science and
15  healing.  That's the position of EmCare.

EmCare Depo., pp. 102-103.

11    Q.   (BY MR. BURCH) Does a physician assistant hold a
12  valid license or certificate permitting the practice of
13  medicine or any of its branches?
14    A.   It's EmCare's position that nurse practitioners and
15  physician assistants are licensed -- that the practice of
16  medicine or any of its branches is broad enough to include
17  physician assistants and nurse practitioners given the context
18  of section A and B.
19    Q.   Okay.  So it's EmCare's position that with respect
20  to 29 CFR 541.314 nurse practitioners and physician assistants
21  hold a valid license permitting the practice of medicine or
22  one of its branches?
23    A.   When that statute's -- when that regulation's read
24  in connection with both section A and B, yes, that is EmCare's
25  position.
1    Q.   And what branch of medicine do they practice?
2    A.   They are nurse practitioners and PAs.
3    Q.   And what branch of medicine is that?
4    A.   I can't answer the question anymore than I already
5   did.  The answer is --
6    Q.   Is it osteopathy?
7    A.   It's EmCare's position that they are licensed to

8   practice medicine or any of its branches read in connection
9   with section B1, that nurse practitioners and PAs fall within
10   that definition.  I can't answer the question anymore than
11   that, and, you know, that's all I can say.
12     Q.   Okay.  Without looking at that, are nurse
13   practitioners licensed to practice medicine?
14     A.   I've already answered that question.  They are not
15   doctors.  If you're --
16     Q.   Are they licensed to practice medicine?  Yes?  No?
17     A.   Defined by the Medical Practice Act?
18     Q.   Sure.
19     A.   No.
20     Q.   Are physician assistants licensed to practice
21   medicine?
22     A.   As defined by the Medical Practices Act?
23     Q.   Yes.
24     A.   No.
25     Q.   Okay.  Is that true in every state that you're aware
1   of?
2     A.   Yes.

EmCare Depo., pp. 104-105.

This testimony makes clear, along with its Answer, that EmCare does not rely upon the

language of § 514.3 alone, which it would have to do in order to argue that § 514.3 unambiguously

included MLP's (which it obviously does not), but instead relies upon an agency interpretation of

§ 514.3 to support its position.  While Plaintiff believes that § 514.3 unambiguously excludes

MLP's from its scope, that is an issue that the Court need not address given that, even accepting

the Defendant's implied position that § 514.3 is ambiguous and that this Court must look to the

DOL's interpretation of § 514.3 to determine whether MLP's are included with its scope, a review

of all of the DOL's interpretations of § 514.3 – all of which would be entitled to deference under

*Auer* – leads to the inescapable conclusion that, as a matter of law, MLP's are NOT included within

scope of § 514.3(e)'s salary basis exception for physicians.

D.     **The DOL Has Consistently Refused to Extend the Exception to the Salary Basis Requirement Beyond Doctors and Has Consistently Held that the Exception Does Not Apply to MLP's.**

1.     *The History of the Salary Basis Test for Professionals.*

The origins of the salary basis test date back to the year the FLSA was passed - 1938. In that year, the Department issued its first set of regulations which required payment "at not less than $30 . . . for a workweek" in order to qualify for the "executive" and "administrative" exemptions from the FLSA's overtime requirements. 3 Fed. Reg. 2518 (1938). The salary requirement was not initially imposed as a requirement under the professional exemption. *Id.*

However, in 1940 the Department conducted extensive hearings on the regulations which govern the contours of the "white collar" exemptions. *See* "Executive, Administrative, Professional * * * Outside Salesman" Redefined, Wage and Hour Division, U.S. Department of Labor, Report and Recommendations of the Presiding Officer (Harold Stein) at Hearings Preliminary to Redefinition (Oct. 10, 1940) ("Stein Report"), pp. 1-2. As a result of these hearings, the presiding officer concluded that the term "professional" could no longer be limited to the "traditional professions of law, medicine and theology . . .'" Stein Report, p. 35. Instead, the "field of the professions is an expanding one and 20 years from now profession whose members will qualify will no doubt be found in occupations not recognized as professions today." *Id.*

Accordingly, most of the recommended changes to the professional exemption resulted in the exemption of "more employees than have heretofore been exempt." Stein Report, p. 36. However, the presiding officer was concerned that the expansion of the term professional also "created an opening for abuse in its application." *Id.* Therefore, "in order to avoid disputes, to assist in the effective enforcement of the act and to prevent abuse, it appears essential . . . to include a salary test in the definition [of professional]." *Id.* Based upon these findings, which were part of the "notice and comment" procedure for the adoption of § 541.3(e), the Department included a salary basis test in the regulation governing the professional exemption. *See* 5 Fed. Reg. 4077-4078. Thus, it is clear that "the salary-basis test is a creature of the Secretary's own regulations."

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 12**

*Auer v. Robbins*, 519 U.S. 452 (1997)(internal citations omitted). The Department's "interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulation." *Id.*; *see also*, *Martin v. Occupational Safety and Health Review Com'n*, 499 U.S. 144, 151(1991)("Because applying an agency's regulation to complex or changing circumstances calls upon the agency's unique expertise and policymaking prerogatives, we presume that the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers."). It is against this backdrop that the Court must consider the proper scope of any exception to the salary basis test.

2.    *The Limited Exception to the Salary Basis Test for Doctors and Lawyers.*

In expanding the salary basis test to cover professional employees in 1940, the Department nonetheless recognized that the "three traditional professions of law, medicine and theology occupy a distinctive position in the United States as well as elsewhere." *See* Stein Report, p. 42. "Members of these professions acquire a special status and are recognized as quasipublic officials." *Id.* The Department went so far as to remark that "until recently only the members of these professions would have been considered as persons employed in a bona fide professional capacity. *Id.* The Department, therefore, reasoned that "while a reasonable definition of 'professional' must extend beyond the traditional professions . . . some special consideration for members of *these* professions is reasonable." *Id.* (emphasis added).

In recognition of the special status of doctors and lawyers in society, as well as the licensing requirements applicable to these professions, a limited exception to the salary basis test was proposed for members of the traditional professions of law and medicine. Stein Report, p. 42. This limited exception was applicable "only to those who have received a State license or certificate to practice law or medicine." *Id.* It was only within these two professions that a State license was

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 13**

thought to be an "adequate" substitute for the salary test. *Id.* The Department was careful to distinguish, however, between the "newer learned professions" who **are** subject to the salary basis test, and the traditional professions of "law and medicine" who are not. *Id.*, p. 36. Thus, after this careful study and review, the Department expressed this view through a limited exception to the salary basis test for holders of a "valid license or certificate permitting the practice of law or medicine or any of their branches and who is actually engaged in the practice thereof." 5 Fed. Reg. 4077, 4078.

3.   *The Department Has Consistently Rejected Efforts to Expand the Exception to the Salary Basis Test Beyond the "Original, Limited Number of Professions that Were Not Subject to the Salary Test."*

a.   *In 1949, the Department of Labor Conducted Hearings and Determined: 1) The Salary Basis Test Should Remain Intact; and 2) The Exception Should Continue to Be Limited to "Doctors and Lawyers."*

The Department consistently rejected every proposal to expand the scope of the limited exception for "physicians" and lawyers beyond the "*original*, limited number of professions" within its terms. *See, e.g.,* 69 Fed. Reg. 22122, 22172 (2004)(emphasis added). For example, in 1949, the Department of Labor again held hearings with respect to the proper scope of the "executive, administrative and professional" exemptions to the overtime requirements. At the hearings, some commentators suggested that the "the salary tests be eliminated from the regulations." Report and Recommendations on Proposed Revisions of Regulations, Part 541 (June 1949)("Weiss Report"), p. 7. Others proposed that the exception to the salary test for "doctors and lawyers" be extended to cover "architects, engineers, and librarians." Weiss Report, pp. 76-78.

In rejecting these arguments, the Department noted that it had "found no satisfactory substitute for the salary test." Weiss Report, pp. 7-8. Moreover, the Department found that

payment on a salary basis was "one of the recognized attributes of . . . professional employment." *Id.* The Department also specifically rejected the proposal to expand the "doctor and lawyer" exception to cover other professionals.   Weiss Report, pp. 76-78.

The Department reiterated that the salary basis exception for doctors and lawyers was "the traditional standing of these professions, the recognition of doctors and lawyers as quasi-public officials, and the universal requirement of licensing by the various jurisdictions." *Id.*, at 77.   The Department also noted the "relatively simple problems of classification presented by these professions." *Id.*   Thus, the proposal to expand the "doctor and lawyer" to other professions was specifically rejected.   Accordingly, employers were again put on notice that only "physicians and lawyers" were within the scope of the exception. *Id.*

> b.   *In 1949, the Department Noted That the Clause "Or Any of Their Branches" Has Always Been Limited to "Doctors and Lawyers"*

The Weiss Report went on to highlight the narrow scope of the "doctor and lawyer" exemption.  For example, the Department noted that questions had "been raised as to the meaning of the phrase 'or any of their branches.'" *See* Weiss Report, p. 78.   Consistent with its initial determination that the salary basis exception applied only to these professions, the Department reconfirmed that "this exception applies only to the *traditional professions of law and medicine* and not to employees in related professions which merely service the professions of law and medicine." *Id.* (emphasis added).   The Department of Labor specifically noted that "pharmacists, *nurses*, or other professions which service the medical profession" do not fit within the salary basis exception. *Id.* (emphasis added).

> c.   *In 1949, the Department Adopted § 541.314, an Interpretive Regulation, Which Expressly Limited the Scope of § 541.3 to "the Traditional Professions of Law and Medicine and Not to Employees in Related Professions Which Merely Service the Professions of*

*Law or Medicine*."

In 1949, following the issuance of new regulations, including § 541.3, the DOL issued

without "notice and comment" an "explanatory bulletin" containing "statements of general policy

and interpretations" related to the newly adopted regulations which were intended to "outlin[e] and

explain[] the application of these regulations to specific types of situations." 14 Fed. Reg. 7730.

Section 541.314 was one of the interpretive regulations contained in this "explanatory bulletin."

14 Fed. Reg. 7743.

The original version of § 541.314, adopted in 1949, provided:

> A holder of a valid license or certificate permitting the practice of
> law or medicine or any of their branches, who is actually engaged
> in practicing the profession is excepted from the salary or fee
> requirement.   This exception applies only to the traditional
> professions of law and medicine and not to employees in related
> professions which merely service the professions of law or
> medicine.  For example, in the case of medicine, the exception
> applies to physicians and other practitioners in the field of medical
> science and healing, such as dentists, or any of the medical
> specialties, but it does not include pharmacists, nurses, or other
> professions which service the medical profession.

29 C.F.R. § 541.314 (1949).[7]

d.   *In 1958, the Department Once Again Refused to Expand to Scope
of the Doctor and Lawyers Exception.*

In 1958, the Department of Labor again issued a report on "the hearings held to determine

what changes, if any, should be made in the salary tests contained in the Regulations, Part 541."

*See* United States Department of Labor, Wage and Hour and Public Contracts Divisions,

"Executive, Administrative, Proposed revision of Regulations, Part 541, under the Fair Labor

---

[7]     The "traditional profession of medicine" limitation is taken directly from the Stein Report which
preceded - and proposed - the adoption of the regulation found at 29 C.F.R. § 541.3.  Stein Report, p. 42.  Thus, the
"traditional profession of medicine" limitation has been part of the "doctor and lawyer" exception since its
inception.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 16**

Standards Act, Report and Recommendation (March 3, 1958)(the "Kantor Report").   At the hearings, proposals to eliminate the salary basis test, as well as to expand its "doctor and lawyer" exception, were considered.  Kantor Report, p. 3.

In rejecting the proposal to do eliminate the salary requirement, the presiding officer again stated that in "the years of experience in administering the regulations, the [Department's investigators] have found no satisfactory substitute for the salary tests."  Kantor Report, p. 3.  In rejecting the proposals to expand the salary basis exception, the Department noted that similar proposals had been rejected in 1949.  The presiding officer concluded that the original basis for the exception still held true.

> e.    *The Department of Labor Revised the "Physician and Lawyer" Exception in 1967, but did not Expand the Definition of Physician and Lawyers Beyond Their Original Scope.*

In 1956, the FLSA was amended to include school districts within it scope for the first time, and thus in 1967, the Department expanded the exception for physicians and lawyers to include teachers. 32 Fed. Reg. 7823, 7829 (1967). However, the DOL did not alter the definition of physicians or lawyers beyond their original scope. *Id.*

> f.    *In 1973, the DOL Revised § 541.314, Once Again Expressly Limiting the Scope of § 541.3 to "the Traditional Professions of Law and Medicine and Not to Employees in Related Professions Which Merely Service the Professions of Law or Medicine."*

In 1973, the DOL, without "notice and comment[8]," issued the current version of § 541.314. 38 Fed. Reg. 11407.  It is upon this interpretive regulation that Defendants rest their defense that MLP's are included within the salary basis exemption for physicians, lawyers and teachers.  To reach this conclusion, Defendants must not only adopt a tortured interpretation of § 541.314 which

---

[8]      *See* 38 Fed. Reg. 11390.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 17**

embraces selected language of this interpretive regulation, but ignores other language, it must also ignore all of the other agency interpretations discussed herein that are entitled to equal deference under *Auer*.

        1)     <u>Because EmCare admits MLP's are not physicians, lawyers or teachers, the "Exception for Physicians, Lawyers and Teachers" does not apply</u>. The interpretive regulation upon which Defendants rely is titled "Exception for physicians, lawyers and teachers." 29 C.F.R. § 541.314. However, when questioned regarding this regulation, EmCare admitted that Mid-Levels are neither physicians, nor lawyers, nor teachers. EmCare Depo., p. 43, l. 7-14. Therefore, the Court need look no further than the caption of the regulation to determine that Mid-Levels do not fit within the terms of the exception for "physicians, lawyers and teachers." 29 C.F.R. § 541.314.

        2)     <u>The language of § 541.314(a) makes it clear that only those who 1) hold valid licenses or certificates permitting the practice of medicine; and 2) are actually engaged in practicing the profession of medicine, are exempt from the salary basis test</u>. Although 29 C.F.R. 541.314's title clearly excludes Mid-Levels from its terms, this interpretive regulation goes on to clarify that it applies only those who: 1) hold valid licenses for the practice of medicine; and who 2) are actually engaged in practicing the profession of medicine. 29 C.F.R. § 541.314(a). Thus, the salary basis exception for physicians is limited to an employee "who holds a law or physician's license and works as a lawyer or doctor." *See Close v. State of New York*, 1996 WL 67979, 131 Lab.Cas. P 33,397, 3 Wage & Hour Cas.2d (BNA) 225 (N.D.N.Y. Feb 13, 1996) (NO. 94-CV-0906).[9] Defendants cannot meet either requirement.

---

      [9]     This case was reversed on wholly unrelated, jurisdictional grounds. *Close v. State of N.Y.*, 1996 WL 481550, 3 Wage & Hour Cas.2d (BNA) 856 (N.D.N.Y. Aug 19, 1996) (NO. 94-CV-0906)(vacating prior decision on Constitutional grounds, and dismissing for lack of jurisdiction) *aff'd* 125 F.3d 31 (2nd Cir. 1997).

It is beyond question that licensed Mid-Levels cannot and do not have licenses or certificates permitting the practice of medicine.[10]  In fact, Defendants do not contest that Mid-Levels do not hold a "license to practice medicine" within the meaning of **any** Medical Practices Act in **any** state in which EmCare operates.  EmCare Depo., p. 105, l. 16 - p. 106, l. 2. Accordingly, EmCare cannot demonstrate that Mid-Levels hold valid licenses or certificates permitting the practice of medicine.

Since they do not have licenses to do so, it is beyond cavil that Mid-Levels are not "engaged in practicing the profession" of medicine.  In fact, EmCare readily concedes that Mid-Levels are not physicians nor doctors. EmCare Depo., p. 43. EmCare also admits that Mid-Levels do not practice medicine in the same manner as a physician.  *Id.*, p. 86, l. 5-12.  Accordingly, EmCare concedes that Mid-Levels are not "engaged in practicing the profession of medicine."

Instead, EmCare suggests only that Mid-Levels are "other practitioners licensed and practicing in the field of medical science and healing or any other of the medical specialties practiced by physicians or practitioners." EmCare Depo., p. 85.  In other words, Defendants rely solely upon their contorted interpretation of the interpretive regulation contained at 29 C.F.R. §541.314(b)(1). However, because Defendants' concede they cannot meet the express requirement that Mid-Levels be "engaged in practicing the profession" of medicine, Plaintiffs are entitled to judgment as a matter of law.

       3)    <u>Since Mid-Levels did not exist at the time the "Doctor and Lawyer" exception was created, they cannot be members of the "traditional profession of</u>

---

[10]    *See, e.g., Weyandt v. State,* 35 S.E.3d 144, 148 (Tex. App. – Houston [14th Dist.] 2000)(an advanced nurse practitioner "is not licensed to practice medicine in Texas."); *Bradford v. Alexander,* 886 S.W.2d 394, 397 (Tex. App.– Houston [1st Dist.] 1994)(holding that a "physician assistant does not practice medicine" within the meaning of the Texas Medical Liability and Insurance Improvement Act).

medicine." Since its inception, the salary basis exception for physicians has applied "only to the traditional professions of law [and] medicine . . .." 29 C.F.R. § 541.314; Stein Report, p. 42.[11] Significantly, neither Nurse Practitioners nor Physician Assistants even *existed* at the time the salary basis test, its "doctor and lawyer" exception, nor the interpretive regulation upon which EmCare relies, were created.[12]  Accordingly, these professions could not have been within the "original, limited number of professions that were not subject to the salary test." 69 Fed. Reg. 22172.

Even the specific language of § 541.314(b) into which EmCare attempts to wedge Mid-Levels - "other practitioners licensed and practicing in the filed of medical science and healing" - was adopted well before Mid-Levels existed.  This language was included in the original 1949 version of § 541.314 and was used to described dentists. 14 Fed. Reg. 7743.  In the current version of § 541.314, this language is used to describe dentists, podiatrists and optometrists, all of whom are customarily referred to as "doctors."  Because Mid-Levels are not members of the traditional profession of medicine,  Mid-Levels are expressly excluded from 29 C.F.R. § 541.314.

    4) <u>Professions which are related to the profession of medicine</u> <u>Are NOT within the scope of 29 C.F.R. § 541.314</u>. Further clarifying the narrow scope of § 541.3, the interpretive regulation notes that "employees in related professions" which serve the medical profession are excluded from the salary basis exception.  29 C.F.R. § 541.314(a).  Because Mid-Levels are not members of the "traditional profession of medicine," they are members of the

---

[11]  While "teachers" have been added to this exception, this has not altered the scope of the physician exception.

[12]  *See, e.g.,* Elizabeth H. Hadley, *Nurses and Prescriptive Authority: A Legal and Economic Analysis,* 15 Am. J. L. & Med. 245 at n. 104 (1989)(noting that the first nurse practitioner and physician assistant programs began in the 1960's).

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 20**

"related professions" in the health care field. *Id.* As such, Mid-Levels are excluded from the salary basis exception for physicians.

         5)     The examples of "physicians and other practitioners" provided by the Department of Labor are all "Doctors" within the common sense of the word. The Department also provides specific examples of the professionals included within the salary basis exception for physicians. 29 C.F.R. § 541.314(b)(1). For example, "medical doctors" and "doctors of osteopathy" are given as examples of those meeting the definition of "physician." *Id.* The Department list doctors of "podiatry," "dental medicine," and "optometry" as professions which "may" fall within the definition of "other practitioners." *Id.* Each of these examples, however, clearly fall within the common sense definition of the word "doctor." This is, of course, unsurprising given that the Department has repeatedly referred to the salary basis exception as the exception for "doctors and lawyers." *See, e.g.,* Weiss Report, p. 77 (salary basis exception limited to "doctors and lawyers"); Kantor Report, p. 4 (same); 68 F.R. 15560, 15561 (the "salary requirements do not apply to certain licensed or certified doctors, lawyers and teachers . . ...").[13]

    EmCare attempts to shoehorn Mid-Levels into § 541.3 by attempting to include them within the "other practitioners" language of § 541.314(b)(1). To do so, however, would read several other phrases in § 541.314 right out of the interpretive regulation including the: (1) "holder of a valid license or certificate permitting the practice of law or medicine or any of their branches "; (2) "applies only to the traditional professions of law, medicine and teaching"; and the (3) "not to related professions which merely service these professions" limitations of § 541.314(a). To do so would further require inclusion in the "other practitioner" category of an occupation not commonly

---

    [13]     Similarly, Defendants' long-time outside counsel - Littler Mendelson - has repeatedly referred to 541.314 as an exception for "teachers, lawyers or doctors. *See, e.g.,* App., Ex.19.

referred to as "doctor" for the first time ever. And to do so would require this Court to ignore 60 years of consistent DOL interpretations holding that § 541.3 applies *only* to the *original*, traditional professions for which it was initially adopted.

> 6)     **Because 29 C.F.R. § 541.314(c) excludes medical occupations which service the medical profession (such As pharmacists, nurses & psychologists), the salary basis exception for physicians does not apply to Mid-Levels.** Finally, the interpretative regulation makes clear that in "the case of medical occupations, the exception from the salary or fee requirement does not apply to pharmacists, nurses, therapists, technologists, sanitarians, dietitians, social workers, psychologists, psychometrists, or other professions which service the medical profession." 29 C.F.R. 541.3149(c). In other words, every profession in the medical field other than that of a doctor must be paid on a salary basis in order to be exempt.

This broad exclusion is particularly significant given that, for example, pharmacists "complete a doctoral program before they are licensed . . .." 69 Fed. Reg. 22122, 22172 (2004). Pharmacists have some degree of prescriptive authority in a majority of the states. *See, e.g.,* N.M.S.A., Ch. 61, Art. 11B (New Mexico); N.D.C.C., Ch. 43-15-31.4 (North Dakota); Az. Stat. Ann. § 32-1970 (Arizona). Nonetheless, the Department has repeatedly reaffirmed that rising professional standards do not warrant the expansion of salary basis exception. 69 Fed. Reg. 22122, 22172.

The Department has repeatedly defined the term "nurse" to include "nurse practitioners." *See, e.g.,* DOL Employment Standards Administration, Wage and Hour Division, Service Contract Directory of Occupations, § 12000 Health Occupations (defining "Registered Nurse" to include Nurse Practitioners). Accordingly, there can be little doubt that the term "nurse" as used within § 541.314(c) includes nurse practitioners who are, as their name implies, nurses. Indeed, the

Department of Labor distinguishes between the learned professions of "medicine" and that of "nursing."   29 C.F.R. § 541.301(e)(1).

Similarly, in its current proposed regulations, the Department notes that "Physician Assistants generally meet the *duties* requirements of the learned professional exemption." 69 Fed. Reg. 22260, 22265-66 (2004).   However, in the economic impact report issued along the 2004 proposed regulations, the Department notes that Physician Assistants *are subject to the Part 541 Salary Level test.*" 69 Fed. Reg. 22191, 22245 (2004)(emphasis added).[14]  As such, there is simply no question that the "exception for physicians, lawyers and teachers" does not extend to Mid-Levels.

> g.    The Department of Labor Specifically Addressed the Overtime Status of Physician Assistants in 1974 and 1994 and Determined that a Salary was Required for Exemption.

In 1974, the Department was called upon to address the "professional" status of Physician Assistants directly. *See* DOL Wage & Hour Div. Op. Ltr., 1974 WL 38705 (May 10, 1974).  The Department concluded that Physician Assistants would be exempt if, while performing the duties of Physician Assistant, the employee "is compensated for his or her services on a salary basis of not less than $200 a week, exclusive of board, lodging, or other facilities." *Id.*  Defendants concede that the opinion letter states that Physician Assistants must be paid on a salary basis in order to qualify for exemption. *See, e.g.,* EmCare Depo., p. 88, l. 23-25.

The Department's Field Operations Handbook[15] (FOH) also addresses the requirements for

---

[14]    Conversely, the Department's economic impact report demonstrates that *none* of the nation's "physicians," "dentists," "optometrists," and "podiatrists," are "subject to the Part 541 Salary Level test." 69 Fed. Reg. 22191, 22245 (2004). In fact, the Department "identified separately [these workers because] they are covered by the FLSA's overtime provisions but are not subject to the Part 541 salary level tests." 29 Fed. Reg. 22191, 22201 (2004).

[15]    Courts routinely rely upon the Department's FOH for guidance in determining the Department's views on issues under the FLSA. *See, e.g., Picton v. Excel Group, Inc.,* 192 F.Supp.2d 706 (E.D.Tex. 2001).

treating a Physician Assistant as exempt from the FLSA's overtime requirements. *See* FOH § 22d23 (1974) and FOH § 22d23 (1994). In fact, the FOH specifically references Physician Assistants in both its 1974 and the 1994 editions. *Id*. As might be expected given the Department's consistent views on the topic, both versions of the FOH specifically require Physician Assistants be paid on an salary basis in order to qualify for the "professional" exemption. *Id*.[16]

> h.   *Between 2001 and 2003, the Department of Labor Has, on at Least Three Occasions informed EmCare that its Practice of Paying Mid-Levels on an Hourly Basis without Paying Them Overtime violates the FLSA*

In June 2001, the DOL office in Columbia, South Carolina, began an audit /investigation of EmCare and South Caolina EM-1 Medical Services. *See* App. Exh. 2. In that audit, the DOL specifically found that the "541.3 exemption is not applicable to the hourly paid physician's assistance [sic] and nurse practitioners." App., Ex. 2. The Department further stated, "Non-exempt hourly paid PA's and NP's paid regular rate of pay for overtime hours worked."[17]

In September 2001, the Arlington, texas office of the DOL conducted an audit/investigation of EmCare and Texas EM-1 Medical Services. *See* App., Exh. 3. In a letter to the investigator, Defendants' counsel, Littler Mendelson, states that the DOL was challenging "the exempt status of [NP's and PA'] because some of the are not paid on a salary or fee basis."

In September 2002, the Arlington, Texas office of the DOL initiated another audit of EmCare's pay practices. *See* App., Exh. 4. In January 2003, the Investigator in that audit

---

[16]   Defendants are aware of the FOH and that it "says that [Mid-Levels] have to be paid on a salary basis." EmCare Depo., p. 76, l. 3-8. What did Defendants do after receiving this information? They "didn't do anything." EmCare Depo., p. 77, l. 2-13.

[17]   Interestingly, EmCare has been "unable" to locate its filed with regard to the South Carolina DOL for production in this lawsuit. This is despite the fact that EmCare's corporate representative, Craig Wilson, reviewed the file regarding the South Carolina investigation within the three months prior to his deposition.

determinated that no exemptions applied to EmCare's NP's and that EmCare "has Nurse Practitioners, who on a salary basis would be classified as exempt, being paid an hourly rate . . . " App., Exh. 4. The Investigator called EmCare's Vice President of Human Resources on January 27, 2003 and outline EmCare's violations of the FLSA. *Id.*

      i.     *As Recently as April 2004, the Department Has Specifically Rejected Proposals to Expand the "Doctor and Lawyer" Exception Based on Increases in the "Educational Requirements and Professional Standards" of Medical Professionals other Than Doctors.*

In 2003, the Department undertook a "comprehensive review" of the white-collar exemptions and published proposed regulations designed to "update" the overtime regulations. See Proposed Rules Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 68 Fed. Reg. 15560, 15571 (2003). In its initial proposed regulations, the Department suggested that the "exception to the salary or fee requirements for physicians and lawyers" be retained without substantive change. *Id.,* at 15,568. Nonetheless, the Department specifically requested comments on the alternative of "removing the salary tests from the regulations entirely" or "adopting a 'salary only' test for highly compensated employees" that would not depend at all on the duties of those employees. *Id.* These proposed regulations resulted in numerous comments and suggestions regarding the "Doctor and Lawyer" exception to the salary basis requirement.

In April 2004, the Department issued the new regulations currently slated to go into effect in August 2004. The Department noted that it "considered but rejected suggestions from commenters that [it] remove the salary basis requirements for registered nurses and others."[18] 69 F.R. 22172. In addition to registered nurses and physician assistants, some commenters suggested

---

[18]    As it happens, one of these "others" was Physician Assistants. *See* AAPA Letter [App. Exh. 20].

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 25**

"the exception to a minimum salary test for physicians should apply to pharmacists." *Id.* In particular, it was emphasized that "the educational requirements and professional standards . . . have increased substantially since the regulations were last revised." *Id.* "For example, pharmacists graduating today complete a doctoral program before they are licensed to practice." *Id.*

In response, the Department held that it was "not . . . appropriate to expand the *original*, limited number of professions that were not subject to the salary test." 69 Fed. Reg. 22172 (emphasis added). Although the Department agreed that "the standards for the profession are rising," this "does not mean that the minimum salary requirement to be exempt should be removed." *Id.* This is consistent with the Department's longstanding position - contained in both its regulations and its other interpretive materials - that the salary basis exception "applies only to the traditional professions of law and medicine and not to employees in related professions which merely service the professions of law or medicine." *See, e.g.,* 14 Fed. Reg. 7743 (December 28, 1949 version of 29 C.F.R. § 541.314); Stein Report, pp. 36, 42; Weiss Report, p. 78; Kantor Report, p. 4 ("doctors and lawyers" are excepted from the salary basis requirement).

Moreover, the preamble to the new overtime rules issued in April 2004 contains two charts - one titled "Number of FLSA Covered Workers in White-Collar Occupations that are Subject to the Part 541 Salary Level Test" and the other titled "Number of Workers in CPS Occupations That are Not Subject to the Part 541 Salary Level Test." The first chart demonstrates that zero physicians are subject to the salary basis test. 69 Fed. Reg. 22245. That same chart states that there over 87,000 Physician Assistants subject to the salary basis test. *Id.* The second chart shows overt 550,000 physicians are not subject to the salary level test, but does not show a single Mid-Level within that category. 69 Fed. Reg. 22201. These charts further demonstrate that the DOL

considers Mid-Levels to be beyond the scope of the exception for physicians and lawyers.

> j.    *In April 2004, the Department Specifically Dealt with Physician Assistants and Determined Not to Include Them Within the Salary Basis Exception*

In the new regulations published in April 2004 and scheduled to go into effect August 23, 2004, the Department has added a regulation specifically dealing with the professional status of Physician Assistants. 69 Fed. Reg. 22153. That new regulation adopted the DOL's enforcement policy contained in § 22d23 of the FOH, that PA's who meet certain educational requirements generally meet the duties requirements for the learned professional exception. *Id.* After specifically considering a comment filed by the American Academy of Physician Assistants ("AAPA"),[19] however, the Department adjusted the educational requirements to be included in the final regulation. 29 Fed. Reg. 22153-54. However, the Department specifically rejected that AAPA's position that § 541.314 exception be expanded to include Physician Assistants. App., Exh. 20; 69 Fed. Reg. 22172.

> 4.    *Case Law Interpreting The Doctor and Lawyer Exception Confirms its Narrow Parameters.*

In *Harrison v. Washington Hospital Center*, 1979 U.S. Dist. LEXIS 10063 (D.D.C. August 31, 1979), the defendant made an argument regarding Registered Nurses strikingly similar to the argument made here by EmCare regarding Mid-Levels. In *Harrison*, the Defendant argued that Registered Nurses were more than nurses as identified in § 541.314, and that the regulation "does not take into account the changes that have occurred in the practice of nursing" since the adoption of the regulation. The defendant in that case argued, much as EmCare does here, that "many of the functions that were formerly carried out by physicians are now performed by registered nurses are

---

[19]      *See* App., Exh. 20.

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** – **Page 27**

presently engaged in the practice of medicine." The court rejected this argument, finding that the line drawn by the Administrator, between the professions of law and medicine and the professions which serve them controlled on this issue. *Id.*

**E.     Because Mid-Levels are Non-Exempt Under the FLSA, They are Non-Exempt Under Illinois State Law**

The Illinois Minimum Wage Law (IMWL) law requires the payment of overtime wages. IL ST CH 820 § 105/4a. The IMWL "parallels the language of [the FLSA] . . . and Illinois courts subject the state statute to the same interpretation and application as its federal counterpart." *Baudin v. Courtesy Litho Arts, Inc.*, 24 F.Supp.2d 887, 894 (N.D.Ill. 1998) *citing Haynes v. Tru-Green Corp.*, 154 Ill.App.3d 967, 977, 107 Ill.Dec. 792, 507 N.E.2d 945, 951 (4th Dist.1987). Courts "therefore treat the two statutes as co-extensive . . .." *Baudin*, at 894 *citing Condo v. Sysco Corp.*, 1 F.3d 599, 601 n. 3 (7th Cir.1993). Accordingly, an employer's failure to establish an exemption under the FLSA is also a failure to establish an exemption under Illinois state law. *Klein v. Rush-Presbyterian-St. Luke's Medical Center*, 990 F.2d 279, 288 (7th Cir. 1993)(nurse who was not an "exempt employee under the FLSA [was] therefore . . . also not an exempt employee under the Illinois Minimum Wage Law.")

For the reasons set forth above, EmCare cannot establish that its hourly paid Mid-Levels are exempt from the overtime requirements of the FLSA. Therefore, the Illinois Plaintiff is also non-exempt under the IMWA.[20]

**F.     Mid-Levels Are Entitled to Overtime Under Washington State Law**

Like the FLSA, the Washington Minimum Wage Act (WMWA) "requires . . . that

---

[20]     *In Re Farmers Insurance Exchange Claims Representatives' Overtime Pay Litigation*, 300 F.Supp.2d 1020, 1050 (D.Or. 2003)("The statute of limitations on plaintiffs' Illinois [state law overtime claims] . . . is three years without regard to willfulness.")

employers pay their employees at a rate of one and one-half times their regular hourly rate for time worked beyond 40 hours per week, unless an individual is employed in a 'bona fide ... professional capacity.'" *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000) *citing* RCW 49.46.010(5). Similar to Congress' delegation of authority to the Department, authority to "define and delimit" the term "professional" has been left to Washington's Department of Labor and Industries (DLI). *Id.* As with the FLSA, "exemptions ... are to be narrowly construed" against the employer seeking to assert them. *Clawson v. Grays Harbor Coll. Dist. No. 2*, 61 P.3d 1130, 1136 (2003).

The DLI defines a "professional" employee, in part, as an individual compensated for their services "on a salary or fee basis." RCW 49.46.010(5)(c);WAC 296-128-530(5). The sole exception thereto is limited to "an employee who is the holder of a valid license or certificate permitting the practice of law, medicine, or dentistry and who is actually engaged in the practice thereof." WAC 296-128-530(5). Although the WMWA does not contain any of the interpretative language[21] upon which EmCare relies, Plaintiffs recognize that Washington courts may consider interpretations of comparable provisions of the FSLA as "persuasive authority." *Inniss v. Tandy Corp.*, 141 Wash.2d 517, 524, 7 P.3d 807 (2000). Nonetheless, these arguments would fail for the same reasons detailed above. Accordingly, EmCare's failure to pay in accordance with the FLSA is, *a priori*, a violation of the WMWA.[22]

---

[21]     As noted above, EmCare concedes that MLPs do not have "valid licenses permitting the practice of medicine" unless one reads this requirement in the "context of" EmCare's tortured interpretation of 29 C.F.R. § 531.314(b)(1).

[22]     However, a "three-year statute of limitations applies to actions under the WMWA." *Bennett v. Computer Task Group, Inc.*, 47 P.3d 594, 595 (Wash.App. Div. 1 2002); *In Re Farmers*, 300 F.Supp.2d at 1050("The statute of limitations on plaintiffs' . . . Washington [state law overtime] claims is three years without regard to willfulness.")

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT – Page 29**

## IV. CONCLUSION

Over a period of 60 years, including most recently this year, the Department of Labor has consistently interpreted § 541.3 as being limited to "doctors" and as not encompassing Mid-Levels. All of those interpretations are entitled to *Auer* deference and they ALL contradict Defendants' position in this case. Thus, regardless of the duties Mid-Levels perform, regardless of any "evolution" in health care, regardless of whether Mid-Levels now perform "many of the functions that were formerly carried out by physicians," regardless of whether, like pharmacists, they have limited prescription writing authority, the simple fact is that, the DOL has consistently said, as recently as four months ago, that § 541.3 is limited to doctors. Given that Mid-Levels are admittedly not doctors, they do not, as a matter of law, fall within the scope of that exception to the salary basis requirement.

Respectfully submitted,

**JONES & ASSOCIATES, P.C.**

_____/S/_____
James A. Jones (TX Bar No. 10908300)
5015 Tracy, Suite 100
Dallas, Texas  75205
(214) 219-3456
(214) 219-9309 (fax)

**and**

**BRUCKNER BURCH PLLC**

Richard J. Burch
State Bar No. 24001807
5847 San Felipe # 3900
Houston, Texas 77057
(713) 877-8788 (Telephone)
(713) 877-8065 (Telecopier)

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document was electronically filed on August 2, 2004.

_____/S/_____
James A. Jones (TX Bar No. 10908300)
5015 Tracy, Suite 100
Dallas, Texas  75205
(214) 219-3456
(214) 219-9309 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JUNE BELT, *et al.* | § | CIVIL ACTION NO. 6:03-CV-73 |
| | § | |
| *Plaintiffs* | § | |
| | § | [COLLECTIVE ACTION] |
| v. | § | |
| | § | |
| (1) EMCARE, INC., | § | |
| (2) TEXAS EM-1 MEDICAL SERVICES, P.A. | § | [JURY TRIAL DEMANDED] |
| (3) ST. PAUL ERDOCS, P.A. | § | |
| | § | |
| *Defendants* | § | JUDGE DAVIS |

## APPENDIX TO
## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

JONES & ASSOCIATES, P.C.

James A. Jones (TX Bar No. 10908300)
Christopher L. Green (TX Bar No. 24032372)
5015 Tracy, Suite 100
Dallas, Texas 75205
(214) 219-3456
(214) 219-9309 (fax)

BRUCKNER BURCH PLLC

Richard J. Burch
State Bar No. 24001807
5847 San Felipe # 3900
Houston, Texas 77057
(713) 877-8788 (Telephone)
(713) 877-8065 (Telecopier)

ATTORNEYS FOR PLAINTIFFS